**BLANK ROME LLP**
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212) 885-5000
Ira L. Herman
Philip M. Guffy

*Attorneys for Yuri Vladimirovich Rozhkov in his Capacity as Trustee and Foreign Representative for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re:

      **LARISA MARKUS,**             Chapter 15

                                               Case No. 19-10096 (   )

                 Debtor in a Foreign Proceeding.
---------------------------------------------------------------x

## DECLARATION OF YURI VLADIMIROVICH ROZHKOV PURSUANT TO 11 U.S.C. § 1515 AND IN SUPPORT OF VERIFIED PETITION, AND RECOGNITION HEARING

I, Yuri Vladimirovich Rozhkov, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

1. I am over the age of 18 and, if called upon, could testify to all matters set forth in this statement.

2. I am the court appointed trustee and financial administrator for Ms. Larisa Markus (the "Debtor" or "Ms. Markus") in connection with her pending insolvency proceeding (the "Russian Insolvency Proceeding") under the Russian Federation Federal Law № 127-FZ "On Insolvency (Bankruptcy)" (the "Russian Bankruptcy Law").[1]

---

[1] Although my native language is Russian, I am fluent in English, and have elected to execute and submit the documents in this case in English. Additionally, prior to the execution of this Declaration and all other documents in connection with this chapter 15 case, I was provided copies of all documents in both English and Russian.

3.      On April 19, 2016, Bank VTB 24, a creditor of Ms. Markus, filed an application for the commencement of a personal bankruptcy proceeding against Ms. Markus under the Russian Bankruptcy Law. The application for commencement was granted on April 22, 2016, by the Moscow Arbitrazh Court. On October 18, 2016, the Moscow Arbitrazh Court entered an order granting the application of Bank VTB 24, initiating a debt restructuring procedure in respect of Ms. Markus and appointing me as Ms. Markus' financial administrator (the "<u>Commencement Order</u>"). A copy of the Commencement Order is attached to the *Declaration of Sergey Sokolov in Support of Verified Petition and Recognition Hearing* (the "<u>Russian Counsel Declaration</u>") as <u>Exhibit F</u>.

4.      On May 25, 2017, the Moscow Arbitrazh Court determined that there was no evidence that Ms. Markus was eligible for restructuring of debts and that there was evidence that Ms. Markus is bankrupt and initiated a procedure to liquidate her property. By the same judgment the Moscow Arbitrazh Court appointed me as Ms. Markus' financial administrator to preside over the liquidation (the "<u>Liquidation Order</u>"). A copy of the Liquidation Order is attached to the Russian Counsel Declaration as <u>Exhibit G</u>.

5.      The Moscow Arbitrazh Court issued a notice to creditors establishing August 3, 2017, as the bar date for creditors to file claims against Ms. Markus. The notice of the claims bar date was published in the newspaper "Kommersant" and the Unified Federal Register of Bankruptcy Data.[2]

6.      On November 16, 2016, the Deposit Insurance Agency, as bankruptcy trustee of Vneshprombank, submitted a claim against the Debtor for recovery of debts under certain

---

[2] The Unified Federal Register of Bankruptcy Data is the primary means for providing notices regarding bankruptcy cases in Russia. The Unified Federal Register of Bankruptcy Data can be found at: http://www.bankrot.fedresurs.ru/.

credit agreements in the amount of RUB 1,010,846,992.4 (approximately $15.2 million). The Moscow Arbitrazh Court approved the bank's claim and included it into register of creditors' claims on March 28, 2017. *See* Moscow Arbitrazh Court's Ruling attached to the Russian Counsel Declaration as Exhibit H.

7. On July 26, 2017, the Deposit Insurance Agency, as bankruptcy trustee of Vneshprombank, submitted a claim against the Debtor for damages inflicted on Vneshprombank as a result of the crimes committed in her capacity as president of the bank in the amount of RUB 113,526,038,454.79 (approximately $1.7 billion). The Moscow Arbitrazh Court rejected the claim by the ruling dated October 17, 2017. On December 29, 2017, the Ninth Appeal Court reversed the ruling of the lower court, approved Vneshprombank's application, and included its claim in the amount of RUB 113,526,038,454.79 ($1.7 billion) into the register of Ms. Markus' creditors. *See* Ninth Appeal Court Ruling, attached to the Russian Counsel Declaration as Exhibit I.

8. At this time, there are two creditors in the register of creditors of Ms. Markus; (a) Vneshprombank having a claim of approximately $1.715 billion, representing 99.73% of votes, and (b) Bank VTB (PJSC) with a secured claim of approximately $4.6 million, representing 0.27% of votes.

9. The term of the Russian Insolvency Proceeding has been extended through May 16, 2019 (and may be further extended).

10. On December 18, 2018, the Deposit Insurance Agency, as bankruptcy trustee of Vneshprombank, submitted a claim in Vneshprombank's bankruptcy proceedings against Ms. Markus and other former officers of Vneshprombank seeking damages of RUB 218,989,872,000 (approximately $3,155,000,000) based on their actions as persons controlling

Vneshprombank. On December 24, 2018, the Moscow Arbitrazh Court accepted this claim for consideration and scheduled a hearing for April 10, 2019.

11. Under the Commencement Order, the Liquidation Order, and the Russian Bankruptcy Law, I am responsible for timely verifying creditors' claims filed against Ms. Markus, managing her estate, tracing and challenging transactions that did not benefit the estate, and pursuing actions against persons or entities that contributed to Ms. Markus' insolvency.

12. Accordingly, based on the advice of counsel, it is my understanding that I am authorized to act as the "foreign representative" of Ms. Markus in her chapter 15 case.

## RECOGNITION AS A FOREIGN MAIN PROCEEDING

13. It is my belief that the Russian Insolvency Proceeding is currently the only insolvency proceeding with respect to Ms. Markus.[3] At this time, I do not intend to commence any additional foreign insolvency proceedings on behalf of Ms. Markus. To my knowledge, I am not aware of any creditors intending to commence any other foreign insolvency proceedings against Ms. Markus or that Ms. Markus intends to commence another foreign insolvency proceeding. This statement is made in satisfaction of the requirements of section 1515(c) of title 11 of the United States Code (the "Bankruptcy Code"), and will be timely supplemented if additional foreign ancillary proceedings are commenced.

14. I believe that the Russian Insolvency Proceeding is a "foreign main proceeding" as I have been advised that term is defined in sections 101(23) and 1502(4) of the Bankruptcy Code because, among other things, Ms. Markus' "habitual residence" is in Russia. Ms. Markus

---

[3] While there were other judicial proceedings in Russia involving Ms. Markus, including a criminal proceeding (that resulted in her conviction for eight years and six months imprisonment in 2017), I am advised that these proceedings are not "foreign proceedings" as such term is defined under section 101(23) of the Bankruptcy Code.

-4-

is a Russian citizen, with a Russian passport, she owns property in Russia and her last known registered address is in Moscow, Russia. Russia is therefore presumed to be the center of main interests of Ms. Markus under section 1516(c) of the Bankruptcy Code.

15. I believe that Ms. Markus is eligible to be a "debtor" under section 109 of the Bankruptcy Code, because, among other things, Ms. Markus owns property located in the State of New York.

16. *First*, Ms. Markus is the sole shareholder of First Integrated Construction, Inc. ("FIC"), a New York corporation formed on March 10, 2004.[4]

17. *Second*, Blank Rome LLP, as my counsel, holds an unapplied retainer that I transferred to Blank Rome LLP for the benefit of Ms. Markus' estate, in a bank account in New York City. Any unused portion of the retainer belongs to, and will be turned over to, the estate. The unapplied retainer constitutes property of Ms. Markus' estate.

18. *Third,* upon information and belief, Ms. Markus has an interest in the LM Companies (as defined below), to which she transferred real estate in this district.

19. Accordingly, it is my understanding based on the advice of counsel that Ms. Markus is eligible to be a debtor under section 109 of Bankruptcy Code and that venue is proper in the Southern District of New York under applicable law.

20. As the financial administrator and foreign representative of Ms. Markus, I have directed my United States counsel, including Blank Rome LLP to: (i) commence this chapter 15

---

[4] This information appears in the *MOTION OF LM REALTY 31B, LLC; LM REALTY 27D, LLC; LM REALTY 24C, LLC; LM REALTY 23H, LLC; LM REALTY 20A, LLC; LM REALTY 18 WEST, LLC; LM REALTY 10C, LLC; LM PROPERTY MANAGEMENT LLC; THE LARISA MARKUS REVOCABLE TRUST; PROTAX SERVICES INC.; PROTAX SERVICES CONSULTING, INC.; ILYA BYKOV; FIRST INTEGRATED CONSTRUCTION, INC.; AND INNOVATIVE CONSTRUCTION GROUP, INC. FOR ENTRY OF AN ORDER PURSUANT TO RULE 9016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE QUASHING THE SUBPOENAS ISSUED BY THE FOREIGN REPRESENTATIVE* filed on September 28, 2017, in case No. 16-13534 (MKV) at Dkt. No. 37. The motion was later amended, and the relevant paragraph was deleted. The original motion is attached to the Russian Counsel Declaration as Exhibit L.

case for Ms. Markus; (ii) seek relief to prohibit parties from continuing, commencing or initiating litigation against Ms. Markus, (iii) seek discovery concerning Ms. Markus' assets which might be located in the United States; and (iv) seek such additional assistance as we may request from time to time to facilitate the Russian Insolvency Proceeding and the orderly administration of Ms. Markus' affairs, including, without limitation, implementing and/or effectuating the Commencement Order and Liquidation Order.

**ALTERNATIVELY, RECOGNITION AS A FOREIGN NON-MAIN PROCEEDING**

21. Alternatively, if the Russian Insolvency Proceeding does not qualify as a foreign main proceeding – which it should – I seek recognition as a foreign non-main proceeding.

22. It is my understanding based on the advice of counsel that a foreign non-main proceeding is a "foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment. 11 U.S.C. §1502(5).

23. Additionally, it is my understanding based on the advice of counsel that an "establishment" is defined as "any place of operations where the debtor carries out a non-transitory economic activity." 11 U.S.C. § 1502(2). In the context of an individual debtor, the term "establishment" has been interpreted as a place where a person maintains a residence or place of employment. *Lavie v. Ran (In re Ran)*, 607 F.3d 1017, 1027 (5th Cir. 2010) (holding that a secondary residence or place of employment could be an "establishment"). This is purely a factual determination. *Id.* at 1026.

24. At all times relevant, it is my understanding that Ms. Markus has had an "establishment" in Russia within the meaning of section 1502.

25. *First*, at the time of commencement of the Russian Insolvency Proceeding, Ms. Markus owned property in Russia and owned shares in various Russian companies. Her current residence (in prison) is in Moscow, Russia.

26. *Second*, Ms. Markus' bankruptcy and criminal cases are pending in Russia.

27. Accordingly, the evidence establishes that, at all relevant times, Ms. Markus was carrying out non-transitory economic activity in Russia, and the Verified Petition qualifies for recognition as a foreign non-main proceeding.

### THE NEED FOR DISCOVERY IN THE UNITED STATES

28. Ms. Markus was the founder and a shareholder of Vneshprombank, previously one of the largest Russian banks. She served as president of Vneshprombank from September 29, 1995 to July 19, 2016. As more fully set forth below, a Russian court determined that starting not later than May 2009, Ms. Markus, together with her accomplices, perpetrated a large-scale fraud by embezzling funds from Vneshprombank. Currently, Vneshprombank is the subject of its own bankruptcy proceeding under the Russian Bankruptcy Law. On February 15, 2017 this Court granted the petition of the Vneshprombank's trustee to recognize Vneshprombank's Russian bankruptcy proceeding as a foreign main proceeding. *See* Case No. 16-13534-mkv, at Dkt. No. 24.

29. Upon information and belief, between 2004 and 2015, Ms. Markus formed at least ten companies in New York: LM Property Management, LLC, LM Realty 24C, LLC, LM Realty 27D, LLC, LM Realty 31B, LLC, LM Realty 20A, LLC, LM Realty 23H, LLC, LM Realty 18 WEST, LLC, LM Realty 10C, LLC, FIC and Innovative Construction Group, Inc ("ICG") (collectively, the "LM Companies")[5].

---

[5] *See* note 4 *supra*.

30. Between 2008 and 2015, Ms. Markus used over **$10 million** to purchase eight (8) apartments in Manhattan either in her own name or in the name of the LM Companies, as follows:

| No. | Apartment | Initial Purchase/ Subsequent Transfer Date | Purchaser/Transferee | Amount |
|---|---|---|---|---|
| 1 | Apartment **31B**, 10 West End Avenue, New York, NY | June 26, 2008 | Ms. Markus | $2,342,178 |
|   |   | August 31, 2010 | LM Realty 31B, LLC | No known consideration |
| 2 | Apartment **31C**, 10 West End Avenue, New York, NY | October 30, 2008 | Ms. Markus | $ 3,029,293 |
|   |   | August 31, 2010 | LM Property Management, LLC | No known consideration |
| 3 | Apartment **27D**, 10 West End Avenue, New York, NY | May 27, 2009 | Ms. Markus | $1,350,000 |
|   |   | August 31, 2010 | LM Realty 27D, LLC | No known consideration |
|   |   | October 14, 2015 (SOLD) | Sumauma Properties, LLC | $2,200,000 |
| 4 | Apartment **24C**, 40 Broad Street, New York, NY | April 21, 2011 | LM Realty 24C, LLC | $474,102 |
| 5 | Apartment **20A**, 40 Broad Street, New York, NY | April 21, 2011 January 9, 2019 (sheriff sale held) | LM Realty 20A, LLC | $781,253 |
| 6 | Apartment **23H**, 40 Broad Street, New York, NY | April 21, 2011 | LM Realty 23H, LLC | $1,134,187 |
| 7 | Apartment **26A**, 18 West 48th Street, New York, NY | November 29, 2012 May 31, 2016 **(SOLD)** | LM Realty 18 WEST, LLC Reuben Mordechay | $2,165,000 $2,575,000 |
| 8 |   | December 4, 2015 | LM Realty 10C, LLC | $5,095,250 |

-8-

| No. | Apartment | Initial Purchase/ Subsequent Transfer Date | Purchaser/Transferee | Amount |
|---|---|---|---|---|
|  | Apartment **10C**, 50 Riverside Boulevard, New York, NY |  |  |  |

31.     Two apartments (**27D** at 10 West End Avenue and **26A** at 18 West 48th Street) were sold in 2015 and 2016, respectively.

32.     All the apartments initially purchased in Ms. Markus's name have been transferred to the LM Companies.

33.     Upon information and belief, Ms. Markus retains an interest in the eponymously named LM Companies[6].

34.     In December 2015, Ms. Markus was arrested on charges of committing large-scale fraud as president of Vneshprombank. Under Russian law, large-scale fraud is the stealing of another person's property or the acquisition of the right to another person's property in an amount exceeding RUB 1,000,000 (approximately $14,400) by fraud or breach of trust.

35.     On May 12, 2017, after trial, Ms. Markus was convicted of large-scale fraud under Russian law. *See* Criminal Conviction, attached to the Russian Counsel Declaration as Exhibit D. Thereafter, Ms. Markus appealed the conviction. On August 15, 2017, the Judicial Division for Criminal Cases of the Moscow City Court partly amended the lower court ruling and ultimately sentenced Ms. Markus to eight years and six months of imprisonment. *See* Appeal Decision, attached to the Russian Counsel Declaration as Exhibit E. Currently, Ms.

---

[6] *See* note 4 *supra*.

Markus is incarcerated at the Federal State-Funded Institution Detention Centre No. 6 of the Moscow Department of the Federal Penal Service of Russia, at ul. Shosseynaya 92, Moscow. *See* Letter from Investigator of Special Cases of the Second Division of the Organized Crime Investigation Department, attached to the Russian Counsel Declaration as <u>Exhibit C</u>.

**NEW YORK ACTIONS AFFECTING THE DEBTOR OR PROPERTY IN WHICH THE DEBTOR MAY HAVE AN INTEREST**

    A.    **40 Broad Street Portfolio Foreclosure Actions**

36.    On November 2, 2017, 40 Broad Street Portfolio, LLC ("<u>40 Broad Street Portfolio</u>") commenced three foreclosure actions in the Supreme Court of the State of New York against three apartments owned by the LM Companies: LM Realty 20A, LLC, LM Realty 23H, LLC and LM Realty 24C, LLC. *See 40 Broad Street Portfolio, LLC v. LM Realty 20A, LLC et al.,* Case No 850252/2017; *40 Broad Street Portfolio, LLC v. LM Realty 23H, LLC et al.,* Case No 850253/201; *40 Broad Street Portfolio, LLC v. LM Realty 24C, LLC et al.,* Case No 850254/2017.

37.    In its complaint, among other things, 40 Broad Street Portfolio alleges that it provided loans to the LM Companies of $500,000 for each apartment subject to the foreclosure action, secured by a separate mortgage on each such apartment – (units 20A, 23H and 24C in 40 Broad Street, New York, NY 10004). The said LM Companies allegedly failed to timely repay the mortgages.

38.    On October 26, 2018, the Court entered a Judgment of Foreclosure adjudging and ordering the sale of Unit 20A at public auction, with the proceeds of such sale to be used to repay the debt owed. The auction is scheduled for January 9, 2019, in New York City. *See* Notice, attached as <u>Exhibit J</u> to the Russian Counsel Declaration.

39. The actions against LM Realty 23H, LLC and LM Realty 24C, LLC are pending in the Supreme Court of the State of New York.

40. Upon information and belief, LM Realty 20A, LM Realty 23H, and LM Realty 24C intentionally defaulted on 40 Broach Street Portfolio's mortgages to divert rental income to persons associated with Ms. Markus.

41. Upon information and belief, 40 Broad Street Portfolio is associated with Ms. Markus and the foreclosures are a collusive attempt to sell the properties in question and divert the proceeds of such sales to persons associated with Ms. Markus. Moreover, unlike the HSBC Action described below, no attorney entered an appearance to defend the LM Companies.

**B.  10WEA Foreclosure Action**

42. On June 4, 2018, 10WEA Realty, LLC ("10WEA Realty") commenced a foreclosure action in the Supreme Court of the State of New York against LM Realty 10C, LLC – owner of Unit 10C in 50 Riverside Boulevard, New York, NY 10069. *See 10WEA Realty, LLC v. LM Realty 10C, LLC et al.*, Case No 850159/2018.

43. 10WEA Realty allegedly provided loans to LM Realty 10C, LLC of $3,000,000 secured by a mortgage on Unit 10C. LM Realty 10C, LLC allegedly failed to timely repay the loan.

44. Upon information and belief, LM Realty 10C, LLC intentionally defaulted on the 10WEA Realty mortgage to divert rental income to persons associated with Ms. Markus.

45. Upon information and belief, 10WEA Realty is associated with Ms. Markus and the 10 WEA Action is a collusive attempt to sell the property and divert the proceeds to persons associated with Ms. Markus. Moreover, unlike the HSBC Action described below, no attorney entered an appearance to defend the LM Companies.

### C. HSBC Foreclosure Action

46    On November 19, 2018 HSBC Bank USA, N.A. ("HSBC") commenced an action in the Supreme Court of the State of New York against LM Realty 31B, LLC – owner of Unit 31B in 10 West End Avenue, New York, NY 10023. *See HSBC Bank USA, N.A. v. LM Realty 31B, LLC et al.*, Case No 850323/2018 (the " HSBC Action").

47    HSBC provided loans to Ms. Markus and then to LM Realty 31B, LLC in the aggregate amount of $884,000, secured by a mortgage on the apartment (the "HSBC Mortgage"). The borrowers allegedly failed to make payments since August 2017.

48    Upon information and belief, LM Realty 31B, LLC intentionally defaulted on the HSBC Mortgage to divert rental income to persons associated with Ms. Markus.

49    Daniel Singer, who represents the LM Companies in the VPB Chapter 15 proceeding, represents LM Realty 31B, LLC in the HSBC Action.

### D. BG Atlantic, Inc. Action

50    On November 9, 2016, BG Atlantic, Inc. commenced an action against Ms. Markus in the Supreme Court of the State of New York County of New York for recovery of damages for a breach of contract. *See BG ATLANTIC, INC. v. Larisa Markus, Case No 655892/2016* ("BG Action"). As alleged in the complaint, "[i]n consideration for the oral agreements between [Ms. Markus] and her debtors which were assigned to plaintiff, [Ms. Markus] agreed to pay the full outstanding debt" and failed to timely pay such amounts.

51    The parties in the BG Action reached a settlement, but Ms. Markus allegedly defaulted. On January 9, 2017, the court entered a $4.7 million judgment against Ms. Markus in favor of BG Atlantic, Inc. The judgment is attached to the Russian Counsel Declaration as Exhibit K.

52	Upon information and belief, the BG Action is collusive and designed to create the appearance that an unrelated third party has a judgment against Ms. Markus, while at all times relevant, BG Atlantic, Inc. has secretly been associated with Ms. Markus.  The complaint in the BG Action fails to allege any reasonable basis explaining why Ms. Markus would have assumed liability for another person, or the nature of such liability.

[*Remainder of this page intentionally left blank.*]

I declare under penalty of perjury under the laws of the United States of America that to the best of my knowledge the foregoing is true and correct.

Executed this 10 TH day of January, 2019 in Moscow, Russia.

Yuri Vladimirovich Rozhkov
Trustee and Foreign
Representative for the Debtor