**GREENBERG TRAURIG, LLP**
MetLife Building
200 Park Avenue
New York, New York 10166
(212) 801-9200
Alan J. Brody

*Counsel for HSBC Mortgage Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 19-10096 (MKV) |
|  | ) |  |
| LARISA MARKUS, | ) | Chapter 15 |
|  | ) |  |
| Debtor in a Foreign Proceeding. | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |

## CERTIFICATION OF ALAN J. BRODY

1.  I am a member of the Bar of the State of New Jersey and a Shareholder at the law firm of Greenberg Traurig, LLP. I am familiar with the facts set forth herein and make this Certification in support of HSBC Mortgage Corporation's Objection to Entry of Form of Order Recognizing Foreign Proceeding.

2.  Annexed hereto as **Exhibit A** is a true and correct copy of an Assignment of Mortgage dated August 31, 2010, from Emigrant Mortgage Company, Inc. to HSBC with respect to 10 West End Avenue, Apartment 31B, New York, New York ("Apt. 31B"), recorded in CRFN 20100003633143 in the City Register of New York, New York County (the "City Register").

3.  Annexed hereto as **Exhibit B** is a true and correct copy of a Mortgage dated August 10, 2010, from LM Realty 31B to HSBC with respect to Apt. 31B, recorded in CRFN 2010000340076 in the City Register.

4.     Annexed hereto as **Exhibit C** is a true and correct copy of a Consolidation, Extension and Modification Agreement dated August 31, 2010, recorded in CRFN 2010000363143 in the City Registrar.

5.     Annexed hereto as **Exhibit D** is a true and correct copy of Mortgage dated August 28, 2012, from LM Realty 31B to HSBC with respect to Apt. 31B, recorded in CRFN 2012000365003 in the City Register.

6.     Annexed hereto as **Exhibit E** is a true and correct copy of a Consolidation Extension and Modification Agreement dated August 28, 2012, recorded in CRFN 20120003655004 in the City Register.

7.     Annexed hereto as **Exhibit F** is a true and correct copy the Complaint filed in the action entitled *HSBC Bank U.S.A., N.A. v. LM Realty 31B LLC, et. al.*, Case No. 850323/2018, pending in the Supreme Court of the State of New York.

8.     Annexed hereto as **Exhibit G** is a true and correct copy and Lists and Statements Filed Pursuant to Bankruptcy Rule 1007(a)(4) [Doc. 4] filed by Yuri Vladiminovich Rozhkov, the financial administrator of Larisa Markus in the above-captioned bankruptcy case.

I hereby certify that the foregoing statements made by me are true to the best of my knowledge.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

/s/ Alan J. Brody
Alan J. Brody

*NJ 231152422v1*

**<u>EXHIBIT A</u>**

**ASSIGNMENT OF MORTGAGE**     **MIN #100022405798717974**
                               **MERS #1-888-679-6377**

    **KNOW THAT, EMIGRANT MORTGAGE COMPANY, INC.**, having an office and place of business at 7 Westchester Plaza, Elmsford, New York 10523, Assignor, in consideration of the sum of NINE HUNDRED SIXTY FOUR THOUSAND EIGHT HUNDRED FORTY AND 35/100 **(964,840.35)** Dollars paid by **MERS (Mortgage Electronic Registration Systems, Inc.) as nominee for HSBC Mortgage Corporation (USA)** its successors and/or assigns, having an office and place of business at 3300 S.W. 34th Avenue, Suite 101, Ocala, FL 34474, P.O. Box 2026, Flint, Michigan 48501-2026, MERS #1-888-679-6377 Assignee, hereby assigns unto the Assignee a mortgage dated the **26TH** day of **JUNE, 2008,** made and executed by **LARISA MARKUS** to **EMIGRANT MORTGAGE COMPANY,** INC, in the principal sum of **$975,000.00** and recorded on **JULY 18, 2008** in **CRFN 2008000286218** in the office of the **REGISTER** of **NEW YORK** COUNTY and covering premises 10 West End Avenue, #31B, New York, NY 10023-7939

    **TOGETHER** with the bonds or notes or obligations described in said mortgages, and the moneys due and to grow due thereon with interest; TO HAVE AND TO HOLD the same unto the Assignee and to the successors, legal representatives and assigns of the Assignee forever.

    The word "Assignor" or "Assignee" shall be construed as if it read "assignors" or "assignees" whenever the sense of this instrument so requires.

    This Assignment is not subject to the requirement of Section 275 of the Real Property Law because the Assignee is not acting as a nominee of the Mortgagor and the Mortgage continues to secure a bonafide obligation.

    This assignment is made without warranty, express or implied, and without recourse to the Assignor in any event whatsoever.

    **IN WITNESS WHEREOF,** the Assignor has executed this Assignment as of this 31st day of August, 2010.

                        **EMIGRANT MORTGAGE COMPANY, INC.**

                        **By:**
                              Ashish Patel Asst. Vice President

State of New York   )
              ss.:
County of New York )

    On the 31st day of August, 2010, before me, the undersigned, personally appeared Ashish Patel, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

**SEAL**

        **VELMA GEORGE**
      **Notary Public, State of New York**
         **No. 01GE6192160**
       **Qualified in Kings County**
    **Commission Expires 08/25/20**

                        Notary Public

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2010102600189002001E246E

## RECORDING AND ENDORSEMENT COVER PAGE

PAGE 1 OF 2

| | | |
|---|---|---|
| Document ID: **2010102600189002** | Document Date: 08-31-2010 | Preparation Date: 10-26-2010 |

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 1

| PRESENTER: | RETURN TO: |
|---|---|
| TITLE AMERICA LAND SERVICES<br>77 NEWBRIDGE ROAD<br>PICK UP TO KAREN LEVINE<br>HICKSVILLE, NY 11801<br>516-733-1822<br>lhunter@titleamericaland.com | HSBC MORTGAGE CORP<br>2929 WALDEN AVENUE<br>DEPEW, NY 14043 |

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 1151 | 1158 | Entire Lot | 31B | 10 WEST END AVENUE |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

### CROSS REFERENCE DATA

CRFN: 2008000286218

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| EMIGRANT MORTGAGE COMPANY INC<br>7 WESTCHESTER PLAZA<br>NEW YORK, NY 10523 | MERS<br>PO BOX 2026<br>FLINT, MI 48501 |

### FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | |
| MTA: | $ | 0.00 | |
| NYCTA: | $ | 0.00 | |
| Additional MRT: | $ | 0.00 | |
| TOTAL: | $ | 0.00 | |
| Recording Fee: | $ | 42.00 | |
| Affidavit Fee: | $ | 0.00 | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed    10-29-2010 15:56
City Register File No.(CRFN):
**2010000363144**

*Annette M Hill*

*City Register Official Signature*

# EXHIBIT B

Return To:

 CASSIN & CASSIN
2900 WESTCHESTER AVENUE, SUITE
402, PURCHASE , NY  10577


Prepared By:
RICHTER, SUSAN, ,

*TA- 17811 - NY*
*1151*
*1158*
*$ 127.75*

———————————— [Space Above This Line For Recording Data] ————————————

# MORTGAGE MIN 100022405798717974

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) **"Security Instrument."** This document, which is dated **August 31, 2010**
together with all Riders to this document, will be called the "Security Instrument."
(B) **"Borrower."** LM REALTY 31B LLC

whose address is **40 RECTOR STREET UNIT 1502, NEW YORK, NY 10006**

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of 3300 S.W. 34th Avenue,
Suite 101, Ocala, FL 34474, P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **FOR
PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**
(D) **"Lender."** HSBC Mortgage Corporation (USA)

will be called "Lender." Lender is a corporation or association which exists under the laws of
**DELAWARE**                                    . Lender's address is **2929 WALDEN AVENUE,
DEPEW, NY  14043-2602**

| Section: | Block: 1151 | Lot: 1158 | Unit: |
|---|---|---|---|
| NY 9113 | | | |

**NEW YORK** - Single Family - **Fannie Mae/Freddie Mac** UNIFORM INSTRUMENT WITH MERS

0579871797
Form 3033 1/01

Wolters Kluwer Financial Services
VMP®-6A(NY) (0811)
Page 1 of 17          Initials:

**(E) "Note."** The note signed by Borrower and dated **August 31, 2010** , will be called the "Note." The Note shows that I owe Lender **SEVEN THOUSAND THREE HUNDRED NINE and 99/100**

Dollars (U.S. **$7,309.99** ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by **September 01, 2040**

**(F) "Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

**(G) "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(I) "Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider  [X] Condominium Rider  [ ] Second Home Rider
[ ] Balloon Rider  [ ] Planned Unit Development Rider  [X] 1-4 Family Rider
[ ] VA Rider  [ ] Biweekly Payment Rider  [ ] Other(s) [specify]

**(J) "Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(K) "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees and Assessments."

**(L) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(N) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(O) "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(Q) "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

NY 9113                                                                                              0679871797
NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
-6A(NY) (0811)                          Page 2 of 17                    Initials:                   Form 3033 1/01

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at **10 WEST END AVENUE, Unit 31B**

[Street]

**NEW YORK**                    [City, Town or Village]. New York **10023**          [Zip Code].

This Property is in **NEW YORK**                                                          County. It has the following legal description: **SEE SCHEDULE A ATTACHED HERETO**

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

NY 9113                                                                                                              0579871797
NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP®-6A(NY) (0811)                          Page 3 of 17                    Initials                    Form 3033 1/01

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

NY 9113                                                                                          0579871797

NEW YORK - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

VMP®-6A(NY) (0811)                          Page 4 of 17                    Initials            Form 3033 1/01

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any):

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any):

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

NY 9113                                                                                          0579871797
NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP®-6A(NY) (0811)                    Page 5 of 17                  Initials                Form 3033 1/01

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period

NY 9113                                                                                          0579871797
NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP®-6A(NY) (0811)                         Page 7 of 17              Initials               Form 3033 1/01

that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing, or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b) Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

NY 9113                                                                                                    0579871797
NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP®-6A(NY) (0811)                              Page 8 of 17                Initials _____          Form 3033 1/01

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

   **11.  Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

NY 9113                                                                                    0579871797
NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP®-6A(NY) (0811)                    Page 10 of 17            Initials                Form 3033 1/01

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If

Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."**

**If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another**

Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

[x] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

NY 9113                                                                                    0579871797
NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP®-6A(NY) (0811)                    Page 15 of 17            Initials              Form 3033 1/01

BY SIGNING BELOW. I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____ (Seal)
LM REALTY 3YB LLC BY STEVEN                    -Borrower
J GOLDSTEIN, ESQ

_____ (Seal)
                                               -Borrower

BY:  STEVEN J. GOLDSTEIN, ESQ., AS AUTHORIZED SIGNATORY

_____ (Seal)
                                               -Borrower

_____ (Seal)
                                               -Borrower

_____ (Seal)
                                               -Borrower

_____ (Seal)
                                               -Borrower

NY 9113                                                          0579871797
NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP®-6A(NY) (0811)                  Page 16 of 17                Form 3033 1/01

**STATE OF NEW YORK,** _New York_                                County ss:

On the _31_ day of _August_ _2010_ before me, the undersigned, a notary public in and for said state, personally appeared

_Steven J. Goldstein_

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

✓ SEAL

EVANGELIA PAPADO.
Notary Public, State of New York
No. 11PA6116467
Qualified in West County
Commission Expires 9/27/2012

Tax Map Information:

NY 9113                                                                      0579871797
NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP®-6A(NY) (0811)              Page 17 of 17              Initials _____        Form 3033 1/01

# 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 31st        day of August, 2010                    , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to HSBC Mortgage Corporation (USA)

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: 10 WEST END AVENUE, Unit 31B, NEW YORK, NY  10023

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

CD 2063                                                                          0579871797

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01

Wolters Kluwer Financial Services
VMP ®-57R (0811)
Page 1 of 3        Initials:

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

CD 2063                                                                              0579871797

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®-57R (0811)                    Page 2 of 3          Initials:            Form 3170 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)
                              -Borrower
LM REALTY 31B LLC BY STEVEN J
GOLDSTEIN, ESQ
AS AUTHROIZED SIGNATORY

_____ (Seal)
                              -Borrower


_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower


_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower


CD 2063                                                  0579871797

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®-57R (0811)              Page 3 of 3          Initials: _____   Form 3170 1/01

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 31st      day of August, 2010                ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to HSBC Mortgage Corporation
(USA)

(the

"Lender") of the same date and covering the Property described in the Security Instrument
and located at:

10 WEST END AVENUE, Unit 31B, NEW YORK, NY  10023
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements
of, a condominium project known as:

10 WEST END AVENUE CONDOMINIUM
[Name of Condominium Project]

(the "Condominium Project").  If the owners association or other entity which acts for the
Condominium Project (the "Owners Association") holds title to property for the benefit or use
of its members or shareholders, the Property also includes Borrower's interest in the Owners
Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under
the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i)
Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii)
code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally
accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which
is satisfactory to Lender and which provides insurance coverage in the amounts (including
deductible levels), for the periods, and against loss by fire, hazards included within the term
"extended coverage," and any other hazards, including, but not limited to, earthquakes and
floods, from which Lender requires insurance, then: (i) Lender waives the provision in

CD 2061                                                              0579871797

MULTISTATE CONDOMINIUM RIDER - Single Family - **Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT**
Form 3140 1/01
Wolters Kluwer Financial Services
VMP ®-8R (0810)
Page 1 of 3            Initials:

Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

CD 2061                                                                                    0579871797
MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®-8R (0810)                      Page 2 of 3            Initials:_____        Form 3140 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____ (Seal)
-Borrower

LM REALTY 31B LLC BY STEVEN J
GOLDSTEIN, ESQ
AS AUTHORIZED SIGNATORY

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

CD 2061                                                          0579871797
MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT
VMP ®-8R (0810)                   Page 3 of 3        Initials: _____        Form 3140 1/01

# ADJUSTABLE RATE RIDER
### (1-Year LIBOR Index - Rate Caps)
### (Assumable after Initial Period)

THIS ADJUSTABLE RATE RIDER is made this 31st day of August, 2010 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to HSBC Mortgage Corporation (USA)

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

10 WEST END AVENUE, Unit 31B, NEW YORK, NY  10023
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of 4.6250%. The Note provides for changes in the interest rate and the monthly payments as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the first day of September, 2017 and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

CD 2024
MULTISTATE ADJUSTABLE RATE RIDER – 1-Year LIBOR Index (Assumable after Initial Period)
Single Family - Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Initials:

0579871797
Form 5131 3/04

VMP656R (0804)
Page 1 of 4

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.



2010091500782002002E2EC1

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 30 |
|---|---|

| Document ID: **2010091500782002** | Document Date: 08-31-2010 | Preparation Date: 10-08-2010 |
|---|---|---|

Document Type: MORTGAGE
Document Page Count: 29

**PRESENTER:**

TITLE AMERICA LAND SERVICES
77 NEWBRIDGE ROAD
PICK UP TO KAREN LEVINE
HICKSVILLE, NY 11801
516-733-1822
lhunter@titleamericaland.com

**RETURN TO:**

CASSIN & CASSIN
2900 WESTCHESTER AVENUE SUITE 402
PURCHASE, NY 10577

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1151 | 1158  Entire Lot | 31B | 10 WEST END AVENUE |

**Property Type:** SINGLE RESIDENTIAL CONDO UNIT

## CROSS REFERENCE DATA

CRFN_____  _or_  Document ID_____  _or_ _____ Year_____ Reel____ Page_____ _or_ File Number_____

## PARTIES

**MORTGAGOR/BORROWER:**
LM REALTY 31B, LLC
C/O 40 RECTOR STREET, SUITE 1502
NEW YORK, NY 10006

**MORTGAGEE/LENDER:**
MERS
PO BOX 2026
FLINT, MI 48501

## FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 7,309.99 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 7,309.99 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 36.50 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 73.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 18.25 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 127.75 | | | |
| Recording Fee: | $ | 182.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK**

Recorded/Filed        10-12-2010 11:35
City Register File No.(CRFN):
**2010000340076**

*Annette M Hill*

*City Register Official Signature*

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Two and One Quarter** percentage point(s)
( **2.2500** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.6250** % or less than **2.2500** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **Two**
percentage point(s)
( **2.0000** %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **9.6250** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1.  **UNTIL BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

CD 2024
MULTISTATE ADJUSTABLE RATE RIDER - 1-Year LIBOR Index (Assumable after Initial Period)
Single Family - Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

0579871797
Form 5131 3/04

Initials:

VMP856R (0604)
Page 2 of 4

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**2. AFTER BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CD 2024
MULTISTATE ADJUSTABLE RATE RIDER - 1-Year LIBOR Index (Assumable after Initial Period)
Single Family - Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Initials: _____

0579871797
Form 5131 3/04

VMP656R (0804)
Page 3 of 4

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
                          -Borrower

LM REALTY 31B LLC BY STEVEN J
GOLDSTEIN, ESQ
AS AUTHORIZED SIGNATORY

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

CD 2004
MULTISTATE ADJUSTABLE RATE RIDER - 1-Year LIBOR Index (Assumable after Initial Period)
Single Family - Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Initials _____

0579871797
Form 5131 3/04

VMP856R (0804)
Page 4 of 4

**Title America Land Services, Inc.**
Issued on behalf of
*Old Republic National Title Insurance Company*

**Title No.:** *TA-17811-NY*

## SCHEDULE A

The Condominium Unit (the "Unit") in the condominium known as The 10 West End Avenue Condominium (the "Condominium"), comprised of the land described below and made a part hereof (the "Land") and the building known by the number 10 West End Avenue, New York, New York 10023 (the "Building"), said Unit being designated and described as Unit No. 31B in that certain declaration dated May 1, 2007, made by the Grantor under Article 9-B of the Real Property Law of the State of New York (the "Condominium Act"), establishing a plan for condominium ownership of the Building and the Land upon which the Building is situated, which declaration was recorded in the Office of the Register of the City of New York, County of New York (the "City Register's Office"), on the 12th day of June, 2007, as CFRN 2007000303374 (such declaration and any amendments thereto being referred to hereinafter, collectively, as the "Declaration"); said Unit also being designated as Tax Lot 1158 in Block 1151 on the Tax Map of the Real Property Assessment Department of the City of New York for the Borough of Manhattan and on the floor plans of the Building dated May 9th, 2007 (the "Floor Plans"), and filed in with the Real Property Assessment Department of the City of New York on June 12, 2007, as Condominium Plan No. 1719 and also filed in the City Register's Office, County of New York on June 1, 2007, as CRFN 2007000303375.

TOGETHER with an undivided 0.6846% interest in the Common Elements (as such term is defined in the Declaration) appurtenant to the Unit.

The land upon which the Unit is situated being more particularly bounded and described as follows:

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the easterly side of West End Avenue and the southerly side of West 60th Street;

RUNNING THENCE easterly along the southerly side of West 60th Street, 100 feet;

THENCE southerly parallel with the easterly side of West End Avenue, 75 feet 8 1/2 inches;

THENCE westerly parallel with the southerly side of West 60th Street, 3 feet 2 inches to a point which is measured 96 feet 10 inches easterly from the easterly side of West End Avenue;

THENCE southerly from said point and parallel with the easterly side of West End Avenue 125 feet to the northerly side of West 59th Street;

THENCE westerly along the northerly side of West 59th Street, 96 feet 10 inches to the easterly side of West End Avenue;

THENCE northerly along the easterly side of West End Avenue, 200 feet 8 1/2 inches to the point or place of BEGINNING.

**Title America Land Services, Inc.**                    Title No.: *TA-17811-NY*
Issued on behalf of
*Old Republic National Title Insurance Company*

## SCHEDULE A (continued)

**For Information Only - Not Insured Hereunder:**

**Property Address:  10 West End Avenue, Unit 31B, New York, New York 10023**
**Block:  1151          Lot:  1158**

**EXHIBIT C**

Return To:
HSBC MORTGAGE CORPORATION
(USA)
2929 WALDEN AVENUE, DEPEW, NY
14043

TA - 17811 - NY
1151
1158

Prepared By:
RICHTER, SUSAN, ,

_____ [Space Above This Line For Recording Data] _____

## CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT
### MIN 100022405798717974

**WORDS USED OFTEN IN THIS DOCUMENT**

(A) **"Agreement."** This document, which is dated **August 31, 2010**                    and
exhibits and riders attached to this document will be called the "Agreement."

(B) **"Borrower."** LM REALTY 31B LLC

will be called "Borrower" and sometimes "I" or "me." Borrower's address is **40 RECTOR STREET
UNIT 1502, NEW YORK, NY 10006**

(C) **"Lender."** HSBC Mortgage Corporation (USA)

will be called "Lender" and sometimes "Note Holder." Lender is a corporation or association which exists
under the laws of **DELAWARE**                    . Lender's
address is **2929 WALDEN AVENUE, DEPEW, NY  14043-2602**

(D) **"Mortgages."** The mortgages, deeds of trust, or other security instruments and any additional
security instruments and related agreements (such as assignments, extensions, modifications, or
consolidations of mortgages) identified in Exhibit A to this Agreement will be called the "Mortgages."

(E) **"MERS"** *is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that
is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of 5300 S.W. 34th Avenue,
Suite 101, Ocala, FL 34474, P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.* **FOR
PURPOSES OF RECORDING THIS AGREEMENT, MERS IS THE MORTGAGEE OF RECORD.**

| Section: | Block: 1151 | Lot: 1158 | Unit: 31B |
|----------|-------------|-----------|-----------|

NY 5300
NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION INSTRUMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Initials: _____

0579871797
Form 3172 1/01
(rev. 5/01)
VMP850A(NY) (0806).01
Page 1 of 7

(F) **"Note Holder."** Lender or anyone who succeeds to Lender's rights under this Agreement and who is entitled to receive the payments I agree to make under this Agreement may be called the "Note Holder."

(G) **"Notes."** The Notes which are identified in Exhibit A to this Agreement, and which are secured by the Mortgages, will be called the "Notes."

(H) **"Property."** The property which is described in the Mortgage(s) and in Exhibit B (Property Description) to this Agreement, will be called the "Property." The Property is located at:

**10 WEST END AVENUE, Unit 31B**

[Street]

| **NEW YORK** | | **NEW YORK** |
| [City] | | [County] |

**New York, 10023**

[State and Zip Code]

I promise and I agree with Lender as follows:

I. **BORROWER'S AGREEMENT ABOUT OBLIGATION UNDER THE NOTES AND MORTGAGES**

I agree to take over all of the obligations under the Notes and Mortgages as consolidated and modified by this Agreement as Borrower. This means that I will keep all of the promises and agreements made in the Notes and Mortgages even if some other person made those promises and agreements before me. The total unpaid principal balance of the Notes is U.S. $ 965,000.00 of this amount, U.S. $ 7,309.99 was advanced to me (or for my account) immediately prior to this consolidation.

II. **AGREEMENT TO COMBINE NOTES AND MORTGAGES**

(A) By signing this Agreement, Lender and I are combining into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages. This means that all of Lender's rights in the Property are combined so that under the law Lender has one mortgage and I have one loan obligation which I will pay as provided in this Agreement. This combining of notes and mortgages is known as a "Consolidation."

(B) In the event that Exhibit A indicates that all of the Notes and Mortgages have already been combined by a previous agreement, then Lender and I agree to change the terms of Section II, paragraph (A) of this Agreement to the following:

> Lender and I agree that all of the promises and agreements stated in the Notes and Mortgages -- including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages -- have been combined into one set of rights and obligations by an earlier agreement which is referred to in Exhibit A. This means that all of the Lender's rights in the Property have already been combined so that under the law Lender already has one mortgage and I have one loan obligation which I will pay as provided in this Agreement. The combining of notes and mortgages is known as a "Consolidation."

III. **AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED NOTE**

Lender and I agree that the terms of the Notes are changed and restated to be the terms of the "Consolidated Note" which is attached to this Agreement as Exhibit C. The Consolidated Note contains the terms of payment for the amounts that I owe to Note Holder. I agree to pay the amounts due under the Notes in accordance with the terms of the Consolidated Note. The Consolidated Note will supersede all terms, covenants, and provisions of the Notes.

NY-5305
NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Initials

0579871797
Form 3172 1/01
(rev 5/01)
850A(NY)(0808) 01
Page 2 of 7

**IV.  AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED MORTGAGE**

Lender and I agree that the terms of the Mortgages are changed and restated to be the terms of the "Consolidated Mortgage" which is attached to this Agreement as Exhibit D. The Consolidated Mortgage secures the Consolidated Note and will constitute in law a single lien upon the Property. I agree to be bound by the terms set forth in the Consolidated Mortgage which will supersede all terms, covenants, and provisions of the Mortgages.

**V.  NO SET-OFF, DEFENSES**

I agree that I have no right of set-off or counterclaim, or any defense to the obligations of the Consolidated Note or the Consolidated Mortgage.

**VI.  BORROWER'S INTEREST IN THE PROPERTY**

I promise that I am the lawful owner occupying the Property and that I have the right to consolidate, modify, and extend the Notes and Mortgages.

**VII.  WRITTEN TERMINATION OR CHANGE OF THIS AGREEMENT**

This Agreement may not be terminated, changed, or amended except by a written agreement signed by the party whose rights or obligations are being changed by that agreement.

**VIII.  OBLIGATIONS OF BORROWERS AND OF PERSONS TAKING OVER BORROWER'S OR LENDER'S RIGHTS OR OBLIGATIONS**

If more than one person signs this Agreement as Borrower, each of us is fully and personally obligated to keep all of Borrower's promises and obligations contained in this Agreement. The Note Holder may enforce its rights under this Agreement against each of us individually or against all of us together.

The terms of the Consolidated Note and the Consolidated Mortgage may not allow any person to take over my rights or obligations under this Agreement. Lender and I agree that if any person is permitted to take over my rights and obligations under this Agreement, that person will have all of my rights and will be obligated to keep all of my promises and agreements made in this Agreement. Similarly, any person who takes over Lender's rights or obligations under this Agreement will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Agreement.

**IX.  LIEN LAW**

I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Consolidated Note as a "trust fund," and (B) use those amounts to pay for "cost of improvement" (as defined in the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section IX.

**X.  TYPE OF PROPERTY**

Check box(es) as applicable.

[ ] This Agreement covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six (6) residential dwelling units with each dwelling unit having its own separate cooking facilities.

[x] This Agreement covers real property improved, or to be improved, by a one (1) or two (2) family dwelling.

[ ] This Agreement does not cover real property improved as described above.

NY 5300
NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

0579871797
Form 3172 1/01
(rev. 5/01)
VMP850A(NY) (0808).01
Page 3 of 7

Initials:

By signing this Agreement, Lender and I agree to all of the above.


__HSBC Mortgage Corporation (USA)__
                                                    - Lender
By: *Donna L. Zimmer*
__Donna L. Zimmer__
Mortgage Electronic Registration Systems, Inc.
                                        Mortgagee - As Assigned
By: *Donna L. Zimmer*
__DONNA L ZIMMER__
__Assistant Vice President__


_____          _____
__LM REALTY 31B LLC BY STEVEN__  - Borrower                    - Borrower
__J GOLDSTEIN, ESQ__


_____          _____
                            - Borrower                    - Borrower


NY 3309
NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

0579871797
Form 3172 1/01
(rev 5/01)
850A(NY) (0808) 01
Initials: _____    Page 4 of 7

**IV.  AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED MORTGAGE**

Lender and I agree that the terms of the Mortgages are changed and restated to be the terms of the "Consolidated Mortgage" which is attached to this Agreement as Exhibit D. The Consolidated Mortgage secures the Consolidated Note and will constitute in law a single lien upon the Property. I agree to be bound by the terms set forth in the Consolidated Mortgage which will supersede all terms, covenants, and provisions of the Mortgages.

**V.  NO SET-OFF, DEFENSES**

I agree that I have no right of set-off or counterclaim, or any defense to the obligations of the Consolidated Note or the Consolidated Mortgage.

**VI.  BORROWER'S INTEREST IN THE PROPERTY**

I promise that I am the lawful owner occupying the Property and that I have the right to consolidate, modify, and extend the Notes and Mortgages.

**VII.  WRITTEN TERMINATION OR CHANGE OF THIS AGREEMENT**

This Agreement may not be terminated, changed, or amended except by a written agreement signed by the party whose rights or obligations are being changed by that agreement.

**VIII.OBLIGATIONS OF BORROWERS AND OF PERSONS TAKING OVER BORROWER'S OR
      LENDER'S RIGHTS OR OBLIGATIONS**

If more than one person signs this Agreement as Borrower, each of us is fully and personally obligated to keep all of Borrower's promises and obligations contained in this Agreement. The Note Holder may enforce its rights under this Agreement against each of us individually or against all of us together.

The terms of the Consolidated Note and the Consolidated Mortgage may not allow any person to take over my rights or obligations under this Agreement. Lender and I agree that if any person is permitted to take over my rights and obligations under this Agreement, that person will have all of my rights and will be obligated to keep all of my promises and agreements made in this Agreement. Similarly, any person who takes over Lender's rights or obligations under this Agreement will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Agreement.

**IX.  LIEN LAW**

I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Consolidated Note as a "trust fund;" and (B) use those amounts to pay for "cost of improvement" (as defined in the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section IX.

**X.  TYPE OF PROPERTY**

Check box(es) as applicable.

☐ This Agreement covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six (6) residential dwelling units with each dwelling unit having its own separate cooking facilities.

☒ This Agreement covers real property improved, or to be improved, by a one (1) or two (2) family dwelling.

☐ This Agreement does not cover real property improved as described above.

NY 5300
NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

0579871767
Form 3172 1/01
(rev. 5/01)
VMP650A(NY) (0808)01
Initials: _____    Page 3 of 7

**STATE OF NEW YORK,** *Erie*                                      County ss:

    On the **31st** day of **August, 2010** before me, the undersigned, a notary public in and for said state, personally appeared **DONNA L ZIMMER**

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

WILLIAM J. VIOLA
Notary Public, State of New York
Qualified in Erie County
My Commission Expires 06/30/20 11

_____
Notary Public

**STATE OF NEW YORK,**                                      County ss:

    On the         day of         **SEAL** before me, the undersigned, a notary public in and for said state, personally appeared,

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

**STATE OF NEW YORK,**                                      County ss:

    On the         day of         before me, the undersigned, a notary public in and for said state, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

Tax Map Information:

NY 5300                                                                                     0579871797
NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS          Form 3172 1/01
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                               (rev. 5/01)
VMP ®                                                                        VMP850A(NY) (0808)01
Wolters Kluwer Financial Services                      Initials: _____          Page 5 of 7

**EXHIBIT A**
(List of Mortgages, Notes, and Agreements)

[__] (1) This Mortgage given by **LM REALTY 31B LLC**

and dated **08/31/2010**                                    in favor of **MERS, Inc. as nominee for HSBC Mortgage Corporation (USA)**

securing the original principal amount of U.S. **$7,309.99**

This Mortgage is on a *Fannie Mae/Freddie Mac Security Instrument* and

[__]  will be recorded together with this Agreement.

[__]  was recorded on   **07/18/2008**                                        , in the Office of the Clerk of
**NEW YORK**                                                     County, State of New York, in
Liber **2008000**                    at Page **286218**               .

[__]  At this date, the unpaid principal balance secured by this Mortgage is U.S. $ **957,690.01**

This Mortgage secures a Note dated       **08/31/2010**                   . **Said Mortgage is hereby assigned to Mortgage Electronic Registration Systems, Inc. as nominee for HSBC Mortgage Corporation (USA) by assignment dated _____, 2010 and recorded together with this agreement.**

[__]  (2) This Mortgage given by

and dated                                       in favor of

securing the original principal amount of U.S. **$0.00**
This Mortgage was recorded on                                     in the Office of the Clerk of
**NEW YORK**                                   County, State of New York, in Liber
at Page
[__]  At    this    date,    the    unpaid    principal    balance    secured    by    this    Mortgage    is    U.S.
$ **0.00**                    . This Mortgage secures a Note dated                            .

[__]  (3) This Mortgage given by

and dated                                       in favor of

securing the original principal amount of U.S. **$0.00**
This Mortgage was recorded on                                     in the Office of the Clerk of
**NEW YORK**                                   County, State of New York, in Liber
at Page
[__]  At    this    date,    the    unpaid    principal    balance    secured    by    this    Mortgage    is    U.S.
$ **0.00**                    . This Mortgage secures a Note dated                            .

**NY 5300**                                                                    **0579871797**

By signing this Agreement, Lender and I agree to all of the above.

HSBC Mortgage Corporation (USA)
_____
                                                  - Lender

By: _____

Mortgage Electronic Registration Systems, Inc.
_____
                                    - Mortgagee - As Assigned

By: _____


_____          _____
AM REALTY 31B LLC BY STEVEN      - Borrower                                      - Borrower
G GOLDSTEIN, ESQ
AS AUTHORIZED SIGNATORY


_____          _____
                                    - Borrower                                      - Borrower


NY 5300
NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Initials: _____

0579871797
Form 3172 1/01
(rev 5/01)
850A(NY)(0606).01
Page 4 of 7

**STATE OF NEW YORK,** New York                    County ss:
On the 30th day of    August, 2010          before me, the undersigned, a notary
public in and for said state, personally appeared

Steven J. Goldstein

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

**SEAL**

_____
Notary Public

EVANGELIA SARACO
Notary Public, State of New York
No. 11SA6116404
Qualified in West County
Commission Expires 9/27/2012

**STATE OF NEW YORK,**                    County ss:
On the        day of                before me, the undersigned, a notary
public in and for said state, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

**STATE OF NEW YORK,**                    County ss:
On the        day of                before me, the undersigned, a notary
public in and for said state, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

Tax Map Information:

NY 5300
NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Initials

0579871787
Form 3172 1/01
(rev. 5/01)
VMP60A(NY) (0808).01
Page 5 of 7

**EXHIBIT A**
(List of Mortgages, Notes, and Agreements)

☐ (1) This Mortgage given by LM REALTY 31B LLC

and dated 08/31/2010                              in favor of MERS, Inc. as nominee for HSBC
Mortgage Corporation (USA)

securing the original principal amount of U.S. $7,309.99
This Mortgage is on a *Fannie Mae/Freddie Mac Security Instrument* and

☐ will be recorded together with this Agreement.

☐ was recorded on   07/18/2008                                      , in the Office of the Clerk of
NEW YORK                                                County, State of New York, in
    Liber 2008000          at Page 286218

☐ At this date, the unpaid principal balance secured by this Mortgage is U.S. $ 957,690.01
This Mortgage secures a Note dated      08/31/2010               . Said Mortgage is
hereby assigned to Mortgage Electronic Registration Systems, Inc. as nominee for HSBC
Mortgage Corporation (USA) by assignment dated _____, 2010 and
recorded together with this agreement.

☐ (2) This Mortgage given by

and dated                                 in favor of

securing the original principal amount of U.S. $0.00
This Mortgage was recorded on                                      in the Office of the Clerk of
NEW YORK                              County, State of New York, in Liber
at Page
☐ At  this  date,  the  unpaid  principal  balance  secured  by  this  Mortgage  is  U.S.
$ 0.00                      . This Mortgage secures a Note dated

☐ (3) This Mortgage given by

and dated                                 in favor of

securing the original principal amount of U.S. $0.00
This Mortgage was recorded on                                      in the Office of the Clerk of
NEW YORK                              County, State of New York, in Liber
at Page
☐ At  this  date,  the  unpaid  principal  balance  secured  by  this  Mortgage  is  U.S.
$ 0.00                      . This Mortgage secures a Note dated

NY 5300                                                          0579871797

-950A(NY) (08/08).01            Page 6 of 7            Form 3172 1/01 (rev. 5/03)

**EXHIBIT A**

☐ (4) This Mortgage given by

and dated                                        in favor of

securing the original principal amount of U.S. $ 0.00
This Mortgage was recorded on                                        in the Office of the Clerk of
NEW YORK                                        County, State of New York, in Liber
at Page
☐    At    this    date,    the    unpaid    principal    balance    secured    by    this    Mortgage    is    U.S.
$ 0.00                                        . This Mortgage secures a Note dated

☐ (5) This Mortgage given by

and dated                                        in favor of

securing the original principal amount of U.S. $ 0.00                                        . This
Mortgage was recorded on                                        in the Office of the Clerk of
NEW YORK                                        County, State of New York, in Liber
at Page
☐    At    this    date,    the    unpaid    principal    balance    secured    by    this    Mortgage    is    U.S.
$ 0.00                                        . This Mortgage secures a Note dated

☐ (6) This Mortgage given by

and dated                                        in favor of

securing the original principal amount of U.S. $ 0.00                                        . This
Mortgage was recorded on                                        in the Office of the Clerk of
NEW YORK                                        County, State of New York, in Liber
at Page
☐    At    this    date,    the    unpaid    principal    balance    secured    by    this    Mortgage    is    U.S.
$ 0.00                                        . This Mortgage secures a Note dated

NY 5300                                                           0579871797

## INSTRUCTIONS

The following instructions apply if this Agreement is used in a consolidation, extension, or modification of a single family loan intended for possible sale to Fannie Mae or Freddie Mac.

(1)   All notes, security instruments, assignments, the most recent consolidation agreement and related agreements that modify, consolidate, or extend prior underlying obligations and which predate this Agreement must be listed in Exhibit A to this Agreement. The language in Exhibit A to this Agreement is only a sample and may be revised as appropriate.

If any new money is advanced, number (1) on Exhibit A should refer to both (a) the "Gap" Mortgage (i.e., the new money mortgage discussed in (6) below), and (b) the "Gap" Note (i.e., new money note discussed in (6) below).

(2)   The metes and bounds description of the Property must be set forth in Exhibit B to this Agreement.

(3)   The Consolidated Note must be the current version of the applicable Single Family Fannie Mae/Freddie Mac Uniform Note (e.g., Forms 3233, 3501, 3502, 3504, or 3514) with the following language inserted at the top of the document:

For Fixed Rate Notes:

### CONSOLIDATED NOTE

**This Note amends and restates in their entirety, and is given in substitution for,**
**the Notes described in Exhibit A of the New York Consolidation, Extension,**
**and Modification Agreement dated the same date as this Note.**

For Adjustable Rate Notes:

### CONSOLIDATED ADJUSTABLE RATE NOTE

**This Note amends and restates in their entirety, and is given in substitution for,**
**the Notes described in Exhibit A of the New York Consolidation, Extension,**
**and Modification Agreement dated the same date as this Note.**

The Consolidated Note, with all blanks completed, and any applicable addendum or addenda, must be executed by the Borrower(s) and a copy of the executed Consolidated Note must be attached hereto as Exhibit C. The repayment terms of the Consolidated Note (e.g., the consolidated principal amount, the monthly principal and interest payment, the interest rate and provisions for any interest rate and monthly payment changes applicable to the consolidated obligations) must be set forth in the Consolidated Note. The dollar amount entered in the first blank in Section 1 of this Agreement and the consolidated principal amount of the Consolidated Note must be the same.

(4)   The Consolidated Mortgage must be the current version of the New York Single Family Fannie Mae/Freddie Mac Uniform Instrument (Form 3033). The Consolidated Mortgage, with all blanks completed, and any applicable riders (such as an adjustable rate rider), must be attached hereto as Exhibit D. The Consolidated Mortgage need not be signed by the Borrower(s). The dollar amount entered in the first blank in Section 1 of this Agreement and the dollar amount entered in the corresponding blank in the Consolidated Mortgage must be the same.

(5)   For sales of loans to Fannie Mae and Freddie Mac, the Seller/Lender must deliver the executed and recorded original of this Agreement and all exhibits to it (or a certified true copy from the recording clerk, if the original is not yet available), together with the original Consolidated Note signed by the Borrower(s) and each original Note which is the original evidence of any part of Borrower's indebtedness set out in this Agreement.

(6)   If new funds are advanced at the time of the consolidation and modification evidenced by this Agreement, the new obligation must be evidenced by an original of the new money note (the "Gap" Note) and an original of the new money mortgage (the "Gap" Mortgage) on the current Fannie Mae/Freddie Mac Single Family Uniform Instrument (Form 3033). The dollar amount entered in the second blank in Section 1 of this Agreement and the dollar amount entered in the corresponding blank on the Gap Note and Gap Mortgage must be the same. If no new funds are advanced at the time of the consolidation and modification, then the second blank in Section 1 of this Agreement should be zero. This new loan will then become a part of the Consolidated Note and the Consolidated Mortgage. It is not necessary that the repayment terms of the new loan, as set out in the Gap Note, reflect the terms of the Consolidated Note.

NY 5300
NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

0579571797
Form 3172 1/01
(rev. 5/31)
VMP850A(NY) (0808) 01

## EXHIBIT A
### (List of Mortgages, Notes and Agreements)

(1) Mortgage given by LM REALTY 31B LLC dated August 31, 2010 in favor of HSBC MORTGAGE CORPORATION (USA) securing the original principal amount of $7,309.99. This Mortgage is on a Fannie Mae/Freddie Mac Security Instrument and is ~~intended to be~~ recorded in the Office of the City Register, County of New York and State of New York ~~together with this Agreement.~~ in CRFN # 2010000340076 on 10/12/10.

(2) Mortgage given by LARISSA MARKUS in favor of EMIGRANT MORTGAGE COMPANY securing the original principal amount of $975,000.00 dated June 26, 2008 and recorded on July 18, 2008 in the office of said clerk at CRFN 2008000286218.
At this date, the unpaid principal balance secured by this mortgage is $957,690.01.

Which Mortgage was assigned by assignment of mortgage dated August 31, 2010 from Emigrant Mortgage Company, Inc. to MERS (Mortgage Electronic Registration Systems, Inc) as Nominee for HSBC Mortgage Corporation (USA) and is intended to be recorded simultaneously herewith.

Which above mortgages (1) and (2) were consolidated by Consolidation, Extension & Modification Agreement made by and between LM REALTY 31B LLC dated August 31, 2010 in favor of HSBC MORTGAGE CORPORATION (USA) and intended to be recorded in the office of said clerk to form a single lien in the amount of $965,000.00.

## EXHIBIT B

**Title America Land Services, Inc.**
Issued on behalf of
*Old Republic National Title Insurance Company*

Title No.: *TA-17811-NY*

# SCHEDULE A

The Condominium Unit (the "Unit") in the condominium known as The 10 West End Avenue Condominium (the "Condominium"), comprised of the land described below and made a part hereof (the "Land") and the building known by the number 10 West End Avenue, New York, New York 10023 (the "Building"), said Unit being designated and described as Unit No. 31B in that certain declaration dated May 1, 2007, made by the Grantor under Article 9-B of the Real Property Law of the State of New York (the "Condominium Act"), establishing a plan for condominium ownership of the Building and the Land upon which the Building is situated, which declaration was recorded in the Office of the Register of the City of New York, County of New York (the "City Register's Office"), on the 12th day of June, 2007, as CFRN 2007000303374 (such declaration and any amendments thereto being referred to hereinafter, collectively, as the "Declaration"); said Unit also being designated as Tax Lot 1158 in Block 1151 on the Tax Map of the Real Property Assessment Department of the City of New York for the Borough of Manhattan and on the floor plans of the Building dated May 9th, 2007 (the "Floor Plans"), and filed in with the Real Property Assessment Department of the City of New York on June 12, 2007, as Condominium Plan No. 1719 and also filed in the City Register's Office, County of New York on June 1, 2007, as CFRN 2007000303375.

TOGETHER with an undivided 0.6846% interest in the Common Elements (as such term is defined in the Declaration) appurtenant to the Unit.

The land upon which the Unit is situated being more particularly bounded and described as follows:

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the easterly side of West End Avenue and the southerly side of West 60th Street;

RUNNING THENCE easterly along the southerly side of West 60th Street, 100 feet;

THENCE southerly parallel with the easterly side of West End Avenue, 75 feet 8 1/2 inches;

THENCE westerly parallel with the southerly side of West 60th Street, 3 feet 2 inches to a point which is measured 96 feet 10 inches easterly from the easterly side of West End Avenue;

THENCE southerly from said point and parallel with the easterly side of West End Avenue 125 feet to the northerly side of West 59th Street;

THENCE westerly along the northerly side of West 59th Street, 96 feet 10 inches to the easterly side of West End Avenue;

THENCE northerly along the easterly side of West End Avenue, 200 feet 8 1/2 inches to the point or place of BEGINNING.

**Title America Land Services, Inc.**
Issued on behalf of
*Old Republic National Title Insurance Company*

**Title No.:** *TA-17811-NY*

## SCHEDULE A (continued)

**For Information Only - Not Insured Hereunder:**

**Property Address:** 10 West End Avenue, Unit 31B, New York, New York 10023
**Block:** 1151        **Lot:** 1158



**"EXHIBIT C"**

This Note amends and restates in their entirety, and is given in substitution for, the Notes described in Exhibit A of the New York Consolidation, Extension and Modification Agreement dated the same date as this Note.

# ADJUSTABLE RATE NOTE
### (1-Year LIBOR Index - Rate Caps)
(Assumable after Initial Period)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| August 31, 2010 | NEW YORK | NEW YORK |
|---|---|---|
| [Date] | [City] | [State] |

10 WEST END AVENUE, Unit 31B, NEW YORK, NY  10023
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $965,000.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is HSBC Mortgage Corporation (USA)

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      4.6250 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on October 01, 2010      . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on September 01, 2040      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 2929 WALDEN AVENUE, DEPEW, NY  14043

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $4,961.45      . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

CD 8166
MULTISTATE ADJUSTABLE RATE NOTE - 1-Year LIBOR Index (Assumable after Initial Period)
Single Family - Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

0579871767
Form 553^ 3/04

VMP856N (0604)
Page 1 of 5

Initials

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of **September, 2017**, and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Two and One Quarter** percentage point(s) ( **2.2500** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **9.6250** % or less than **2.2500** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **Two** percentage point(s) ( **2.0000** %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **9.6250** %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

CD 8166
MULTISTATE ADJUSTABLE RATE NOTE - 1-Year LIBOR Index (Assumable after Initial Period)
Single Family - Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

C579871787
Form 5531 3/04

VMP856N (0804)
Page 2 of 5

Initials

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen** calendar days after the date it is due. I will pay a late charge to the Note Holder. The amount of the charge will be **5.00 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due. I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

CD 8166
MULTISTATE ADJUSTABLE RATE NOTE - 1-Year LIBOR Index (Assumable after Initial Period)
Single Family - Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

0579871797
Form 5531 3/04

VMP856N (0804)
Page 3 of 5

Initials

**(A) UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**(B) AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CD 8166
MULTISTATE ADJUSTABLE RATE NOTE - 1-Year LIBOR Index (Assumable after Initial Period)
Single Family - Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Initials

0579871797
Form 5531 3/04

VMP856N (0604)
Page 4 of 5

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
                              -Borrower                                       -Borrower
LM REALTY 31B LLC BY STEVEN J
GOLDSTEIN, ESQ
AS AUTHORIZED SIGNATORY


_____ (Seal)          _____ (Seal)
                              -Borrower                                       -Borrower


_____ (Seal)          _____ (Seal)
                              -Borrower                                       -Borrower


                                                 [Sign Original Only]


CD 8166
MULTISTATE ADJUSTABLE RATE NOTE - 1-Year LIBOR Index (Assumable after Initial Period)
Single Family - Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Initials

0579871797
Form 5531 2/04

VMP858N (0804)
Page 5 of 5

## TAX ADDENDUM
## TO THE NOTE

Any and all payments made to Lender pursuant to this Note shall be made free and clear of, and without deductions or withholdings for, or on account of, any present or future taxes, duties, levies, imposts, charges, compulsory loans, assessments, or other deductions or withholdings whatsoever, and all liabilities with respect thereto (other than franchise taxes and taxes imposed on or measured by the Lender's net income, receipts, capital or net worth), imposed at any time by any authority having power to tax in any jurisdiction worldwide (such deductions or withholdings being hereinafter referred to as "Taxes"), unless the deduction or withholding of such Taxes is required by any applicable law. If any Taxes are required by applicable law to be deducted or withheld from any payment hereunder, Borrower shall (I) increase the amount payable as is necessary so that, after making all required deductions or withholdings (including deductions or withholdings applicable to additional amounts payable under this paragraph), Lender shall receive an amount equal to the amount it would have received had no deductions or withholdings been made, (ii) Borrower shall make such deductions or withholdings, and (iii) Borrower shall pay the full amount deducted or withheld to the relevant taxation authority or other authority in accordance with applicable law. Within 30 days after the date of payment of any taxes or other amounts deducted or withheld, Borrower shall furnish Lender with an official receipt (or certified copy thereof) or other documentation reasonably acceptable to Lender evidencing such payment. Borrower shall indemnify Lender from and against any and all Taxes (irrespective of when imposed) and any liability, including, without limitation, any related interest, penalties and expenses, that may become payable by Lender as a consequence of Borrower's failure to perform any of its obligations under this paragraph, whether or not such Taxes or liability were correctly or legally asserted. Payment pursuant to this indemnification shall be made upon written demand therefore. {Borrower shall pay (or if appropriate, reimburse Lender for) any stamp, documentary or similar taxes or any other excise, intangible or property taxes, charges or similar levies (and any interest or penalty relating thereto) imposed at any time which arise from, or otherwise with respect to, any payment made hereunder or from execution, delivery or registration of this instrument.} Borrower's obligation under this paragraph shall survive the termination of this Note.

_____(Seal)      _____(Seal)
LM REALTY 31B LLC BY STEVEN J  -Borrower                                -Borrower
GOLDSTEIN, ESQ
AS AUTHORIZED SIGNATORY

_____(Seal)      _____(Seal)
                             -Borrower                                -Borrower

_____(Seal)      _____(Seal)
                             -Borrower                                -Borrower

0579871797
CD5380 Rev. 08/09

**"EXHIBIT D"**

Return To:

CASSIN & CASSIN
2900 WESTCHESTER AVENUE, SUITE
402, PURCHASE , NY  10577

Prepared By:
RICHTER, SUSAN, ,

——————————— |Space Above This Line For Recording Data| ———————————

# MORTGAGE MIN 100022405798717974

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) **"Security Instrument."** This document, which is dated **August 31, 2010**
together with all Riders to this document, will be called the "Security Instrument."
(B) **"Borrower."** LM REALTY 31B LLC

whose address is **40 RECTOR STREET UNIT 1502, NEW YORK, NY 10006**

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of 3300 S.W. 34th Avenue. Suite 101, Ocala, FL 34474, P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**
(D) **"Lender."** HSBC Mortgage Corporation (USA)

will be called "Lender." Lender is a corporation or association which exists under the laws of **DELAWARE**  Lender's address is **2929 WALDEN AVENUE, DEPEW, NY  14043-2602**

| Section: | Block: 1151 | Lot: 1158 | Unit: |
| NY 8113 | | | 0579871797 |

NEW YORK - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**     Form 3033 1/01

Wolters Kluwer Financial Services
VMP®-6A(NY) (0811)
Page 1 of 17                    Initials:_____

**Title America Land Services, Inc.**
Issued on behalf of
*Old Republic National Title Insurance Company*

**Title No.: *TA-17811-NY***

# SCHEDULE A

The Condominium Unit (the "Unit") in the condominium known as The 10 West End Avenue Condominium (the "Condominium"), comprised of the land described below and made a part hereof (the "Land") and the building known by the number 10 West End Avenue, New York, New York 10023 (the "Building"), said Unit being designated and described as Unit No. 31B in that certain declaration dated May 1, 2007, made by the Grantor under Article 9-B of the Real Property Law of the State of New York (the "Condominium Act"), establishing a plan for condominium ownership of the Building and the Land upon which the Building is situated, which declaration was recorded in the Office of the Register of the City of New York, County of New York (the "City Register's Office"), on the 12th day of June, 2007, as CFRN 2007000303374 (such declaration and any amendments thereto being referred to hereinafter, collectively, as the "Declaration"); said Unit also being designated as Tax Lot 1158 in Block 1151 on the Tax Map of the Real Property Assessment Department of the City of New York for the Borough of Manhattan and on the floor plans of the Building dated May 9th, 2007 (the "Floor Plans"), and filed in with the Real Property Assessment Department of the City of New York on June 12, 2007, as Condominium Plan No. 1719 and also filed in the City Register's Office, County of New York on June 1, 2007, as CRFN 2007000303375.

TOGETHER with an undivided 0.6846% interest in the Common Elements (as such term is defined in the Declaration) appurtenant to the Unit.

The land upon which the Unit is situated being more particularly bounded and described as follows:

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the easterly side of West End Avenue and the southerly side of West 60th Street;

RUNNING THENCE easterly along the southerly side of West 60th Street, 100 feet;

THENCE southerly parallel with the easterly side of West End Avenue, 75 feet 8 1/2 inches;

THENCE westerly parallel with the southerly side of West 60th Street, 3 feet 2 inches to a point which is measured 96 feet 10 inches easterly from the easterly side of West End Avenue;

THENCE southerly from said point and parallel with the easterly side of West End Avenue 125 feet to the northerly side of West 59th Street;

THENCE westerly along the northerly side of West 59th Street, 96 feet 10 inches to the easterly side of West End Avenue;

THENCE northerly along the easterly side of West End Avenue, 200 feet 8 1/2 inches to the point or place of BEGINNING.

**Title America Land Services, Inc.**                    Title No.: *TA-17811-NY*
Issued on behalf of
*Old Republic National Title Insurance Company*

## SCHEDULE A (continued)

For Information Only - Not Insured Hereunder:

Property Address:  10 West End Avenue, Unit 31B, New York, New York 10023
Block:  1151          Lot:  1158



**(E) "Note."** The note signed by Borrower and dated **August 31, 2010**                        , will be called the "Note." The Note shows that I owe Lender **NINE HUNDRED SIXTY FIVE THOUSAND and NO/100**

                        Dollars (U.S. $**965,000.00**                        ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by **September 01, 2040**

**(F) "Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

**(G) "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(I) "Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [x] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [x] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(K) "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees and Assessments."

**(L) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Eleetronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(N) "Miscellaneuos Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(O) "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(Q) "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

NY 8113                                                                    0579871797
NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
-6A(NY) (0811)                          Page 2 of 17        Initials: ___        Form 3033 1/01

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at **10 WEST END AVENUE, Unit 31B**

                                                                             [Street]

**NEW YORK**                     [City, Town or Village], New York **10023**    [Zip Code].
This Property is in **NEW YORK**                                  County. It has the following legal description: **SEE SCHEDULE A ATTACHED HERETO**

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

NY 8113
NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP®-6A(NY) (0811)                  Page 3 of 17        Initials              Form 3033 1/01

0579871797

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

NY 8113                                                                                                    0579871797
NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP®-6A(NY) (0811)                    Page 4 of 17                Initials             Form 3033 1/01

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

NY 8113                                                                                          0579871797
NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP®-6A(NY) (0811)                          Page 6 of 17              Initials                    Form 3033 1/01

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to, earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period

that any repairs or restorations are being made. Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

   **6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

   **7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

   **(a) Maintenance and Protection of the Property.**

   I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property. I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

   **(b) Lender's Inspection of Property.**

   Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

NY 8113
NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP®-6A(NY) (0811)                Page 8 of 17            Initials _____

0579871797

Form 3033 1/01

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance

NY 8113                                                                              0579871797
NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP®-6A(NY) (0811)                          Page 9 of 17            Initials            Form 3033 1/01

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance. (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

NY 8113                                                                                                    0579871797
NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP®-6A(NY) (0811)              Page 10 of 17              Initials                    Form 3033 1/01

value. the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages. I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

NY 8113
NEW YORK - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**
VMP®-6A(NY) (0811)                    Page 11 of 17            Initials _____            0579871797

Form 3033 1/01

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

NY 8113                                                                                          0579871797
NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP®-6A(NY) (0811)                          Page 12 of 17                    Initials:___          Form 3033 1/01

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If

Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another

Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

[x] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

NY 8113
NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP®-6A(NY) (0811)                    Page 15 of 17                    Initials
0579871797

Form 3033 1/01

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of the Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

LM REALTY 31B LLC BY STEVEN J
GOLDSTEIN, ESQ

BY:  STEVEN J. GOLDSTEIN, ESQ., AS AUTHORIZED SIGNATORY


_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower


_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower


NY 8113
6A(NY) (0712)                      Page 16 of 17

0579871797
Form 3033 1/01

STATE OF NEW YORK,    *New York*    County ss:

On the *31* day of *August* *2010* before me, the undersigned, a notary public in and for said state, personally appeared

*Steven J. Goldstein*

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

Tax Map Information:

EVANGELIA SARACO
Notary Public, State of New York
No. 01SA6116404
Qualified in West County
Commission Expires 9/27/2012

**SEAL**

NY 8113
NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP®-6A(NY) (0811)    Page 17 of 17    Initials

0579871797

Form 3033 1/01

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 31st         day of August, 2010                    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to HSBC Mortgage Corporation
(USA)

(the
"Lender") of the same date and covering the Property described in the Security Instrument
and located at: 10 WEST END AVENUE, Unit 31B, NEW YORK, NY   10023

[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to
the Property described in the Security Instrument, the following items now or hereafter
attached to the Property to the extent they are fixtures are added to the Property description,
and shall also constitute the Property covered by the Security Instrument: building materials,
appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or
intended to be used in connection with the Property, including, but not limited to, those for
the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light,
fire prevention and extinguishing apparatus, security and access control apparatus, plumbing,
bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers,
disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades,
curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain
a part of the Property covered by the Security Instrument. All of the foregoing together with
the Property described in the Security Instrument (or the leasehold estate if the Security
Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security
Instrument as the "Property."

B. USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree to or
make a change in the use of the Property or its zoning classification, unless Lender has
agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations
and requirements of any governmental body applicable to the Property.

C. SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not allow
any lien inferior to the Security Instrument to be perfected against the Property without
Lender's prior written permission.

D. RENT LOSS INSURANCE. Borrower shall maintain insurance against rent loss in
addition to the other hazards for which insurance is required by Section 5.

CD 2063                                                                    0579871797

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01

Wolters Kluwer Financial Services
VMP ®-57R (0811)
Page 1 of 3        Initials:

E. **"BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

F. **BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

G. **ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

H. **ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I. **CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

CD 2063                                                           0579871797

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®-57R (0811)                    Page 2 of 3              Initials:              Form 3170 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)               _____ (Seal)
                        -Borrower                                       -Borrower

LM REALTY 31B LLC BY STEVEN J
GOLDSTEIN, ESQ
AS AUTHROIZED SIGNATORY

_____ (Seal)               _____ (Seal)
                        -Borrower                                       -Borrower

_____ (Seal)               _____ (Seal)
                        -Borrower                                       -Borrower

CD 2063                                                          0579871797

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®-57R (0811)                    Page 3 of 3          Initials:          Form 3170 1/01

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 31st        day of August, 2010             ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to HSBC Mortgage Corporation
(USA)

(the
"Lender") of the same date and covering the Property described in the Security Instrument
and located at:

10 WEST END AVENUE, Unit 31B, NEW YORK, NY  10023
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements
of, a condominium project known as:

10 WEST END AVENUE CONDOMINIUM
[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the
Condominium Project (the "Owners Association") holds title to property for the benefit or use
of its members or shareholders, the Property also includes Borrower's interest in the Owners
Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under
the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i)
Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii)
code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally
accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which
is satisfactory to Lender and which provides insurance coverage in the amounts (including
deductible levels), for the periods, and against loss by fire, hazards included within the term
"extended coverage," and any other hazards, including, but not limited to, earthquakes and
floods, from which Lender requires insurance, then: (i) Lender waives the provision in

CD 2061                                                    0579871797

MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT
Form 3140 1/01
Wolters Kluwer Financial Services
VMP®-8R (0810)
Page 1 of 3          Initials:

Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

CD 2061                                                                                      0579871797
MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®-8R (0810)                    Page 2 of 3        Initials:_____        Form 3140 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____ (Seal)
-Borrower

LM REALTY 31B LLC BY STEVEN J
GOLDSTEIN, ESQ
AS AUTHORIZED SIGNATORY

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

CD 2061                                                                      0579871797
MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT
VMP®-8R (0810)                        Page 3 of 3        Initials:_____      Form 3140 1/01

# ADJUSTABLE RATE RIDER
### (1-Year LIBOR Index - Rate Caps)
### (Assumable after Initial Period)

THIS ADJUSTABLE RATE RIDER is made this 31st  day of August, 2010                  ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage. Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to
HSBC Mortgage Corporation (USA)

(the "Lender") of the same date and covering the property described in the Security
Instrument and located at:

10 WEST END AVENUE, Unit 31B, NEW YORK, NY  10023
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of                  4.6250%. The Note
provides for changes in the interest rate and the monthly payments as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the first day of September, 2017                  ,
and may change on that day every 12th month thereafter. Each date on which my interest
rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The
"Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of
interbank offered rates for one-year U.S. dollar-denominated deposits in the London market,
as published in The Wall Street Journal. The most recent Index figure available as of the date
45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is
based upon comparable information. The Note Holder will give me notice of this choice.

CD 2074
MULTISTATE ADJUSTABLE RATE RIDER - 1-Year LIBOR Index (Assumable after Initial Period)
Single Family - Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Initials:

0578871797
Form 5131 3/04

VMP856R (0804)
Page 1 of 4

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Two and One Quarter** percentage point(s)
( **2.2500** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.6250** % or less than **2.2500** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **Two**
percentage point(s)
( **2.0000** %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **9.6250** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. **UNTIL BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

CD 2C24
MULTISTATE ADJUSTABLE RATE RIDER - 1-Year LIBOR Index (Assumable after Initial Period)
Single Family - Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Initials:

0579671797
Form 5131 3/04

VMP856R (0804)
Page 2 of 4

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

   2. **AFTER BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS:**

   **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

   To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

   If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CD 2024
MULTISTATE ADJUSTABLE RATE RIDER - 1-Year LIBOR Index (Assumable after Initial Period)
Single Family - Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Initials: ___

0579871757
Form 5131 3/04

VMP856R (0804)
Page 3 of 4

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
-Borrower

LM REALTY 31B LLC BY STEVEN J
GOLDSTEIN, ESQ
AS AUTHORIZED SIGNATORY

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

CD 2024
MULTISTATE ADJUSTABLE RATE RIDER - 1-Year LIBOR Index (Assumable after Initial Period)
Single Family - Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Initials

0579871797
Form 5131 3/04

VMP856R (0804)
Page 4 of 4

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2010102600189001002S1AAB

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

**Document ID: 2010102600189001**    Document Date: 08-31-2010    Preparation Date: 10-26-2010
Document Type: AGREEMENT

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

255 MORTGAGE TAX EXEMPT AFFIDAVIT                                                        1

TA- 17811 NY
1151
1158

## 255 AFFIDAVIT

STATE OF NEW YORK            )
                            §:
COUNTY OF NEW YORK          )

Jennifer Krucher, Esq., being duly sworn, depose and say:

That we are familiar with the facts hereinafter set forth;

That the following Mortgage(s) has/have been recorded in the Office of the City Register, County of New York, State of New York, and all mortgage recording taxes payable thereon have been duly paid:

SEE EXHIBIT "A" ANNEXED HERETO AND MADE A PART HEREOF

That presented herewith for recording in said Office is a Mortgage dated August 31, 2010 made by LM REALTY 31B LLC dated August 31, 2010 in favor of HSBC MORTGAGE CORPORATION (USA) securing the original principal amount of $7,309.99 which Mortgage is intended to be recorded in the City Registers Office, County of New York, State of New York;

That said Mortgage, together with the Mortgage(s) set forth in Exhibit "A" annexed hereto have been consolidated pursuant to the terms of a Consolidation, Extension and Modification Agreement dated August 31, 2010 made by and between LM REALTY 31B LLC and HSBC MORTGAGE CORPORATION (USA) and intended to be recorded in the office of said clerk to form a single lien in the amount of $965,000.00. That said Agreement is intended to be recorded simultaneously with the recording of the Mortgage dated August 31, 2010 as hereinbefore set forth;

That this Agreement does not secure any indebtedness except as specified therein, or secured by previously recorded instruments, upon which a mortgage recording tax has already been paid, on which previously recorded Mortgage(s) there have been no reloans or advances;

That this affidavit is being made pursuant to Section 255 of the Tax Law of the State of New York for the purpose of claiming exemption from any additional tax on recording of the Consolidation, Extension and Modification Agreement being submitted herewith.

Jennifer Krucher, Esq.

Sworn to before me this
31 day of August, 2010

Notary Public

EVANGELIA SABIACO
Notary Public, State of New York
No. 01SA611640-
Qualified in West County
Commission Expires 9/27/2012

;SEAL

{00603077;1}

**EXHIBIT A**
**(List of Mortgages, Notes and Agreements)**

(1) Mortgage given by LM REALTY 31B LLC dated August 31, 2010 in favor of HSBC
MORTGAGE CORPORATION (USA) securing the original principal amount of $7,309.99.
This Mortgage is on a Fannie Mae/Freddie Mac Security Instrument and ~~is intended to be
recorded in the Office of the City Register, County of New York and State of New York together
with this Agreement.~~ in CRFN# 2010000340076 on 10|12|10.

(2) Mortgage given by LARISSA MARKUS in favor of EMIGRANT MORTGAGE
COMPANY securing the original principal amount of $975,000.00 dated June 26, 2008 and
recorded on July 18, 2008 in the office of said clerk at CRFN 2008000286218.
At this date, the unpaid principal balance secured by this mortgage is $957,690.01.

Which Mortgage was assigned by assignment of mortgage dated August 31, 2010 from Emigrant
Mortgage Company, Inc. to MERS (Mortgage Electronic Registration Systems, Inc) as Nominee
for HSBC Mortgage Corporation (USA) and is intended to be recorded simultaneously herewith.

Which above mortgages (1) and (2) were consolidated by Consolidation, Extension &
Modification Agreement made by and between LM REALTY 31B LLC dated August 31, 2010
in favor of HSBC MORTGAGE CORPORATION (USA) and intended to be recorded in the
office of said clerk to form a single lien in the amount of $965,000.00.

{00603077;1}

*TA-17811 NY*
*1151*
*1158*

## 255 AFFIDAVIT

STATE OF NEW YORK          )
                           §:
COUNTY OF NEW YORK         )

Jennifer Krucher, Esq., being duly sworn, depose and say:

That we are familiar with the facts hereinafter set forth;

That the following Mortgage(s) has/have been recorded in the Office of the City Register, County of New York, State of New York, and all mortgage recording taxes payable thereon have been duly paid:

### SEE EXHIBIT "A" ANNEXED HERETO AND MADE A PART HEREOF

That presented herewith for recording in said Office is a Mortgage dated August 31, 2010 made by LM REALTY 31B LLC dated August 31, 2010 in favor of HSBC MORTGAGE CORPORATION (USA) securing the original principal amount of $7,309.99 which Mortgage is intended to be recorded in the City Registers Office, County of New York, State of New York;

That said Mortgage, together with the Mortgage(s) set forth in Exhibit "A" annexed hereto have been consolidated pursuant to the terms of a Consolidation, Extension and Modification Agreement dated August 31, 2010 made by and between LM REALTY 31B LLC and HSBC MORTGAGE CORPORATION (USA) and intended to be recorded in the office of said clerk to form a single lien in the amount of $965,000.00. That said Agreement is intended to be recorded simultaneously with the recording of the Mortgage dated August 31, 2010 as hereinbefore set forth;

That this Agreement does not secure any indebtedness except as specified therein, or secured by previously recorded instruments, upon which a mortgage recording tax has already been paid, on which previously recorded Mortgage(s) there have been no reloans or advances;

That this affidavit is being made pursuant to Section 255 of the Tax Law of the State of New York for the purpose of claiming exemption from any additional tax on recording of the Consolidation, Extension and Modification Agreement being submitted herewith.

Jennifer Krucher, Esq.

Sworn to before me this
31 day of August, 2010

Notary Public

EVANGELIA SAVACO
Notary Public, State of New York
No. 01SA6118404
Qualified in West County
Commission Expires 9/27/2012

{00603077;1}

**EXHIBIT A**
**(List of Mortgages, Notes and Agreements)**

(1) Mortgage given by LM REALTY 31B LLC dated August 31, 2010 in favor of HSBC MORTGAGE CORPORATION (USA) securing the original principal amount of $7,309.99. This Mortgage is on a Fannie Mae/Freddie Mac Security Instrument and ~~is intended to be~~ recorded in the Office of the City Register, County of New York and State of New York ~~together with this Agreement.~~ in CRFN# 2010000348026 on 10/12/10.

(2) Mortgage given by LARISSA MARKUS in favor of EMIGRANT MORTGAGE COMPANY securing the original principal amount of $975,000.00 dated June 26, 2008 and recorded on July 18, 2008 in the office of said clerk at CRFN 2008000286218.
At this date, the unpaid principal balance secured by this mortgage is $957,690.01.

Which Mortgage was assigned by assignment of mortgage dated August 31, 2010 from Emigrant Mortgage Company, Inc. to MERS (Mortgage Electronic Registration Systems, Inc) as Nominee for HSBC Mortgage Corporation (USA) and is intended to be recorded simultaneously herewith.

Which above mortgages (1) and (2) were consolidated by Consolidation, Extension & Modification Agreement made by and between LM REALTY 31B LLC dated August 31, 2010 in favor of HSBC MORTGAGE CORPORATION (USA) and intended to be recorded in the office of said clerk to form a single lien in the amount of $965,000.00.

{00603077;1}

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2010102600189001002ED42A

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 50 |
|---|---|

Document ID: **2010102600189001**    Document Date: 08-31-2010    Preparation Date: 10-26-2010
Document Type: AGREEMENT
Document Page Count: 49

| PRESENTER: | RETURN TO: |
|---|---|
| TITLE AMERICA LAND SERVICES | HSBC MORTGAGE CORP |
| 77 NEWBRIDGE ROAD | 2929 WALDEN AVENUE |
| PICK UP TO KAREN LEVINE | DEPEW, NY  14043 |
| HICKSVILLE, NY  11801 | |
| 516-733-1822 | |
| lhunter@titleamericaland.com | |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1151 | 1158 | Entire Lot | 31B | 10 WEST END AVENUE |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

**CROSS REFERENCE DATA**

CRFN: 2010000340076

**PARTIES**

| PARTY 1: | PARTY 2: |
|---|---|
| LM REALTY 31B LLC | HSBC MORTGAGE CORPORATION |
| 40 RECTOR STREET, UNIT 1502 | 2929 WALDEN AVENUE |
| NEW YORK, NY  14043 | DEPEW, NY  14043 |

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 965,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 965,000.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | 255 | | $ | 0.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** |
| MTA: | $ | 0.00 | **OF THE CITY REGISTER OF THE** |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** |
| Additional MRT: | $ | 0.00 | Recorded/Filed    10-29-2010 15:56 |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): |
| Recording Fee: | $ | 282.00 | **2010000363143** |
| Affidavit Fee: | $ | 8.00 | |

*Annette M Hill*

*City Register Official Signature*

**EXHIBIT D**

*TA-19630NY*
*1151*
*1158*

*$181.15*

Return To:

  CASSIN & CASSIN LLP
  711 THIRD AVENUE, 20TH FLOOR,
  NEW YORK, NY 10017


Prepared By:
CAPOCCI, SUSAN, ,

---

# Mortgage

---

**MIN 100298901499873584**

### Words Used Often In This Document

**(A)** **"Security Instrument."** This document, which is dated **August 28, 2012**, together with all Riders to this document, will be called the "Security Instrument."

**(B)** **"Borrower."** **LM REALTY 31B, LLC**

whose address is **10 WEST END AVENUE Unit: 31B**, **NEW YORK, NY 10023**

sometimes will be called "Borrower" and sometimes simply "I" or "me."

**(C)** **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, with a mailing address of P.O. Box 2026, Flint, MI 48501-2026, a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834 and telephone number of (888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**

  Section:              Block: **1151**        Lot: **1158**        Unit:

NY 9113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987356
Form 3033 1/01
VMP6A(NY) (1010) 02
Page 1 of 21

(D) **"Lender."** **HSBC BANK USA, N.A.**

will be called "Lender." Lender is a corporation or association which exists under the laws of
**THE UNITED STATES OF AMERICA** . Lender's address is **2929 WALDEN AVENUE,
DEPEW, NY 14043-2602**

(E) **"Note."** The note signed by Borrower and dated **August 28, 2012** , will be called
the "Note." The Note shows that I owe Lender TEN THOUSAND THREE HUNDRED THIRTY
TWO and 63/100
Dollars (U.S. **$10,332.63** ) plus interest and other amounts that
may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by
**September 01, 2042** .

(F) **"Property."** The property that is described below in the section titled "Description of the Property,"
will be called the "Property."

(G) **"Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges
and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to
Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(I) **"Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called
"Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [x] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [x] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) **"Applicable Law."** All controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable
final, non-appealable, judicial opinions will be called "Applicable Law."

(K) **"Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and
other charges that are imposed on Borrower or the Property by a condominium association,
homeowners association or similar organization will be called "Community Association Dues, Fees,
and Assessments."

(L) **"Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other
than by check, draft, or similar paper instrument, which is initiated through an electronic terminal,
telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial
institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are
point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated

NY 9113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 2 of 21

teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** **"Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(N)** **"Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(O)** **"Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** **"Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(Q)** **"RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

### Borrower's Transfer To Lender Of Rights In The Property

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A)   Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B)   Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C)   Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A)   to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B)   to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

NY 9113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010) 02
Page 3 of 21

### Description Of The Property

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A)  The Property which is located at **10 WEST END AVENUE , Unit 31B**

[Street]

**NEW YORK**    [City, Town or Village], New York **10023**    [Zip Code].
This Property is in **NEW YORK**    County. It has the following
legal description: **SEE ATTACHED SCHEDULE A**
**THIS PROPERTY IS IMPROVED BY A 1 OR 2 FAMILY DWELLING**

(B)  All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C)  All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D)  All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E)  All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F)  All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G)  All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

### Borrower's Right To Mortgage The Property And Borrower's Obligation To Defend Ownership Of The Property

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

NY 9113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987356
Form 3033 1/01
VMP8A(NY) (1010).02
Page 4 of 21

**Title America Land Services, Inc.**
Issued on behalf of
*Old Republic National Title Insurance Company*

**Title No.:** *TA-19630-NY*

## SCHEDULE A

The Condominium Unit (the "Unit") in the condominium known as The 10 West End Avenue Condominium (the "Condominium"), comprised of the land described below and made a part hereof (the "Land") and the building known by the number 10 West End Avenue, New York, New York 10023 (the "Building"), said Unit being designated and described as Unit No. 31B in that certain declaration dated May 1, 2007, made by the Grantor under Article 9-B of the Real Property Law of the State of New York (the "Condominium Act"), establishing a plan for condominium ownership of the Building and the Land upon which the Building is situated, which declaration was recorded in the Office of the Register of the City of New York, County of New York (the "City Register's Office"), on the 12th day of June, 2007, as CFRN 2007000303374 (such declaration and any amendments thereto being referred to hereinafter, collectively, as the "Declaration"); said Unit also being designated as Tax Lot 1158 in Block 1151 on the Tax Map of the Real Property Assessment Department of the City of New York for the Borough of Manhattan and on the floor plans of the Building dated May 9th, 2007 (the "Floor Plans"), and filed in with the Real Property Assessment Department of the City of New York on June 12, 2007, as Condominium Plan No. 1719 and also filed in the City Register's Office, County of New York on June 1, 2007, as CRFN 2007000303375.

TOGETHER with an undivided 0.6846% interest in the Common Elements (as such term is defined in the Declaration) appurtenant to the Unit.

The land upon which the Unit is situated being more particularly bounded and described as follows:

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the easterly side of West End Avenue and the southerly side of West 60th Street;

RUNNING THENCE easterly along the southerly side of West 60th Street, 100 feet;

THENCE southerly parallel with the easterly side of West End Avenue, 75 feet 8 1/2 inches;

THENCE westerly parallel with the southerly side of West 60th Street, 3 feet 2 inches to a point which is measured 96 feet 10 inches easterly from the easterly side of West End Avenue;

THENCE southerly from said point and parallel with the easterly side of West End Avenue 125 feet to the northerly side of West 59th Street;

THENCE westerly along the northerly side of West 59th Street, 96 feet 10 inches to the easterly side of West End Avenue;

THENCE northerly along the easterly side of West End Avenue, 200 feet 8 1/2 inches to the point or place of BEGINNING.

**Title America Land Services, Inc.**
Issued on behalf of
*Old Republic National Title Insurance Company*

Title No.: *TA-19630-NY*

## SCHEDULE A (continued)

For Information Only - Not Insured Hereunder:

Property Address:  10 West End Avenue, Unit 31B, New York, New York 10023
Block:  1151          Lot:  1158          Unit:  31B

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

### Plain Language Security Instrument

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

### Covenants

I promise and I agree with Lender as follows:

1. **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

   Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

   Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:
   First, to pay interest due under the Note;
   Next, to pay principal due under the Note; and
   Next, to pay the amounts due Lender under Section 3 of this Security Instrument.
   Such payments will be applied to each Periodic Payment in the order in which it became due.
   Any remaining amounts will be applied as follows:
   First, to pay any late charges;
   Next, to pay any other amounts due under this Security Instrument; and
   Next, to reduce the principal balance of the Note.

NY 9113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 5 of 21

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

3.    **Monthly Payments For Taxes And Insurance.**
   (a)   **Borrower's Obligations.**
         I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"
         (1)   The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"
         (2)   The leasehold payments or ground rents on the Property (if any);
         (3)   The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;
         (4)   The premium for Mortgage Insurance (if any);
         (5)   The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and
         (6)   If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

         After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

         I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

         The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where

NY 9113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 6 of 21

payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

NY 9113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 7 of 21

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

NY 9113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 6 of 21

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance

NY 9113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 9 of 21

company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7.  **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**
    (a)  **Maintenance and Protection of the Property.**
        I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.
    (b)  **Lender's Inspection of Property.**
        Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

8.  **Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information

NY 9113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 10 of 21

important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

9.  **Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and

NY 9113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 11 of 21

will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

NY 9113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 12 of 21

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in

NY 9113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 13 of 21

Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

12. **Continuation of Borrower's Obligations And of Lender's Rights.**
   (a) **Borrower's Obligations**
      Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

      Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

   (b) **Lender's Rights.**
      Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

13. **Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

NY 9113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 14 of 21

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

NY 9113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 15 of 21

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a)  I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b)  I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c)  I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d)  I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

NY 9113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987356
Form 3033 1/01
VMP8A(NY) (1010).02
Page 16 of 21

20. **Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. **Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property

NY 9113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 17 of 21

that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**Non-Uniform Covenants**

I also promise and agree with Lender as follows:

22. **Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."**

**If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.**

**Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:**

(a) **I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;**

(b) **Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:**

NY 9113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987356
Form 3033 1/01
VMP6A(NY) (1010).02
Page 16 of 21

(1) The promise or agreement that I failed to keep or the default that has occurred;
(2) The action that I must take to correct that default;
(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;
(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;
(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and
(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. **Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. **Borrower's Statement Regarding the Property [check box as applicable].**

[x] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.
[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.
[ ] This Security Instrument does not cover real property improved as described above.

NY 9113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 19 of 21

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 21 of this Security Instrument and in any Rider signed by me and recorded with it.

**Borrower**

_____ (Seal)          _____ (Seal)
LM REALTY 31B, LLC                    -Borrower                                                    -Borrower


BY
ILYA BYKOV, AUTHORIZED
SIGNATORY


_____ (Seal)          _____ (Seal)
                                    -Borrower                                                    -Borrower


_____ (Seal)          _____ (Seal)
                                    -Borrower                                                    -Borrower

NY 9113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 20 of 21

**Acknowledgment**
State of _New York_
County of _New York_
On _Aug 28, 2012_ before me, the undersigned, personally appeared

_Ilya Bykov_

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person(s) upon behalf of which the individual(s) acted, executed the instrument.

_____

Notary Public

My commission expires:

Tax Map Information: **BLOCK 1151 LOT 1158**

**SEAL**

**BETH STOLZENBERG**
Notary Public, State of New York
No. 01ST5072175
Qualified in Westchester County
Commission Expires January 27, 20__

NY 9113
NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 21 of 21

# INTEREST ONLY
# ADJUSTABLE RATE RIDER
## (LIBOR One-Month Index (As posted By Fannie Mae) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this **28th** day of **August, 2012** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **HSBC BANK USA, N.A.**

("Lender") of the same date and covering the property described in the Security Instrument and located at:

**10 WEST END AVENUE , Unit 31B, NEW YORK, NY 10023**

[Property Address]

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of **2.25** %. The Note provides for changes in the interest rate and the monthly payments as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The interest rate I will pay may change on the first day of **October, 2012** , and on that day every one month thereafter. Each date on which my interest rate could change is called a "Change Date."

CD 5434                                                                                           0149987358

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR ONE-MONTH INDEX (AS POSTED BY FANNIE MAE) - Single Family - Fannie Mae Uniform Instrument                                                    Rev. 09/08

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one month U.S. dollar-denominated deposits in the London market based on quotations of major banks, as posted by Fannie Mae through electronic transmission or by telephone or both through electronic transmission and by telephone. The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index."

If the Index is no longer available, or is no longer posted either through electronic transmission or by telephone, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Two** percentage points ( **2** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **12.25** % or less than **2** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **Ten** percentage points ( **10** %) from the rate of interest I have been paying for the preceding one month. My interest rate will never be greater than **12.25** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

CD 5434                                                                                                          0149987358

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR ONE-MONTH INDEX (AS POSTED BY FANNIE MAE) - Single Family
- Fannie Mae Uniform Instrument                                                                      Rev. 09/08

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less that 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CD 5434                                                                              0149987358

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR ONE-MONTH INDEX (AS POSTED BY FANNIE MAE) - Single Family
- Fannie Mae Uniform Instrument                                                    Rev. 09/08

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
                                   -Borrower

LM REALTY 31B, LLC

BY
ILYA BYKOV, AUTHORIZED SIGNATORY

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

CD 5434                                                    0149987358

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR ONE-MONTH INDEX (AS POSTED BY FANNIE MAE) - Single Family
- Fannie Mae Uniform Instrument                                         Rev. 09/08

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this **28th** day of **August, 2012** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **HSBC BANK USA, N.A.**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: **10 WEST END AVENUE , Unit 31B, NEW YORK, NY   10023**

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

CD 2063                                                                                          0149987358

**MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**Form 3170 1/01**

Wolters Kluwer Financial Services
VMP ®-57R (0811)
Page 1 of 3      Initials: _TB_

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

CD 2063                                                                 0149987358

**MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
VMP ®-57 R (0811)                      Page 2 of 3          Initials: _LB_      Form 3170  1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)                          _____ (Seal)
                                        -Borrower                                                        -Borrower

LM REALTY 31B, LLC

BY
ILYA BYKOV  AUTHORIZED SIGNATORY


_____ (Seal)                          _____ (Seal)
                                        -Borrower                                                        -Borrower


_____ (Seal)                          _____ (Seal)
                                        -Borrower                                                        -Borrower


CD 2063                                                                      0149987358

**MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
VMP ®-57R (08 11)                    Page 3 of 3          Initials: _____ Form 3170 1 /01

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this **28th** day of **August, 2012**
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to **HSBC BANK USA, N.A.**

(the

"Lender") of the same date and covering the Property described in the Security Instrument
and located at:

**10 WEST END AVENUE , Unit 31B, NEW YORK, NY  10023**
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements
of, a condominium project known as:

**The 10 West End Avenue Condominium**
[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the
Condominium Project (the "Owners Association") holds title to property for the benefit or use
of its members or shareholders, the Property also includes Borrower's interest in the Owners
Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. CondominiumObligations.** Borrower shall perform all of Borrower's obligations under
the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i)
Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii)
code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally
accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which
is satisfactory to Lender and which provides insurance coverage in the amounts (including
deductible levels), for the periods, and against loss by fire, hazards included within the term
"extended coverage," and any other hazards, including, but not limited to, earthquakes and
floods, from which Lender requires insurance, then: (i) Lender waives the provision in

CD 2061                                                                          0149987358

**MULTISTATE CONDOMINIUM RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT**
Form 3140 1/01
Wolters Kluwer Financial Services
VMP ®-8R (0810)
Page 1 of 3          Initials: _JL_

Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

CD 2061                                                                                    0149987358
**MULTISTATE CONDOMINIUM RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
VMP ®-8R (08 10)                         Page 2 of 3         Initials: _____         **Form 3140  1/01**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____ (Seal)                    _____ (Seal)
-Borrower                                                  -Borrower

LM REALTY 31B, LLC

BY
ILYA BYKOV, AUTHORIZED SIGNATORY

_____ (Seal)                    _____ (Seal)
-Borrower                                                  -Borrower

_____ (Seal)                    _____ (Seal)
-Borrower                                                  -Borrower

CD 2061                                                                    0149987358
**MULTISTATE CONDOMINIUM RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
VMP®-8R (0810)                      Page 3 of 3        Initials: _____      Form 3140 1/01

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2012090401253002002EBEEF

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 35 |
|---|---|

**Document ID:** 2012090401253002     Document Date: 08-28-2012     Preparation Date: 09-07-2012
Document Type: MORTGAGE
Document Page Count: 33

**PRESENTER:**
TITLE AMERICA LAND SERVICES
77 NEWBRIDGE ROAD
PICK UP TO REDVISION
HICKSVILLE, NY 11801
516-733-1822
khunter@titleamericaland.com

**RETURN TO:**
CASSIN & CASSIN LLP
711 THIRD AVENUE
20TH FLOOR
NEW YORK, NY 10017

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1151 | 1158 | Entire Lot | 31B | 10 WEST END AVENUE |

**Property Type:** SINGLE RESIDENTIAL CONDO UNIT

### CROSS REFERENCE DATA

CRFN_____  or  Document ID_____  or  _____ Year_____ Reel ___ Page _____  or  File Number_____

### PARTIES

**MORTGAGOR/BORROWER:**
LM REALTY 31B, LLC
10 WEST END AVENUE, UNIT 31B
NEW YORK, NY 10023

**MORTGAGEE/LENDER:**
MERS INC
1901 E VOORHEES STREET, SUITE C
DANVILLE, IL 61834

x  Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 10,332.63 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 10,332.63 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 51.50 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 103.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 25.75 | | | |
| MTA: | $ | 0.90 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 181.15 | | | |
| Recording Fee: | $ | 202.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**
Recorded/Filed     09-14-2012 11:47
City Register File No.(CRFN):
**2012000365003**

*Annette M. Hill*

***City Register Official Signature***

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2012090401253002002CBC6F

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 35 |
|---|---|

| Document ID: 2012090401253002 | Document Date: 08-28-2012 | Preparation Date: 09-07-2012 |
|---|---|---|

Document Type: MORTGAGE

**PARTIES**
**MORTGAGEE/LENDER:**
HSBC BANK USA, N.A.
2929 WALDEN AVENUE
DEPEW, NY 14043-2602

**<u>EXHIBIT E</u>**

*TA- 19630 NY*
*1151*
*1158*

Return To:

CASSIN & CASSIN LLP
711 THIRD AVENUE, 20TH FLOOR,
NEW YORK, NY   10017

Prepared By:
CAPOCCI, SUSAN,  ,

## Consolidation, Extension, and Modification Agreement

MIN 100298901499873584

### Words Used Often in this Document.

(A) **"Agreement."** This document, which is dated August 28, 2012    and exhibits and riders attached to this document will be called the "Agreement."

(B) **"Borrower."** LM REALTY 31B, LLC

will be called "Borrower" and sometimes "I" or "me." Borrower's address is 10 WEST END AVENUE Unit: 31B , NEW YORK, NY   10023

(C) **"Lender."** HSBC BANK USA, N.A.

will be called "Lender" and sometimes "Note Holder." Lender is a corporation or association which exists under the laws of THE UNITED STATES OF AMERICA
Lender's address is 2929 WALDEN AVENUE, DEPEW, NY   14043-2602

(D) **"Mortgages."** The mortgages, deeds of trust, or other security instruments and any additional security instruments and related agreements (such as assignments, extensions, modifications, or consolidations of mortgages) identified in Exhibit A to this Agreement will be called the "Mortgages."

| Section: | Block: 1151 | Lot: 1158 | Unit: 31B |
|----------|-------------|-----------|-----------|

NY 5300
NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3172 1/01
(rev. 5/01)
VMP850A(NY) (1010)
Page 1 of 8

(E)  **"MERS"** *is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, with a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834 and a telephone number of (888) 679-MERS.* **FOR PURPOSES OF RECORDING THIS AGREEMENT, MERS IS THE MORTGAGEE OF RECORD.**

(F)  **"Note Holder."** Lender or anyone who succeeds to Lender's rights under this Agreement and who is entitled to receive the payments I agree to make under this Agreement may be called the "Note Holder."

(G)  **"Notes."** The Notes which are identified in Exhibit A to this Agreement, and which are secured by the Mortgages, will be called the "Notes."

(H)  **"Property."** The property which is described in the Mortgage(s) and in Exhibit B (Property Description) to this Agreement, will be called the "Property." The Property is located at:

**10 WEST END AVENUE , Unit 31B**
[Street]

| **NEW YORK** | , | **NEW YORK** | , |
|:---:|:---:|:---:|:---:|
| [City] | | [County] | |

New York 10023
[State and Zip Code]

I promise and I agree with Lender as follows:

I.  **Borrower's Agreement About Obligation Under the Notes and Mortgages.** I agree to take over all of the obligations under the Notes and Mortgages as consolidated and modified by this Agreement as Borrower. This means that I will keep all of the promises and agreements made in the Notes and Mortgages even if some other person made those promises and agreements before me. The total unpaid principal balance of the Notes is U.S. $ 884,000.00     of this amount, U.S. $10,332.63     was advanced to me (or for my account) immediately prior to this consolidation.

II.  **Agreement to Combine Notes and Mortgages.**

(A)  By signing this Agreement, Lender and I are combining into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages. This means that all of Lender's rights in the Property are combined so that under the law Lender has one mortgage and I have one loan obligation which I will pay as provided in this Agreement. This combining of notes and mortgages is known as a "Consolidation."

NY 5300
NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3172 1/01
(rev. 5/01)
VMP850A(NY) (1010)
Page 2 of 8

(B) In the event that Exhibit A indicates that all of the Notes and Mortgages have already been combined by a previous agreement, then Lender and I agree to change the terms of Section II, paragraph (A) of this Agreement to the following:

Lender and I agree that all of the promises and agreements stated in the Notes and Mortgages -- including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages -- have been combined into one set of rights and obligations by an earlier agreement which is referred to in Exhibit A. This means that all of the Lender's rights in the Property have already been combined so that under the law Lender already has one mortgage and I have one loan obligation which I will pay as provided in this Agreement. The combining of notes and mortgages is known as a "Consolidation."

**III. Agreement to Change Terms of the Consolidated Note.** Lender and I agree that the terms of the Notes are changed and restated to be the terms of the "Consolidated Note" which is attached to this Agreement as Exhibit C. The Consolidated Note contains the terms of payment for the amounts that I owe to Note Holder. I agree to pay the amounts due under the Notes in accordance with the terms of the Consolidated Note. The Consolidated Note will supersede all terms, covenants, and provisions of the Notes.

**IV. Agreement to Change Terms of the Consolidated Mortgage.** Lender and I agree that the terms of the Mortgages are changed and restated to be the terms of the "Consolidated Mortgage" which is attached to this Agreement as Exhibit D. The Consolidated Mortgage secures the Consolidated Note and will constitute in law a single lien upon the Property. I agree to be bound by the terms set forth in the Consolidated Mortgage which will supersede all terms, covenants, and provisions of the Mortgages.

**V. No Set-Off, Defenses.** I agree that I have no right of set-off or counterclaim, or any defense to the obligations of the Consolidated Note or the Consolidated Mortgage.

**VI. Borrower's Interest in the Property.** I promise that I am the lawful owner occupying the Property and that I have the right to consolidate, modify, and extend the Notes and Mortgages.

**VII. Written Termination or Change of this Agreement.** This Agreement may not be terminated, changed, or amended except by a written agreement signed by the party whose rights or obligations are being changed by that agreement.

**VIII. Obligations of Borrowers and of Persons Taking Over Borrower's or Lender's Rights or Obligations.** If more than one person signs this Agreement as Borrower, each of us is fully and personally obligated to keep all of Borrower's promises and obligations contained in this Agreement. The Note Holder may enforce its rights under this Agreement against each of us individually or against all of us together.

The terms of the Consolidated Note and the Consolidated Mortgage may not allow any person to take over my rights or obligations under this Agreement. Lender and I agree that if any person is permitted to take over my rights and obligations under this Agreement, that person will have all of my rights and will be obligated to keep all of my promises and agreements made in this Agreement. Similarly, any person who takes over Lender's rights or obligations under this Agreement will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Agreement.

NY 5300
NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3172 1/01
(rev. 5/01)
VMP850A(NY) (1010)
Page 3 of 6

**IX. Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Consolidated Note as a "trust fund;" and (B) use those amounts to pay for "cost of improvement" (as defined in the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section IX.

**X. Type of Property.** Check box(es) as applicable.

☐ This Agreement covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six (6) residential dwelling units with each dwelling unit having its own separate cooking facilities.

☒ This Agreement covers real property improved, or to be improved, by a one (1) or two (2) family dwelling.

☐ This Agreement does not cover real property improved as described above.

NY 5300
NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3172 1/01
(rev. 5/01)
VMP850A(NY) (1010)
Page 4 of 8

By signing this Agreement, Lender and I agree to all of the above.

**HSBC BANK USA, N.A.**

- Lender

By: *Susan Richter* 19262

SUSAN RICHTER, TEAM LEADER, AVP

Mortgage Electronic Registration Systems, Inc.

- Mortgagee

By: *Susan Richter*

SUSAN RICHTER    19262

_____
                                    Borrower

_____
                                    Borrower

LM REALTY 31B LLC

BY_____

ILYA BYKOV, AUTHORIZED SIGNATORY

_____
                                    Borrower

_____
                                    Borrower

NY 5300
NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3172 1/01
(rev. 5/01)
VMP850A(NY) (1010)
Page 5 of 8

**STATE OF NEW YORK,**
County ss: *Erie*

On the 21st   day of August, 2012   before me, the undersigned, a notary public in and for said state, personally appeared  SUSAN RICHTER

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

**SEAL**
SUSAN L. CAPOCCI
Notary Public, State of New York
Qualified in Erie County
My Commission Expires July 31, 2013

_____
Notary Public

**STATE OF NEW YORK,**
County ss: *New York*

On the 28th day of   *August 2012*   before me, the undersigned, a notary public in and for said state, personally appeared   *Hya Bykov*

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

**SEAL**
BETH STOLZENBERG
Notary Public, State of New York
No. 01ST5072175
Qualified in Westchester County
Commission Expires January 27, 20__

_____
Notary Public

**STATE OF NEW YORK,**
County ss:

On the      day of          before me, the undersigned, a notary public in and for said state, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

Tax Map Information: **BLOCK 1151 LOT 1158**

NY 5300
NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3172 1/01
(rev. 5/01)
VMP850A(NY) (1010)
Page 6 of 8

SEAL

CAROL A. KOZLOWSKI
Notary Public, State of New York
No. 01KO6194875
Qualified in Richmond County
Commission Expires January 31, 20__

## EXHIBIT A
### (List of Mortgages, Notes and Agreements)

(1)  Mortgage given by LM Realty 31BD, LLC dated August 28, 2012 in favor of MERS, Inc. as nominee for HSBC Bank USA, N.A. in the principal amount of $10,332.63 to be recorded in the office of the County Clerk of New York County simultaneously herewith.  This mortgage is secured by Note dated August 28, 2012.

(2)  Mortgage given by Larisa Markus dated June 26, 2008 in favor of Emigrant Mortgage Company, Inc. in the principal amount of $975,000.00 was recorded on July 18, 2008 in the office of the County Clerk of New York County in CRFN 2008000286218. This mortgage is secured by a Note dated June 26, 2008.

Assignment of Mortgage from Emigrant Mortgage Company, Inc. to MERS as Nominee for HSBC Mortgage Corporation (USA) dated August 31, 2010 and recorded in the office of the County Clerk of New York County on October 19, 2010 in CRFN 2010000363144.

(3)  Mortgage given by LM Realty 31B, LLC dated August 31, 2010 in favor of Mers as Nominee for HSBC Mortgage Corporation (USA) in the principal amount of $7,309.99 was recorded on October 12, 2010 in the office of the County Clerk of New York County in CRFN 2010000340076.  This mortgage is secured by Note dated August 31, 2010.

Consolidation, Extension and Modification Agreement by LM Realty 31B, LLC in favor of MERS, Inc. as nominee for HSBC Mortgage Corporation (USA) dated August 31, 2010 and recorded in the office of the County Clerk of New York County  on October 29, 2010 in CRFN 201000363143. Consolidates mortgages (1), (2) and (3) to form a single lien in the amount of $965,000.00.

At this date, the current unpaid principal balance of mortgage (1), (2) and (3) is $873,667.37

Assignment of Mortgage from MERS as Nominee for HSBC Mortgage Corporation (USA) to MERS as Nominee for HSBC Bank USA, N.A. dated August 20, 2012 to be recorded in the office of the County Clerk of New York County simultaneously herewith.

Consolidation, Extension and Modification Agreement by LM Realty 31B, LLC in favor of MERS, Inc. as nominee for HSBC Bank, USA, N.A. dated August 28, 2012, consolidates mortgages (1) and, (2) to form a single lien in the amount of $884,000.00 to be recorded simultaneously herewith.

**EXHIBIT A**
(List of Mortgages, Notes, and Agreements)

[ ]    (1) This Mortgage given by **LM REALTY 31B, LLC**

and dated 08/28/2012                                    in favor of **MERS, Inc. as nominee for HSBC BANK USA, N.A.**

securing the original principal amount of U.S. **$10,332.63**
This Mortgage is on a *Fannie Mae/Freddie Mac Security Instrument* and
[ ]    will be recorded together with this Agreement.
[ ]    was recorded on                                              , in the Office of the Clerk of
**NEW YORK**                                                        County, State of New York, in
Liber                        at Page
[ ]    At this date, the unpaid principal balance secured by this Mortgage is U.S. $ **10,332.63**
This Mortgage secures a Note dated        **08/28/2012**


[ ]    (2) This Mortgage given by **LARISA MARKUS**

and dated 06/26/2008                                    in favor of **Emigrant Mortgage Company, Inc.**

securing the original principal amount of U.S. **$975,000.00**
This Mortgage was recorded on 07/18/2008                            in the Office of the Clerk
**NEW YORK**                              County, State of New York, in Liber 2008000
at Page 286218
[ ]    At    this    date,    the    unpaid    principal    balance    secured    by    this    Mortgage    is    U.S.
$ 0.00                              . This Mortgage secures a Note dated    06/26/2008
**Said Mortgage was assigned from Emigrant Mortgage Company, Inc. to MERS, Inc. as nominee for HSBC Mortgage Corporation (USA) by assignment agreement dated 8/31/2010 recorded 10/29/2010 in CRFN #2010000363144.**


[ ]    (3) This Mortgage given by **LM Realty 31B LLC**

and dated 08/31/2010                                    in favor of **MERS, Inc. as nominee for HSBC Mortgage Corporation (USA)**
securing the original principal amount of U.S. **$7,309.99**
This Mortgage was recorded on 10/12/2010                            in the Office of the Clerk of
**NEW YORK**                              County, State of New York, in Liber 2010000
at Page 340076
[ ]    At    this    date,    the    unpaid    principal    balance    secured    by    this    Mortgage    is    U.S.
$ 873,667.37                              . This Mortgage secures a Note dated 08/31/2010
**Said Mortgages 2 & 3 were consolidated by Consolidation, Extension and Modification Agreement dated 8/31/2010 recorded 10/29/2010 in CRFN #2010000363143 to form a single lien in the amount of $965,000.00.
Said Mortgage is hereby assigned by MERS, Inc. as nominee for HSBC Mortgage Corporation (USA) to MERS, Inc. as nominee for HSBC Bank USA, N.A. by assignment dated August 20, 2012 and recorded together with this agreement.**


NY 5300                                                              0149987358

## EXHIBIT A

☐ (4) This Mortgage given by

and dated                                        in favor of

securing the original principal amount of U.S. $0.00
This Mortgage was recorded on                                        in the Office of the Clerk of
**NEW YORK**                                    County, State of New York, in Liber
at Page
☐ At    this    date,    the    unpaid    principal    balance    secured    by    this    Mortgage    is    U.S.
$0.00                                . This Mortgage secures a Note dated

☐ (5) This Mortgage given by

and dated                                        in favor of

securing the original principal amount of U.S. $0.00                                . This
Mortgage was recorded on                                        in the Office of the Clerk of
**NEW YORK**                                    County, State of New York, in Liber
at Page
☐ At    this    date,    the    unpaid    principal    balance    secured    by    this    Mortgage    is    U.S.
$0.00                                . This Mortgage secures a Note dated

☐ (6) This Mortgage given by

and dated                                        in favor of

securing the original principal amount of U.S. $0.00                                . This
Mortgage was recorded on                                        in the Office of the Clerk of
**NEW YORK**                                    County, State of New York, in Liber
at Page
☐ At    this    date,    the    unpaid    principal    balance    secured    by    this    Mortgage    is    U.S.
$0.00                                . This Mortgage secures a Note dated

**NY 5300**                                                            0149987358

## INSTRUCTIONS

The following instructions apply if this Agreement is used in a consolidation, extension, or modification of a single family loan intended for possible sale to Fannie Mae or Freddie Mac.

(1)    All notes, security instruments, assignments, the most recent consolidation agreement and related agreements that modify, consolidate, or extend prior underlying obligations and which predate this Agreement must be listed in Exhibit A to this Agreement. The language in Exhibit A to this Agreement is only a sample and may be revised as appropriate.

If any new money is advanced, number (1) on Exhibit A should refer to both (a) the "Gap" Mortgage (i.e., the new money mortgage discussed in (6) below), and (b) the "Gap" Note (i.e., new money note discussed in (6) below).

(2)    The metes and bounds description of the Property must be set forth in Exhibit B to this Agreement.

(3)    The Consolidated Note must be the current version of the applicable Single Family Fannie Mae/Freddie Mac Uniform Note (e.g., Forms 3233, 3501, 3502, 3504, or 3514) with the following language inserted at the top of the document:

For Fixed Rate Notes:

### CONSOLIDATED NOTE

**This Note amends and restates in their entirety, and is given in substitution for,**

**the Notes described in Exhibit A of the New York Consolidation, Extension,**

**and Modification Agreement dated the same date as this Note.**

For Adjustable Rate Notes:

### CONSOLIDATED ADJUSTABLE RATE NOTE

**This Note amends and restates in their entirety, and is given in substitution for,**

**the Notes described in Exhibit A of the New York Consolidation, Extension,**

**and Modification Agreement dated the same date as this Note.**

The Consolidated Note, with all blanks completed, and any applicable addendum or addenda, must be executed by the Borrower(s) and a copy of the executed Consolidated Note must be attached hereto as Exhibit C. The repayment terms of the Consolidated Note (e.g., the consolidated principal amount, the monthly principal and interest payment, the interest rate and provisions for any interest rate and monthly payment changes applicable to the consolidated obligations) must be set forth in the Consolidated Note. The dollar amount entered in the first blank in Section I of this Agreement and the consolidated principal amount of the Consolidated Note must be the same.

(4)    The Consolidated Mortgage must be the current version of the New York Single Family Fannie Mae/Freddie Mac Uniform Instrument (Form 3033). The Consolidated Mortgage, with all blanks completed, and any applicable riders (such as an adjustable rate rider), must be attached hereto as Exhibit D. The Consolidated Mortgage need not be signed by the Borrower(s). The dollar amount entered in the first blank in Section I of this Agreement and the dollar amount entered in the corresponding blank in the Consolidated Mortgage must be the same.

(5)    For sales of loans to Fannie Mae and Freddie Mac, the Seller/Lender must deliver the executed and recorded original of this Agreement and all exhibits to it (or a certified true copy from the recording clerk, if the original is not yet available), together with the original Consolidated Note signed by the Borrower(s) and each original Note which is the original evidence of any part of Borrower's indebtedness set out in this Agreement.

(6)    If new funds are advanced at the time of the consolidation and modification evidenced by this Agreement, the new obligation must be evidenced by an original of the new money note (the "Gap" Note) and an original of the new money mortgage (the "Gap" Mortgage) on the current Fannie Mae/Freddie Mac Single Family Uniform Instrument (Form 3033). The dollar amount entered in the second blank in Section I of this Agreement and the dollar amount entered in the corresponding blank on the Gap Note and Gap Mortgage must be the same. If no new funds are advanced at the time of the consolidation and modification, then the second blank in Section I of this Agreement should be zero. This new loan will then become a part of the Consolidated Note and the Consolidated Mortgage. It is not necessary that the repayment terms of the new loan, as set out in the Gap Note, reflect the terms of the Consolidated Note.

NY 5300
NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3172 1/01
(rev. 5/01)
VMP850A(NY) (1010)

**NY 5300**                                                                                   **0149987358**

**Title America Land Services, Inc.**
Issued on behalf of
*Old Republic National Title Insurance Company*

**Title No.:** *TA-19630-NY*

EXHIBIT B

## SCHEDULE A

The Condominium Unit (the "Unit") in the condominium known as The 10 West End Avenue Condominium (the "Condominium"), comprised of the land described below and made a part hereof (the "Land") and the building known by the number 10 West End Avenue, New York, New York 10023 (the "Building"); said Unit being designated and described as Unit No. 31B in that certain declaration dated May 1, 2007, made by the Grantor under Article 9-B of the Real Property Law of the State of New York (the "Condominium Act"), establishing a plan for condominium ownership of the Building and the Land upon which the Building is situated, which declaration was recorded in the Office of the Register of the City of New York, County of New York (the "City Register's Office"), on the 12th day of June, 2007, as CFRN 2007000303374 (such declaration and any amendments thereto being referred to hereinafter, collectively, as the "Declaration"); said Unit also being designated as Tax Lot 1158 in Block 1151 on the Tax Map of the Real Property Assessment Department of the City of New York for the Borough of Manhattan and on the floor plans of the Building dated May 9th, 2007 (the "Floor Plans"), and filed in with the Real Property Assessment Department of the City of New York on June 12, 2007, as Condominium Plan No. 1719 and also filed in the City Register's Office, County of New York on June 1, 2007, as CFRN 2007000303375.

TOGETHER with an undivided 0.6846% interest in the Common Elements (as such term is defined in the Declaration) appurtenant to the Unit.

The land upon which the Unit is situated being more particularly bounded and described as follows:

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the easterly side of West End Avenue and the southerly side of West 60th Street;

RUNNING THENCE easterly along the southerly side of West 60th Street, 100 feet;

THENCE southerly parallel with the easterly side of West End Avenue, 75 feet 8 1/2 inches;

THENCE westerly parallel with the southerly side of West 60th Street, 3 feet 2 inches to a point which is measured 96 feet 10 inches easterly from the easterly side of West End Avenue;

THENCE southerly from said point and parallel with the easterly side of West End Avenue 125 feet to the northerly side of West 59th Street;

THENCE westerly along the northerly side of West 59th Street, 96 feet 10 inches to the easterly side of West End Avenue;

THENCE northerly along the easterly side of West End Avenue, 200 feet 8 1/2 inches to the point or place of BEGINNING.

## "EXHIBIT C"

This Note amends and restates in their entirety and is given in substitution for, the Notes described in Exhibit A of the New York Consolidation, Extension and Modification Agreement dated the same date as this Note.

## INTEREST-ONLY PERIOD
## ADJUSTABLE RATE NOTE
### (One-Month LIBOR Index (As Published In *The Wall Street Journal*)
### (Lifetime Rate Cap - 5 Year Interest-Only Period)

THIS NOTE CONTAINS AN ADJUSTABLE INTEREST RATE AND ALLOWS FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE MAXIMUM RATE THAT I MUST PAY.

| August 28, 2012 | NEW YORK | NEW YORK |
|---|---|---|
| [Date] | [City] | [State] |

**10 WEST END AVENUE , Unit 31B, NEW YORK, NY 10023**

[Property Address]

1.    **BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U. S. $ **884,000.00**    (this amount is called "Principal"), plus interest, to the order of Lender. Lender is    **HSBC BANK USA, N.A.**    .

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2.    **INTEREST**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    **2.25**    %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3.    **PAYMENTS**

(A) Time and Place of Payments

I will make a payment on the first day of every month, beginning on    **October 01, 2012**    . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid Principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date; and if the payment includes both principal and interest, it will be applied to interest before Principal.

If, on    **09/01/2042**    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    **2929 WALDEN AVENUE, DEPEW, NY 14043**    or at a different place if required by the Note Holder.

NEW YORK ADJUSTABLE RATE NOTE-LIBOR ONE-MONTH INDEX-INTEREST-ONLY 5 YEARS THEN P&I

0149987358
NY5417 03/10

**(B) Amount of My Initial Monthly Payments**

My initial monthly payment will be in the amount of U.S. $ ___1,657.50___ until the first Change Date. After the first Change Date, my monthly payment will be in an amount sufficient to pay accrued interest, at the rate determined as described in Section 4 of this Note until the First Principal and Interest Payment Due Date. On that date and thereafter, my monthly payment will be in an amount sufficient to repay the Principal and interest at the rate determined as described in Section 4 of this Note by the Maturity Date. The Note Holder will notify me prior to the date of changes in monthly payment.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

**4.    ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change the first day of every month. The date on which my adjustable interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Two** percentage points ( **2.0000** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at any Change Date will not be greater than **10.00%** over the initial interest rate as stated in Section 2 of this Note. My interest rate will never be greater than **10.00%** over the initial interest rate.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

NEW YORK ADJUSTABLE RATE NOTE-LIBOR ONE-MONTH INDEX-INTEREST-ONLY 5 YEARS THEN P&I

0149987358
NY5417 03/10

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 5th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment may decrease after the first Change Date following my partial Prepayment. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of _____**Fifteen**_____ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be ___**5.00**___ % of my overdue payment of interest, during the period when my payment is interest-only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

NEW YORK ADJUSTABLE RATE NOTE-LIBOR ONE-MONTH INDEX-INTEREST-ONLY 5 YEARS THEN P&I

0149987358
NY5417 03/10

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.    UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18; "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if. (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

NEW YORK ADJUSTABLE RATE NOTE-LIBOR ONE-MONTH INDEX-INTEREST-ONLY 5 YEARS THEN P&I

0149987358
NY5417 03/10

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
                            -Borrower                                      -Borrower

LM REALTY 31B, LLC

BY
ILYA BYKOV / AUTHORIZED SIGNATORY

_____ (Seal)          _____ (Seal)
                            -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                                      -Borrower

**NEW YORK ADJUSTABLE RATE NOTE-LIBOR ONE-MONTH INDEX-INTEREST-ONLY 5 YEARS THEN P&I**

0149987358
NY5417 03/10

## TAX ADDENDUM
## TO THE NOTE

Any and all payments made to Lender pursuant to this Note shall be made free and clear of, and without deductions or withholdings for, or on account of, any present or future taxes, duties, levies, imposts, charges, compulsory loans, assessments, or other deductions or withholdings whatsoever, and all liabilities with respect thereto (other than franchise taxes and taxes imposed on or measured by the Lender's net income, receipts, capital or net worth), imposed at any time by any authority having power to tax in any jurisdiction worldwide (such deductions or withholdings being hereinafter referred to as "Taxes"), unless the deduction or withholding of such Taxes is required by any applicable law. If any Taxes are required by applicable law to be deducted or withheld from any payment hereunder, Borrower shall (I) increase the amount payable as is necessary so that, after making all required deductions or withholdings (including deductions or withholdings applicable to additional amounts payable under this paragraph), Lender shall receive an amount equal to the amount it would have received had no deductions or withholdings been made, (ii) Borrower shall make such deductions or withholdings, and (iii) Borrower shall pay the full amount deducted or withheld to the relevant taxation authority or other authority in accordance with applicable law. Within 30 days after the date of payment of any taxes or other amounts deducted or withheld, Borrower shall furnish Lender with an official receipt (or certified copy thereof) or other documentation reasonably acceptable to Lender evidencing such payment. Borrower shall indemnify Lender from and against any and all Taxes (irrespective of when imposed) and any liability, including, without limitation, any related interest, penalties and expenses, that may become payable by Lender as a consequence of Borrower's failure to perform any of its obligations under this paragraph, whether or not such Taxes or liability were correctly or legally asserted. Payment pursuant to this indemnification shall be made upon written demand therefore. {Borrower shall pay (or if appropriate, reimburse Lender for) any stamp, documentary or similar taxes or any other excise, intangible or property taxes, charges or similar levies (and any interest or penalty relating thereto) imposed at any time which arise from, or otherwise with respect to, any payment made hereunder or from execution, delivery or registration of this instrument.} Borrower's obligation under this paragraph shall survive the termination of this Note.

_____ (Seal)
LM REALTY 31B, LLC                          -Borrower

BY
ILYA ____, AUTHORIZED
SIGNATORY

_____ (Seal)
                                            -Borrower

_____ (Seal)
                                            -Borrower

_____ (Seal)
                                            -Borrower

_____ (Seal)
                                            -Borrower

_____ (Seal)
                                            -Borrower

0149987358
CD5380 Rev. 08/09

**"EXHIBIT D"**

Return To:

CASSIN & CASSIN LLP
711 THIRD AVENUE, 2OTH FLOOR,
NEW YORK, NY 10017

Prepared By:
CAPOCCI, SUSAN, ,

# Mortgage

**MIN 100298901499873584**

### Words Used Often In This Document

(A) **"Security Instrument."** This document, which is dated **August 28, 2012** , together with all Riders to this document, will be called the "Security Instrument."

(B) **"Borrower." LM REALTY 31B, LLC**

whose address is **10 WEST END AVENUE  Unit: 31B , NEW YORK, NY 10023**

sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, with a mailing address of P.O. Box 2026, Flint, MI 48501-2026, a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834 and telephone number of (888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**

| Section: | Block: **1151** | Lot: **1158** | Unit: |
|---|---|---|---|

NY 8113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 1 of 21

(D) "Lender." HSBC BANK USA, N.A.

will be called "Lender." Lender is a corporation or association which exists under the laws of THE UNITED STATES OF AMERICA        . Lender's address is 2929 WALDEN AVENUE, DEPEW, NY 14043-2602

(E) "Note." The note signed by Borrower and dated August 28, 2012        , will be called the "Note." The Note shows that I owe Lender EIGHT HUNDRED EIGHTY FOUR THOUSAND and NO/100
                        Dollars (U.S. $ 884,000.00        ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by September 01, 2042 .

(F) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."

(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

[x] Adjustable Rate Rider  [x] Condominium Rider            [ ] Second Home Rider
[ ] Balloon Rider          [ ] Planned Unit Development Rider  [x] 1-4 Family Rider
[ ] VA Rider               [ ] Biweekly Payment Rider          [ ] Other(s) [specify]

(J) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated

NY 6113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 2 of 21

teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** **"Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(N)** **"Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(O)** **"Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** **"Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(Q)** **"RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**Borrower's Transfer To Lender Of Rights In The Property**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

NY 8113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 3 of 21

### Description Of The Property

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A)  The Property which is located at **10 WEST END AVENUE , Unit 31B**

[Street]

**NEW YORK**                    [City, Town or Village], New York **10023**      [Zip Code].
This Property is in **NEW YORK**                                      County. It has the following
legal description: **SEE ATTACHED SCHEDULE A**
**THIS PROPERTY IS IMPROVED BY A 1 OR 2 FAMILY DWELLING**

(B)  All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C)  All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D)  All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;  .

(E)  All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F)  All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G)  All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

### Borrower's Right To Mortgage The Property And Borrower's Obligation To Defend Ownership Of The Property

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

NY 8113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 4 of 21

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

### Plain Language Security Instrument

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

### Covenants

I promise and I agree with Lender as follows:

1. **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

    Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

    Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:
    First, to pay interest due under the Note;
    Next, to pay principal due under the Note; and
    Next, to pay the amounts due Lender under Section 3 of this Security Instrument.
    Such payments will be applied to each Periodic Payment in the order in which it became due.
    Any remaining amounts will be applied as follows:
    First, to pay any late charges;
    Next, to pay any other amounts due under this Security Instrument; and
    Next, to reduce the principal balance of the Note.

NY 8113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 5 of 21

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

3.    **Monthly Payments For Taxes And Insurance.**
      (a)  **Borrower's Obligations.**
           I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"
           (1)  The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"
           (2)  The leasehold payments or ground rents on the Property (if any);
           (3)  The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;
           (4)  The premium for Mortgage Insurance (if any);
           (5)  The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and
           (6)  If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where

NY 8113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 8 of 21

payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

NY 8113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149967358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 7 of 21

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4.   **Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5.   **Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

NY 8113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 6 of 21

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance

NY 8113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 9 of 21

company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**
   (a) **Maintenance and Protection of the Property.**
   I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.
   (b) **Lender's Inspection of Property.**
   Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

8. **Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information

NY 8113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 10 of 21

important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

9. **Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and

NY 8113
NEW YORK-Single Family -Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 11 of 21

will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. **Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

NY 8113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

01499 87358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 12 of 21

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in

NY 8113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 13 of 21

Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

    **(a) Borrower's Obligations.**

    Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

    Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

    **(b) Lender's Rights.**

    Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

NY 8113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 14 of 21

14. **Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

15. **Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

NY 8113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 15 of 21

17. **Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

18. **Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19. **Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:
   (a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;
   (b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;
   (c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and
   (d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

NY 8113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 16 of 21

20. **Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. **Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property

NY 8113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 17 of 21

that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**Non-Uniform Covenants**

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a)    I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b)    Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

NY 6113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 16 of 21

(1)  The promise or agreement that I failed to keep or the default that has occurred;

(2)  The action that I must take to correct that default;

(3)  A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4)  That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5)  That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6)  That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c)  I do not correct the default stated in the notice from Lender by the date stated in that notice.

**23.  Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**24.  Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

**25.  Borrower's Statement Regarding the Property [check box as applicable].**

[x]  This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ]  This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ]  This Security Instrument does not cover real property improved as described above.

NY 8113
NEW YORK–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 19 of 21

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 21 of this Security Instrument and in any Rider signed by me and recorded with it.

**Borrower**

_____ (Seal)                      _____ (Seal)
LM REALTY 31B, LLC                         -Borrower                                                                          -Borrower

BY
ILYA BIROV    AUTHORIZED
SIGNATORY

_____ (Seal)                      _____ (Seal)
                                                  -Borrower                                                                          -Borrower

_____ (Seal)                      _____ (Seal)
                                                  -Borrower                                                                          -Borrower

NY 8113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 20 of 21

**Acknowledgment**
**State of** New York
**County of** New York
On Aug. 28, 2012 before me, the undersigned, personally appeared
Ilya Bykov

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person(s) upon behalf of which the individual(s) acted, executed the instrument.

_____
*Notary Public*

*My commission expires:*

Tax Map Information: **BLOCK 1151 LOT 1158**

SEAL

BETH STOLZENBERG
Notary Public, State of New York
No. 01ST5072175
Qualified in Westchester County
Commission Expires January 27, 20__

NY 8113
NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

0149987358
Form 3033 1/01
VMP6A(NY) (1010).02
Page 21 of 21

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this **28th** day of **August, 2012** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **HSBC BANK USA, N.A.**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: **10 WEST END AVENUE , Unit 31B, NEW YORK, NY  10023**

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows , storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

CD 2063                                                                                                 0149987358

**MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**Form 3170 1 /01**

Wolters Kluwer Financial Services
VMP ®-57R (0811)
Page 1 of 3        Initials: _12_

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

CD 2063                                                                                    0149987358

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®-57R (0811)                          Page 2 of 3                    Initials:_____          Form 3170  1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)
                              -Borrower

LM REALTY 31B, LLC

BY
ILYA BYKOV, AUTHORIZED SIGNATORY

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

CD 2063                                         0149987358

**MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
VMP ®-57R (0811)            Page 3 of 3        Initials            Form 3170 1 /01

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this **28th** day of **August, 2012** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **HSBC BANK USA, N.A.**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**10 WEST END AVENUE , Unit 31B, NEW YORK, NY  10023**
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

**The 10 West End Avenue Condominium**
[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in

CD 2061                                                                    0149987358

**MULTISTATE CONDOMINIUM RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**Form 3140 1 /01**
Wolters Kluwer Financial Services
VMP ®-8R (08 10)
Page 1 of 3              Initials: *IB*

Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

CD 2061                                                                                     0149987358
**MULTISTATE CONDOMINIUM RIDER** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®-8R (0810)                          Page 2 of 3        Initials: _JB_        Form 3140 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____ (Seal)
                              -Borrower

LM REALTY 31B, LLC

BY
ILYA BYKOV, AUTHORIZED SIGNATORY

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower


CD 2061                                          0149987358
**MULTISTATE CONDOMINIUM RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
VMP®-8R (0810)              Page 3 of 3        Initials: _____    Form 3140 1/01

# INTEREST ONLY
# ADJUSTABLE RATE RIDER
### (LIBOR One-Month Index (As posted By Fannie Mae) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this **28th** day of **August, 2012** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **HSBC BANK USA, N.A.**

("Lender") of the same date and covering the property described in the Security Instrument and located at:

**10 WEST END AVENUE , Unit 31B, NEW YORK, NY 10023**

[Property Address]

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of **2.25** %. The Note provides for changes in the interest rate and the monthly payments as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of **October, 2012**, and on that day every one month thereafter. Each date on which my interest rate could change is called a "Change Date."

CD 5434                                                                                 0149987358

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR ONE-MONTH INDEX (AS POSTED BY FANNIE MAE) - Single Family
- Fannie Mae Uniform Instrument                                                    Rev. 09/08

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one month U.S. dollar-denominated deposits in the London market based on quotations of major banks, as posted by Fannie Mae through electronic transmission or by telephone or both through electronic transmission and by telephone. The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index."

If the Index is no longer available, or is no longer posted either through electronic transmission or by telephone, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two percentage points ( 2 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.25 % or less than 2 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than Ten percentage points ( 10 %) from the rate of interest I have been paying for the preceding one month. My interest rate will never be greater than 12.25 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

CD 5434                                                                                    0149987358

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR ONE-MONTH INDEX (AS POSTED BY FANNIE MAE) - Single Family - Fannie Mae Uniform Instrument                                                                Rev. 09/08

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less that 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CD 5434                                                                                              0149987358

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR ONE-MONTH INDEX (AS POSTED BY FANNIE MAE) - Single Family
- Fannie Mae Uniform Instrument                                                                    Rev. 09/08

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)        _____ (Seal)
                                -Borrower                                      -Borrower

LM REALTY 31B, LLC

BY
ILYA BYKOV, AUTHORIZED SIGNATORY

_____ (Seal)        _____ (Seal)
                                -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                                -Borrower                                      -Borrower

CD 5434                                                                   0149987358

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR ONE-MONTH INDEX (AS POSTED BY FANNIE MAE) - Single Family
- Fannie Mae Uniform Instrument                                          Rev. 09/08

**Title America Land Services, Inc.**                    **Title No.:** *TA-19630-NY*
Issued on behalf of
*Old Republic National Title Insurance Company*

## SCHEDULE A

The Condominium Unit (the "Unit") in the condominium known as The 10 West End Avenue Condominium (the "Condominium"), comprised of the land described below and made a part hereof (the "Land") and the building known by the number 10 West End Avenue, New York, New York 10023 (the "Building"), said Unit being designated and described as Unit No. 31B in that certain declaration dated May 1, 2007, made by the Grantor under Article 9-B of the Real Property Law of the State of New York (the "Condominium Act"), establishing a plan for condominium ownership of the Building and the Land upon which the Building is situated, which declaration was recorded in the Office of the Register of the City of New York, County of New York (the "City Register's Office"), on the 12th day of June, 2007, as CRFN 2007000303374 (such declaration and any amendments thereto being referred to hereinafter, collectively, as the "Declaration"); said Unit also being designated as Tax Lot 1158 in Block 1151 on the Tax Map of the Real Property Assessment Department of the City of New York for the Borough of Manhattan and on the floor plans of the Building dated May 9th, 2007 (the "Floor Plans"), and filed in with the Real Property Assessment Department of the City of New York on June 12, 2007, as Condominium Plan No. 1719 and also filed in the City Register's Office, County of New York on June 1, 2007, as CRFN 2007000303375.

TOGETHER with an undivided 0.6846% interest in the Common Elements (as such term is defined in the Declaration) appurtenant to the Unit.

The land upon which the Unit is situated being more particularly bounded and described as follows:

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the easterly side of West End Avenue and the southerly side of West 60th Street;

RUNNING THENCE easterly along the southerly side of West 60th Street, 100 feet;

THENCE southerly parallel with the easterly side of West End Avenue, 75 feet 8 1/2 inches;

THENCE westerly parallel with the southerly side of West 60th Street, 3 feet 2 inches to a point which is measured 96 feet 10 inches easterly from the easterly side of West End Avenue;

THENCE southerly from said point and parallel with the easterly side of West End Avenue 125 feet to the northerly side of West 59th Street;

THENCE westerly along the northerly side of West 59th Street, 96 feet 10 inches to the easterly side of West End Avenue;

THENCE northerly along the easterly side of West End Avenue, 200 feet 8 1/2 inches to the point or place of BEGINNING.

**Title America Land Services, Inc.**                    **Title No.:** *TA-19630-NY*
Issued on behalf of
*Old Republic National Title Insurance Company*

## SCHEDULE A (continued)

**For Information Only - Not Insured Hereunder:**

**Property Address:** 10 West End Avenue, Unit 31B, New York, New York 10023
**Block: 1151**         **Lot: 1158**         **Unit: 31B**

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2012090401253003002SB053

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

**Document ID:** 2012090401253003    Document Date: 08-28-2012    Preparation Date: 09-07-2012
Document Type: AGREEMENT

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

255 MORTGAGE TAX EXEMPT AFFIDAVIT                                                             1

TA-19630NY
1151
1158

<u>255 AFFIDAVIT</u>

STATE OF NEW YORK                )
                                 §:
COUNTY OF WESTCHESTER            )

Jennifer Krucher, Esq., being duly sworn, deposes and says:

1.  That she is the attorney for the lender who has a lien on the premises situated in the County of New York, State of New York ( see description Schedule A attached as Exhibit B ) and is familiar with the facts hereinafter set forth;

2.  That an instrument herewith offered for recording is identified as follows:
    a.  Type of Instrument: Consolidation, Extension and Modification Agreement
    b.  Date of Instrument: August 28, 2012
    c.  Parties: Mortgagee: HSBC BANK USA, N.A.
        Mortgagor: LM Realty 31B, LLC
    d.  Amount of Loan Modification: $10,332.63
    e.  Mortgage Tax to be paid: $181.15

3.  That the mortgage to which the above instrument is being modified is identified as follows:

    SEE EXHIBIT "A" ANNEXED HERETO AND MADE A PART HEREOF

4.  That the mortgages as modified and extended do not secure a re-loan or re-advance or new loan except as secured and set forth in paragraph two (2) and three (3) above.

5.  That the exception from further tax is claimed under Section 255 of the Tax Law as to the said instrument herewith offered for recording.

6.  That the maximum amount secured hereunder and in conjunction with the previously recorded mortgage is $884,000.00

Jennifer Krucher, Esq.

Sworn to before me this
_28th_ day of August 2012

Notary Public

BETH STOLZENBERG
Notary Public, State of New York
No. 01ST5072175
Qualified in Westchester County
Commission Expires January 27, 20__

**SEAL**

{00719644;1}

**EXHIBIT A**
**(List of Mortgages, Notes and Agreements)**

(1) Mortgage given by LM Realty 31BD, LLC dated August 28, 2012 in favor of MERS, Inc. as nominee for HSBC Bank USA, N.A. in the principal amount of $10,332.63 to be recorded in the office of the County Clerk of New York County simultaneously herewith. This mortgage is secured by Note dated August 28, 2012.

(2) Mortgage given by Larisa Markus dated June 26, 2008 in favor of Emigrant Mortgage Company, Inc. in the principal amount of $975,000.00 was recorded on July 18, 2008 in the office of the County Clerk of New York County in CRFN 2008000286218. This mortgage is secured by a Note dated June 26, 2008.

Assignment of Mortgage from Emigrant Mortgage Company, Inc. to MERS as Nominee for HSBC Mortgage Corporation (USA) dated August 31, 2010 and recorded in the office of the County Clerk of New York County on October 19, 2010 in CRFN 2010000363144.

(3) Mortgage given by LM Realty 31B, LLC dated August 31, 2010 in favor of Mers as Nominee for HSBC Mortgage Corporation (USA) in the principal amount of $7,309.99 was recorded on October 12, 2010 in the office of the County Clerk of New York County in CRFN 2010000340076. This mortgage is secured by Note dated August 31, 2010.

Consolidation, Extension and Modification Agreement by LM Realty 31B, LLC in favor of MERS, Inc. as nominee for HSBC Mortgage Corporation (USA) dated August 31, 2010 and recorded in the office of the County Clerk of New York County on October 29, 2010 in CRFN 201000363143. Consolidates mortgages (1), (2) and (3) to form a single lien in the amount of $965,000.00.

At this date, the current unpaid principal balance of mortgage (1), (2) and (3) is $873,667.37

Assignment of Mortgage from MERS as Nominee for HSBC Mortgage Corporation (USA) to MERS as Nominee for HSBC Bank USA, N.A. dated August 20, 2012 to be recorded in the office of the County Clerk of New York County simultaneously herewith.

Consolidation, Extension and Modification Agreement by LM Realty 31B, LLC in favor of MERS, Inc. as nominee for HSBC Bank, USA, N.A. dated August 28, 2012, consolidates mortgages (1) and, (2) to form a single lien in the amount of $884,000.00 to be recorded simultaneously herewith.

{00719644;1}

**Title America Land Services, Inc.**                    Title No.: *TA-19630-NY*
Issued on behalf of
*Old Republic National Title Insurance Company*

## SCHEDULE A

The Condominium Unit (the "Unit") in the condominium known as The 10 West End Avenue Condominium (the "Condominium"), comprised of the land described below and made a part hereof (the "Land") and the building known by the number 10 West End Avenue, New York, New York 10023 (the "Building"), said Unit being designated and described as Unit No. 31B in that certain declaration dated May 1, 2007, made by the Grantor under Article 9-B of the Real Property Law of the State of New York (the "Condominium Act"), establishing a plan for condominium ownership of the Building and the Land upon which the Building is situated, which declaration was recorded in the Office of the Register of the City of New York, County of New York (the "City Register's Office"), on the 12th day of June, 2007, as CFRN 2007000303374 (such declaration and any amendments thereto being referred to hereinafter, collectively, as the "Declaration"); said Unit also being designated as Tax Lot 1158 in Block 1151 on the Tax Map of the Real Property Assessment Department of the City of New York for the Borough of Manhattan and on the floor plans of the Building dated May 9th, 2007 (the "Floor Plans"), and filed in with the Real Property Assessment Department of the City of New York on June 12, 2007, as Condominium Plan No. 1719 and also filed in the City Register's Office, County of New York on June 1, 2007, as CRFN 2007000303375.

TOGETHER with an undivided 0.6846% interest in the Common Elements (as such term is defined in the Declaration) appurtenant to the Unit.

The land upon which the Unit is situated being more particularly bounded and described as follows:

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the easterly side of West End Avenue and the southerly side of West 60th Street;

RUNNING THENCE easterly along the southerly side of West 60th Street, 100 feet;

THENCE southerly parallel with the easterly side of West End Avenue, 75 feet 8 1/2 inches;

THENCE westerly parallel with the southerly side of West 60th Street, 3 feet 2 inches to a point which is measured 96 feet 10 inches easterly from the easterly side of West End Avenue;

THENCE southerly from said point and parallel with the easterly side of West End Avenue 125 feet to the northerly side of West 59th Street;

THENCE westerly along the northerly side of West 59th Street, 96 feet 10 inches to the easterly side of West End Avenue;

THENCE northerly along the easterly side of West End Avenue, 200 feet 8 1/2 inches to the point or place of BEGINNING.

**Title America Land Services, Inc.**                    Title No.:  *TA-19630-NY*
Issued on behalf of
*Old Republic National Title Insurance Company*

### SCHEDULE A (continued)

For Information Only - Not Insured Hereunder:

Property Address:  10 West End Avenue, Unit 31B, New York, New York 10023
Block:  1151          Lot:  1158          Unit:  31B

FA-19U630NY
1151
1158

<u>255 AFFIDAVIT</u>

STATE OF NEW YORK     )
                                  §:

COUNTY OF WESTCHESTER    )

Jennifer Krucher, Esq., being duly sworn, deposes and says:

1.    That she is the attorney for the lender who has a lien on the premises situated in the County of New York, State of New York ( see description Schedule A attached as Exhibit B ) and is familiar with the facts hereinafter set forth;

2.    That an instrument herewith offered for recording is identified as follows:
    a.  Type of Instrument: Consolidation, Extension and Modification Agreement
    b.  Date of Instrument: August 28, 2012
    c.  Parties: Mortgagee: HSBC BANK USA, N.A.
          Mortgagor: LM Realty 31B, LLC
    d.  Amount of Loan Modification: $10,332.63
    e.  Mortgage Tax to be paid: $181.15

3.    That the mortgage to which the above instrument is being modified is identified as follows:

    SEE EXHIBIT "A" ANNEXED HERETO AND MADE A PART HEREOF

4.    That the mortgages as modified and extended do not secure a re-loan or re-advance or new loan except as secured and set forth in paragraph two (2) and three (3) above.

5.    That the exception from further tax is claimed under Section 255 of the Tax Law as to the said instrument herewith offered for recording.

6.    That the maximum amount secured hereunder and in conjunction with the previously recorded mortgage is $884,000.00

Jennifer Krucher, Esq.

Sworn to before me this
___ day of August 2012

Notary Public

BETH STOLZENBERG
Notary Public, State of New York
No. 01ST5072175
Qualified in Westchester County
Commission Expires January 27, 20__

[00719644;1]

**EXHIBIT A**
**(List of Mortgages, Notes and Agreements)**

(1) Mortgage given by LM Realty 31BD, LLC dated August 28, 2012 in favor of MERS, Inc. as nominee for HSBC Bank USA, N.A. in the principal amount of $10,332.63 to be recorded in the office of the County Clerk of New York County simultaneously herewith. This mortgage is secured by Note dated August 28, 2012.

(2) Mortgage given by Larisa Markus dated June 26, 2008 in favor of Emigrant Mortgage Company, Inc. in the principal amount of $975,000.00 was recorded on July 18, 2008 in the office of the County Clerk of New York County in CRFN 2008000286218. This mortgage is secured by a Note dated June 26, 2008.

Assignment of Mortgage from Emigrant Mortgage Company, Inc. to MERS as Nominee for HSBC Mortgage Corporation (USA) dated August 31, 2010 and recorded in the office of the County Clerk of New York County on October 19, 2010 in CRFN 2010000363144.

(3) Mortgage given by LM Realty 31B, LLC dated August 31, 2010 in favor of Mers as Nominee for HSBC Mortgage Corporation (USA) in the principal amount of $7,309.99 was recorded on October 12, 2010 in the office of the County Clerk of New York County in CRFN 2010000340076. This mortgage is secured by Note dated August 31, 2010.

Consolidation, Extension and Modification Agreement by LM Realty 31B, LLC in favor of MERS, Inc. as nominee for HSBC Mortgage Corporation (USA) dated August 31, 2010 and recorded in the office of the County Clerk of New York County on October 29, 2010 in CRFN 201000363143. Consolidates mortgages (1), (2) and (3) to form a single lien in the amount of $965,000.00.

At this date, the current unpaid principal balance of mortgage (1), (2) and (3) is $873,667.37

Assignment of Mortgage from MERS as Nominee for HSBC Mortgage Corporation (USA) to MERS as Nominee for HSBC Bank USA, N.A. dated August 20, 2012 to be recorded in the office of the County Clerk of New York County simultaneously herewith.

Consolidation, Extension and Modification Agreement by LM Realty 31B, LLC in favor of MERS, Inc. as nominee for HSBC Bank, USA, N.A. dated August 28, 2012, consolidates mortgages (1) and, (2) to form a single lien in the amount of $884,000.00 to be recorded simultaneously herewith.

{00719644;1}

**Title America Land Services, Inc.**
Issued on behalf of
*Old Republic National Title Insurance Company*

**Title No.:** *TA-19630-NY*

## SCHEDULE A

The Condominium Unit (the "Unit") in the condominium known as The 10 West End Avenue Condominium (the "Condominium"), comprised of the land described below and made a part hereof (the "Land") and the building known by the number 10 West End Avenue, New York, New York 10023 (the "Building"), said Unit being designated and described as Unit No. 31B in that certain declaration dated May 1, 2007, made by the Grantor under Article 9-B of the Real Property Law of the State of New York (the "Condominium Act"), establishing a plan for condominium ownership of the Building and the Land upon which the Building is situated, which declaration was recorded in the Office of the Register of the City of New York, County of New York (the "City Register's Office"), on the 12th day of June, 2007, as CRFN 2007000303374 (such declaration and any amendments thereto being referred to hereinafter, collectively, as the "Declaration"); said Unit also being designated as Tax Lot 1158 in Block 1151 on the Tax Map of the Real Property Assessment Department of the City of New York for the Borough of Manhattan and on the floor plans of the Building dated May 9th, 2007 (the "Floor Plans"), and filed in with the Real Property Assessment Department of the City of New York on June 12, 2007, as Condominium Plan No. 1719 and also filed in the City Register's Office, County of New York on June 1, 2007, as CRFN 2007000303375.

TOGETHER with an undivided 0.6846% interest in the Common Elements (as such term is defined in the Declaration) appurtenant to the Unit.

The land upon which the Unit is situated being more particularly bounded and described as follows:

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the easterly side of West End Avenue and the southerly side of West 60th Street;

RUNNING THENCE easterly along the southerly side of West 60th Street, 100 feet;

THENCE southerly parallel with the easterly side of West End Avenue, 75 feet 8 1/2 inches;

THENCE westerly parallel with the southerly side of West 60th Street, 3 feet 2 inches to a point which is measured 96 feet 10 inches easterly from the easterly side of West End Avenue;

THENCE southerly from said point and parallel with the easterly side of West End Avenue 125 feet to the northerly side of West 59th Street;

THENCE westerly along the northerly side of West 59th Street, 96 feet 10 inches to the easterly side of West End Avenue;

THENCE northerly along the easterly side of West End Avenue, 200 feet 8 1/2 inches to the point or place of BEGINNING.

**Title America Land Services, Inc.**                    Title No.: *TA-19630-NY*
Issued on behalf of
*Old Republic National Title Insurance Company*

## SCHEDULE A (continued)

For Information Only - Not Insured Hereunder:

**Property Address: 10 West End Avenue, Unit 31B, New York, New York 10023**
**Block: 1151          Lot: 1158          Unit: 31B**



**2012090401253003002E7ED2**

| **NYC DEPARTMENT OF FINANCE** | |
|---|---|
| **OFFICE OF THE CITY REGISTER** | |

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

## RECORDING AND ENDORSEMENT COVER PAGE       PAGE 1 OF 54

| | | |
|---|---|---|
| Document ID: **2012090401253003** | Document Date: 08-28-2012 | Preparation Date: 09-07-2012 |
| Document Type: AGREEMENT | | |
| Document Page Count: 52 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| TITLE AMERICA LAND SERVICES | CASSIN & CASSIN LLP |
| 77 NEWBRIDGE ROAD | 711 THIRD AVENUE |
| PICK UP TO RED VISION | 20TH FLOOR |
| HICKSVILLE, NY 11801 | NEW YORK, NY 10017 |
| 516-733-1822 | |
| khunter@titleamericaland.com | |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1151 | 1158 | Entire Lot  31B | 10 WEST END AVENUE |

**Property Type:** SINGLE RESIDENTIAL CONDO UNIT

### CROSS REFERENCE DATA

Document ID: 2012090401253002

  x  Additional Cross References on Continuation Page

### PARTIES

| PARTY 1: | PARTY 2: |
|---|---|
| LM REALTY 31B, LLC | MERS INC |
| 10 WEST END AVENUE, UNIT 31B | 1901 E VOORHEES STREET, SUITE C |
| NEW YORK, NY 10023 | DANVILLE, IL 61834 |

  x  Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 884,000.00 | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 884,000.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | 255 | $ | 0.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | |
| MTA: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | |
| Additional MRT: | $ | 0.00 | Recorded/Filed      09-14-2012 11:47 | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | |
| Recording Fee: | $ | 297.00 | **2012000365004** | |
| Affidavit Fee: | $ | 8.00 | | |

*Annette M Hill*

***City Register Official Signature***

| NYC DEPARTMENT OF FINANCE<br>OFFICE OF THE CITY REGISTER |  |
|---|---|

2012090401253003002C7C52

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 54 |
|---|---|---|
| Document ID: 2012090401253003 | Document Date: 08-28-2012 | Preparation Date: 09-07-2012 |
| Document Type: AGREEMENT | | |

**CROSS REFERENCE DATA**
CRFN: 2008000286218
CRFN: 2010000363144
CRFN: 2010000340076
CRFN: 2010000363143
Document ID: 2012090401253001

**PARTIES**
PARTY 2:
HSBC BANK USA, N.A.
2929 WALDEN AVENUE
DEPEW, NY 14043-2602

**EXHIBIT F**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X

HSBC BANK USA, N.A.                                    **SUMMONS**

               Plaintiff,

vs
                                        INDEX #:

LM REALTY 31B, LLC, LARISA MARKUS,
BG ATLANTIC INC, PEOPLE OF THE                         ORIGINAL FILED WITH THE
STATE OF NEW YORK, NEW YORK CITY                       CLERK ON:
DEPARTMENT OF FINANCE, BOARD OF
MANAGERS OF 10 WEST END AVENUE                         MORTGAGED PREMISES:
CONDOMINIUM                                            10 WEST END AVENUE, UNIT 31B
                                                       NEW YORK, NY 10023
JOHN DOE (Those unknown tenants, occupants,
persons or corporations or their heirs,                BL #: 1151 - 1158
distributees, executors, administrators, trustees,
guardians, assignees, creditors or successors
claiming an interest in the mortgaged premises.)

               Defendant(s).
-----------------------------------------------------------------X

TO THE ABOVE NAMED DEFENDANTS:

     YOU ARE HEREBY SUMMONED to answer the Complaint in the above captioned action and
to serve a copy of your Answer on the Plaintiff's attorney within twenty (20) days after the service of
this Summons, exclusive of the day of service, or within thirty (30) days after completion of service
where service is made in any other manner than by personal delivery within the State. The United States
of America, if designated as a Defendant in this action, may answer or appear within sixty (60) days of
service hereof. In case of your failure to appear or answer, judgment will be taken against you by
default for the relief demanded in the Complaint.


# NOTICE
# YOU ARE IN DANGER OF LOSING YOUR HOME

## If you do not respond to this summons and complaint by serving a copy of the answer on the attorney for the mortgage company who filed this foreclosure proceeding against you and filing the answer with the court, a default judgment may be entered and you can lose your home.

**Speak to an attorney or go to the court where your case is pending for further information on how to answer the summons and protect your property.**

**Sending a payment to your mortgage company will not stop this foreclosure action.**

**<u>YOU MUST RESPOND BY SERVING A COPY OF THE ANSWER ON THE ATTORNEY FOR THE PLAINTIFF (MORTGAGE COMPANY) AND FILING THE ANSWER WITH THE COURT.</u>**

New York County is designated as the place of trial.  The basis of venue is the location of the mortgaged premises foreclosed herein.

DATED:  9/21/18

Christopher S Szczygiel, Esq
Gross Polowy, LLC
Attorneys for Plaintiff
1775 Wehrle Drive, Suite 100
Williamsville, NY 14221
Tel.: (716)204-1700

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------X

HSBC BANK USA, N.A.                          **<u>COMPLAINT</u>**

            Plaintiff,

vs                                           INDEX #:

LM REALTY 31B, LLC, LARISA MARKUS,           ORIGINAL FILED WITH THE
BG ATLANTIC INC, PEOPLE OF THE               CLERK ON:
STATE OF NEW YORK, NEW YORK CITY
DEPARTMENT OF FINANCE, BOARD OF              MORTGAGED PREMISES:
MANAGERS OF 10 WEST END AVENUE               10 WEST END AVENUE, UNIT 31B
CONDOMINIUM                                  NEW YORK, NY 10023

JOHN DOE (Those unknown tenants, occupants,  BL #: 1151 - 1158
persons or corporations or their heirs,
distributees, executors, administrators, trustees,
guardians, assignees, creditors or successors
claiming an interest in the mortgaged premises.)

            Defendant(s).
-------------------------------------------------------------X

       The Plaintiff by its attorneys, Gross Polowy, LLC, for its complaint against the
Defendant(s) alleges upon information and belief as follows:

       1.   Plaintiff, HSBC BANK USA, N.A. is a national association organized and existing
under the laws of the United States of America and the owner and holder of the subject note and
mortgage or has been delegated authority to institute this mortgage foreclosure action by the
owner and holder of the subject note and mortgage and has the right to foreclose. Attached here
as Schedule A is a copy of the original consolidated note.

       2.   On or about August 28, 2012, LM Realty 31B, LLC by Authorized Signatory Ilya
Bykov executed and delivered a Consolidated note whereby LM Realty 31B, LLC promised to
pay the sum of $884,000.00 plus interest on the unpaid amount due. The terms of the note were
further modified.

       3.   As security for the payment of the note Larisa Markus by attorney-in-fact duly
executed and delivered a mortgage, in the amount of $975,000.00 which was recorded as
follows:

       Recording Date: July 18, 2008
       CRFN 2008000286218
       City Register of the City of New York, New York County

Plaintiff is also holder of a mortgage in the amount of $7,309.99 executed by LM Realty 31B, LLC by Steven J. Goldstein, Esq. as Authorized Signatory which was recorded as follows and mortgage tax paid thereon:

Recording Date: October 12, 2010
CRFN 2010000340076
City Register of the City of New York, New York County

Said mortgage was consolidated with the mortgage referred to in CRFN: 2008000286218 by a Consolidation, Extension and Modification Agreement executed by LM Realty 31B, LLC by Steven J. Goldstein, ESQ. as Authorized Signatory dated August 31, 2010 and recorded October 29, 2010 in CRFN 2010000363143 in the City Register of the City of New York, New York County to form a single lien in the amount of $965,000.00.

The consolidated mortgage was subsequently assigned to Mortgage Electronic Registration Systems, Inc. as nominee for HSBC Mortgage Corporation (USA).

The consolidated mortgage was subsequently assigned to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for HSBC Bank USA, N.A.

Plaintiff is also holder of a mortgage in the amount of $10,332.63 executed by LM Realty 31B, LLC by Ilya Bykov as Authorized Signatory which was recorded as follows and mortgage tax paid thereon:

Recording Date: September 14, 2012
CRFN 2012000365003
City Register of the City of New York, New York County

Said mortgage was consolidated with the mortgage referred to in CRFN: 2010000363143 by a Consolidation, Extension and Modification Agreement executed by LM Realty 31B, LLC by Ilya Bykov as Authorized Signatory dated August 28, 2012 and recorded September 14, 2012 in CRFN 2012000365004 in the City Register of the City of New York, New York County to form a single lien in the amount of $884,000.00.

The consolidated mortgage was subsequently assigned to HSBC Bank USA, N.A.

4.    The mortgaged property is known as 10 WEST END AVENUE, UNIT 31B, NEW YORK, NY 10023.    The tax map designation is BLOCK 1151, LOT 1158.    Plaintiff is foreclosing the land, buildings, and other improvements located on the property. The property is more fully described in Schedule B attached to this complaint.

5.    At the time that the note and mortgage were executed, Larisa Markus was in title to the property.  On August 31, 2010, Larisa Markus, by Steven J. Goldstein, Esq. as Agent by Power of Attorney, transferred the property to LM Realty 31B, LLC.

6. LM Realty 31B, LLC and Larisa Markus failed to comply with the conditions of the note and mortgage by not making the payment that was due on August 1, 2017 and subsequent payments.

7. There is now due and owing on the note and mortgage the following amounts:

Principal Balance: $884,000.00
Interest Rate: 3.25%
Date Interest Accrues from: July 1, 2017

Together with accrued late charges, monies advanced for taxes, assessments, insurance, securing, inspections, posting of notices, maintenance and preservation of the property. The interest rate stated above may change in accordance with the adjustable rate feature of the note.

8. In order to protect the value of the property and its rights in the property, the Plaintiff may have to pay additional taxes, assessments, water charges, insurance premiums and other charges and the costs, allowances, expenses of sale, and reasonable attorney's fees for the foreclosure. Plaintiff requests that any amount it pays, together with interest, be included in the total amount due.

9. The defendant(s) may have an interest encumbering the property, which is either subordinate to Plaintiff's mortgage, or paid in full, equitably subordinated, or adverse to Plaintiff's mortgage. The interest of each defendant is set forth in "Schedule C" of this complaint.

10. The interest or lien of the United States of America, the State, City or local government entity is set forth in "Schedule D" of this complaint.

11. Plaintiff has complied with sections 1304 and 1306 of the Real Property Actions and Proceedings Law, and the mortgage was originated in compliance with all provisions of section 595-a of the Banking Law and any rules or regulations promulgated there under, and, if applicable, sections 6-l or 6-m of the Banking law.

12. No separate pending action was brought to recover any part of the mortgage debt or if any such action is pending final judgment for Plaintiff was not rendered and it is the intent of the Plaintiff to discontinue it.

WHEREFORE, PLAINTIFF DEMANDS:

a. Judgment accelerating the maturity of the debt and determining the amount due Plaintiff for principal, interest, late charges, taxes, assessments, insurance, maintenance and preservation of the property and other similar charges, together with costs, allowances, expenses of sale, reasonable attorney's fees, all with interest, pursuant to the terms of the Note and Mortgage.

b. That the property be sold at auction to the highest bidder in accordance with the referee's terms of sale.

c. That the interest of the defendant(s) and all persons claiming by or through them be foreclosed and their title, right, claim, lien, interest or equity of redemption to the property be forever extinguished.

d. That out of the sale proceeds, the Plaintiff be paid the amounts due for principal, interest, late charges, taxes, assessments, insurance, securing, inspections, posting of notices, maintenance and preservation of the property, and other similar charges, together with court costs, allowances, expenses of sale, and reasonable attorney's fees, all with interest.

e. That the property be sold in as is condition and subject to the facts an inspection or accurate survey of the property would disclose, covenants, restrictions, easements and public utility agreements of record, building and zoning ordinances and violations, and the equity of redemption of the United States of America.

f. That Plaintiff may purchase the property at the sale.

g. That a receiver be appointed for the property, if requested by Plaintiff.

h. That a deficiency judgment against LM Realty 31B, LLC, to the extent allowable by law, for the amount that remains due after distribution of the sale proceeds, unless the debt was discharged in a bankruptcy or is otherwise uncollectable, be granted if requested by Plaintiff.

i. That if the Plaintiff possesses other liens against the property, they not merge with the mortgage being foreclosed and that Plaintiff, as a subordinate lien holder, be allowed to share in any surplus proceeds resulting from the sale.

j. That the Court award Plaintiff additional relief that is just, equitable and proper.

Christopher S Szczygiel, Esq.
Gross Polowy, LLC
1775 Wehrle Drive, Suite 100
Williamsville, NY 14221

## Schedule A

Attached here as Schedule A is a copy of the original consolidated note. If applicable, certain non-public personal information has been redacted from the attached document.

FILED: NEW YORK COUNTY CLERK 11/14/19 2018 02/14/50 09 04:44 AM INDEX NO. 850323/2018
NYSEF DOC. NO. 1                    Pg 203 of 223                    RECEIVED NYSCEF: 11/19/2018

Main Document

This Note amends and restates in their entirety and is given in substitution for, the Notes described in Exhibit A of the New York Consolidation, Extension and Modification Agreement dated the same date as this Note.

## INTEREST-ONLY PERIOD
## ADJUSTABLE RATE NOTE
### (One-Month LIBOR Index (As Published In *The Wall Street Journal*)
### (Lifetime Rate Cap - 5 Year Interest-Only Period)



**THIS NOTE CONTAINS AN ADJUSTABLE INTEREST RATE AND ALLOWS FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE MAXIMUM RATE THAT I MUST PAY.**

| August 28, 2012 | NEW YORK | NEW YORK |
|---|---|---|
| [Date] | [City] | [State] |

10 WEST END AVENUE., Unit 31B, NEW YORK, NY 10023
[Property Address]

**1.    BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 884,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is HSBC BANK USA, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 2.25 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.    PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment on the first day of every month, beginning on October 01, 2012. Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid Principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date; and if the payment includes both principal and interest, it will be applied to interest before Principal.

If, on 09/01/2042, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 2929 WALDEN AVENUE, DEPEW, NY 14043 or at a different place if required by the Note Holder.

NEW YORK ADJUSTABLE RATE NOTE-LIBOR ONE-MONTH INDEX-INTEREST-ONLY 5 YEARS THEN P&I

NY5416 03/10

**(B) Amount of My Initial Monthly Payments**

My initial monthly payment will be in the amount of U.S. $ __1,657.50__ until the first Change Date. After the first Change Date, my monthly payment will be in an amount sufficient to pay accrued interest at the rate determined as described in Section 4 of this Note until the First Principal and Interest Payment Due Date. On that date and thereafter, my monthly payment will be in an amount sufficient to repay the Principal and interest at the rate determined as described in Section 4 of this Note by the Maturity Date. The Note Holder will notify me prior to the date of changes in monthly payment.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

4.     **ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change the first day of every month. The date on which my adjustable interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two percentage points ( 2.0000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at any Change Date will not be greater than 10.00% over the initial interest rate as stated in Section 2 of this Note. My interest rate will never be greater than 10.00% over the initial interest rate.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

NEW YORK ADJUSTABLE RATE NOTE-LIBOR ONE-MONTH INDEX-INTEREST-ONLY 5 YEARS THEN P&I

NY5415 03/10

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 5th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

5.    **BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment may decrease after the first Change Date following my partial Prepayment. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6.    **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7.    **BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of ____Fifteen____ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be __5.00__ % of my overdue payment of interest, during the period when my payment is interest-only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

NEW YORK ADJUSTABLE RATE NOTE-LIBOR ONE-MONTH INDEX-INTEREST-ONLY 5 YEARS THEN P&I

NY5416 03/10

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.    UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

NEW YORK ADJUSTABLE RATE NOTE-LIBOR ONE-MONTH INDEX-INTEREST-ONLY 5 YEARS THEN P&I

NY5416 03/10

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
                         -Borrower                                  -Borrower

IM REALTY 315, LLC

BY
ILYA BYKOV, AUTHORIZED SIGNATORY

_____ (Seal)          _____ (Seal)
                         -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                  -Borrower

NEW YORK ADJUSTABLE RATE NOTE-LIBOR ONE-MONTH INDEX-INTEREST-ONLY 5 YEARS THEN P&I.

NY5416 03/10

## TAX ADDENDUM
## TO THE NOTE

Any and all payments made to Lender pursuant to this Note shall be made free and clear of, and without deductions or withholdings for, or on account of, any present or future taxes, duties, levies, imposts, charges, compulsory loans, assessments, or other deductions or withholdings whatsoever, and all liabilities with respect thereto (other than franchise taxes and taxes imposed on or measured by the Lender's net income, receipts, capital or net worth), imposed at any time by any authority having power to tax in any jurisdiction worldwide (such deductions or withholdings being hereinafter referred to as "Taxes"), unless the deduction or withholding of such Taxes is required by any applicable law. If any Taxes are required by applicable law to be deducted or withheld from any payment hereunder, Borrower shall (I) increase the amount payable as is necessary so that, after making all required deductions or withholdings (including deductions or withholdings applicable to additional amounts payable under this paragraph), Lender shall receive an amount equal to the amount it would have received had no deductions or withholdings been made, (ii) Borrower shall make such deductions or withholdings, and (iii) Borrower shall pay the full amount deducted or withheld to the relevant taxation authority or other authority in accordance with applicable law. Within 30 days after the date of payment of any taxes or other amounts deducted or withheld, Borrower shall furnish Lender with an official receipt (or certified copy thereof) or other documentation reasonably acceptable to Lender evidencing such payment. Borrower shall indemnify Lender from and against any and all Taxes (irrespective of when imposed) and any liability, including, without limitation, any related interest, penalties and expenses, that may become payable by Lender as a consequence of Borrower's failure to perform any of its obligations under this paragraph, whether or not such Taxes or liability were correctly or legally asserted. Payment pursuant to this indemnification shall be made upon written demand therefore. {Borrower shall pay (or if appropriate, reimburse Lender for) any stamp, documentary or similar taxes or any other excise, intangible or property taxes, charges or similar levies (and any interest or penalty relating thereto) imposed at any time which arise from, or otherwise with respect to, any payment made hereunder or from execution, delivery or registration of this instrument.} Borrower's obligation under this paragraph shall survive the termination of this Note.



CDS480 Rev. 08/09

LM REALTY 31B, LLC                    _____ (Seal)
                                                        -Borrower

BY
ILYA BYKOV, AUTHORIZED
SIGNATORY

_____ (Seal)        _____ (Seal)
                  -Borrower                            -Borrower

_____ (Seal)        _____ (Seal)
                  -Borrower                            -Borrower

_____ (Seal)        _____ (Seal)
                  -Borrower                            -Borrower

CD5380 Rev. 08/09.



# ALLONGE TO PROMISSORY NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED
NOTE, THIS ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID
NOTE:

*This  21st          Day of  August, 2012*

*Loan Number:* ███████████████████

*Note Date:*           *August 31, 2010*

*Original Loan Amount:*    $7,309.00

*Borrower(s) Name(s):  LM Realty 31B LLC*

*Borrower(s) Address: 10 West End Avenue, Unit 31B, New York, NY 10023*

Pay to the order of

**HSBC Bank USA, N.A.**

**Without  Recourse**

**HSBC Mortgage Corporation (USA)**

Signed by: **Windy Kowalski (13132)**
**Assistant Vice President**

HSBC Bank USA, N.A.
2929 Walden Avenue, Depew, NY 14043

### Schedule B – Legal Description

The Condominium Unit (the "Unit") in the condominium known as The 10 West End Avenue Condominium (the "Condominium"), compromised of the land described below and made a part hereof (the "Land") and the building known by the number 10 West End Avenue, New York, New York 10023 (the "Building"), said Unit being designated and described as Unit No. 31B in that certain declaration dated May 1, 2007, made by the Grantor under Article 9-B of the Real Property Law of the State of New York (the "Condominium Act"), establishing a plan for condominium ownership of the Building and the Land upon which the Building is situated, which declaration was recorded in the Office of the Register of the City of New York, County of New York (the "City Register's Office"), on the 12th day of June, 2007, as CFRN 2007000303374 (such declaration and any amendments thereto being referred to hereinafter, collectively, as the "Declaration"); said Unit also being designated as Tax Lot 1158 in Block 1151 on the Tax Map of the Real Property Assessment Department of the City of New York for the Borough of Manhattan and on the floor plans of the Building dated May 9th, 2007 (the "Floor Plans"), and filed in with the Real Property Assessment Department of the City of New York on June 12, 2007, as Condominium Plan No. 1719 and also filed in the City Register's Office, County of New York on June 1, 2007, as CRFN 2007000303375.

Together with an undivided 0.6846% interest in the Common Elements (as such term is defined in the Declaration) appurtenant to the Unit.

The land upon which the Unit is situated being more particularly bounded and described as follows:

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, City , County and State of New York, bounded and described as follows:

Beginning at the corner formed by the intersection of the easterly side of West End Avenue and the southerly side of West 60th Street;

Running thence easterly along the southerly side of West 60th Street, 100 feet;

Thence southerly parallel with the easterly side of West End Avenue, 75 feet 8 ½ inches;

Thence westerly parallel with the southerly side of West 60th Street, 3 feet 2 inches to a point which is measured 96 feet 10 inches easterly from the easterly side of West End Avenue;

Thence southerly from said point and parallel with the easterly side of West End Avenue 125 feet to the northerly side of West 59th Street;

Thence westerly along the northerly side of West 59th Street, 96 feet 10 inches to the easterly side of West End Avenue;

Thence northerly along the easterly side of West End Avenue, 200 feet 8 ½ inches to the point or place of beginning.

### Schedule C – Defendants

| | |
|---|---|
| LM Realty 31B, LLC | Borrower |
| Larisa Markus | Borrower |
| BG Atlantic Inc | Holder of a judgment(s) |
| Board of Managers of 10 West End Avenue Condominium | Named herein as a party Defendant for any possible unpaid condominium common charges. |

FILED: NEW YORK COUNTY CLERK 11/19/2018 12:50 PM

INDEX NO. 850323/2018

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 11/19/2018

19-10096 Doc 17 Filed 02/14/19 Entered 02/14/19 09:54:44 Main Document
Pg 213 of 223

## Schedule D – Defendants

| People of the State of New York | Possible Franchise taxes due for Ten West End Avenue Holdings LLC and LM Realty 31B, LLC |
| --- | --- |
| New York City Department of Finance | Possible Franchise taxes due for Ten West End Avenue Holdings LLC and LM Realty 31B, LLC |

FILED: NEW YORK COUNTY CLERK 06/14/1919 12:50 PM 14:44   Main Document   150323/2018
NYSCEF DOC. NO. 1                                                       RECEIVED NYSCEF: 4/19/2018

18-017566AB                                                            Page 4/9

```
       DOC# 999-223            OTHER NAMED DEFENDANTS SEE COMPLAINT
-----------------------------------------------------------------------
Block: 00024 Lot: 01098                 Control No. 003669746-01
Book Type -- Lis Pendens - Docket No: 0999   Index # 850253-17
Judgment Type: LIS PENDENS              Effective Date: 11/08/2017
Court: Supreme Court                    Expiration Date: 11/08/2020
                                        Docket Date:11/08/2017
                                        Date Received:11/10/2017
Debtor Info:
LM REALTY 23H LLC
40       BROAD ST UNIT 23H
NY NY              10004-

Creditor Info:
40 BROAD STREET PORTFOLIO LLC


Amount: $0.00

COM:11/08/2017-NATURE OF ACTION: FORECLOSURE OF A MORTGAGE
       DOC# 999-21            OTHER NAMED DEFENDANTS SEE COMPLAINT
-----------------------------------------------------------------------
Block: 00024 Lot: 01101                 Control No. 003669744-01
Book Type -- Lis Pendens - Docket No: 0999   Index # 850254-17
Judgment Type: LIS PENDENS              Effective Date: 11/08/2017
Court: Supreme Court                    Expiration Date: 11/08/2020
                                        Docket Date:11/08/2017
                                        Date Received:11/10/2017
Debtor Info:
LM REALTY 24C LLC
40       BROAD ST UNIT 24C
NY NY              10004-

Creditor Info:
40 BROAD STREET PORTFOLIO LLC


Amount: $0.00

COM:11/08/2017-NATURE OF ACTION: FORECLOSURE OF A MORTGAGE
       DOC# 999-20            OTHER NAMED DEFENDANTS SEE COMPLAINT
-----------------------------------------------------------------------
Block: 01151 Lot: 01158                 Control No. 003596816-01
Book Type -- Lis Pendens - Docket No: 0106   Index # 152432/17
Judgment Type: LIS PENDENS              Effective Date: 04/24/2017
Court: Supreme Court                    Expiration Date: 04/21/2020
Disposition: Yes-04/09/2018
                                        Docket Date:04/21/2017
                                        Date Received:06/11/2018
Debtor Info:
LM REALTY 31B LLC
10       WEST END AVENUE #31B
NEW YORK NY        10023-

Creditor Info:
BERSHADSKY      , MICHAEL


Amount: $0.00

COM:04/21/2017-OTHER PLAINTIFFS AND DEFENDANTS SEE LIS PENDENCY
    NATURE OF ACTION: FOR SPECIFIC PERFORMANCE OF A CONTRACT OF SALE FOR
    REAL PROPERTY           999-106
COM:04/09/2018-CANCELLED BY
    ATTORNEY STIPULATION. DUE TO CLERK'S ERROR DOCUMENT          NOT
    DOCKETED UNTIL JUNE 7TH, 2018
-----------------------------------------------------------------------
END RETURNS
***********************************************************

PVB - (Parking Violations Bureau - Ending Date 05/25/18)

Search Parameters- CORP:LM Realty 31B

END RETURNS
***********************************************************
```

(Environmental Control Board (Fire and Building) - Ending Date 04/30/18)

Search Parameters- CORP:LM Realty 31B

LMA REALTY MGMT CORP
2910 GRAND CONCOURSE
BRONX, NY 10458
ECB Violation No.: 188019738    Date-01/16

Amt: $300.00
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
LMA REALTY MGMT CORP
2910 GRAND CONCOURSE
BRONX, NY 10458
ECB Violation No.: 189097490    Date-03/16

Amt: $100.00
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
LMA REALTY MGMT CORP
2910 GRAND CONCOURSE
BRONX, NY 10458
ECB Violation No.: 44242941H    Date-01/17

Amt: $300.00
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
LMA REALTY MGMT CORP
2915 GRAND CONCOURSE
BRONX, NY 10468
ECB Violation No.: 197537872    Date-05/18

Amt: $100.00
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
LMB REALTY CORP
184 LAWRENCE AVENUE
BROOKLYN, NY 11230
ECB Violation No.: 11504311N    Date-03/17

Amt: $5,000.00
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
LMB REALTY CORP
184 LAWRENCE AVENUE
BROOKLYN, NY 11230
ECB Violation No.: 11471079J    Date-06/16

Amt: $1,000.00
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
LML REALTY CORP HAZEL GAYLE
124 NEW YORK AVENUE
BROOKLYN, NY 11216
ECB Violation No.: 32075932P    Date-05/16

Amt: $4,000.00
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
LML REALTY INC
345 ROGERS AVENUE
BROOKLYN, NY 11225
ECB Violation No.: 195907021    Date-03/18

Amt: $300.00
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
LML REALTY INC
349 ROGERS AVENUE
BROOKLYN, NY 11225
ECB Violation No.: 40563766L    Date-08/11

Amt: $300.00
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
LML REALTY INC
355 ROGERS AVENUE
BROOKLYN, NY 11225
ECB Violation No.: 190082191    Date-08/16

Amt: $300.00
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
LML REALTY INC

227 SULLIVAN PLACE
BK, NY 11225
ECB Violation No.: 32069059Z        Date-03/11

Amt: $100.00

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LML REALTY INC
227 SULLIVAN PLACE
BK, NY 11225
ECB Violation No.: 32069060X        Date-12/10

Amt: $8,000.00

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LMS REALTY LLC
400 WEST   20 STREET
NEW YORK, NY 10011
ECB Violation No.: 43962271R        Date-05/17

Amt: $350.00

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LMS REALTY LLC
400 WEST   20 STREET
NEW YORK, NY 10011
ECB Violation No.: 42389272N        Date-07/17

Amt: $100.00

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LMS REALTY LLC
400 WEST   20 STREET
NEW YORK, NY 10011
ECB Violation No.: 43360104L        Date-08/16

Amt: $100.00

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LMS REALTY LLC
400 WEST   20 STREET
NEW YORK, NY 10011
ECB Violation No.: 43892618X        Date-03/18

Amt: $300.00

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LMS REALTY LLC
400 WEST   20 STREET
NEW YORK, NY 10011
ECB Violation No.: 197387942        Date-04/18

Amt: $300.00

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LMS REALTY LLC
400 WEST   20 STREET
NEW YORK, NY 10011
ECB Violation No.: 197384267        Date-05/18

Amt: $350.00

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LMS REALTY LLC
106 WEST   73 STREET
NY, NY 10023
ECB Violation No.: 35220759H        Date-08/17

Amt: $250.00

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LMT REALTY CO
9520 SEAVIEW AVENUE
BROOKLYN, NY 11236
ECB Violation No.: 11627295M        Date-03/18

Amt: $600.00

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LMT REALTY LLC
1956 ROCKAWAY PARKWAY
 11236
ECB Violation No.: 11243770J        Date-07/12

Amt: $5,000.00

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LMT REALTY LLC
9520 SEAVIEW AVENUE
  11236
ECB Violation No.: 11230456Z        Date-08/11

Amt: $1,000.00
--------------------------------------------------------------
133-24 41RD LM REALTY INC
133-24 41 ROAD
FLUSHING, NY 11355
ECB Violation No.: 197161470        Date-05/18

Amt: $300.00
--------------------------------------------------------------
END RETURNS
*********************************************************
Uniform Commercial Code from ( 10/01/1988 - 06/11/18 )

Manhattan County
Search Parameters- CORP:LM Realty 31B

END RETURNS
*********************************************************
Federal Tax Liens from ( 01/94 - 06/11/18 )

Manhattan, Bronx, Queens, Kings County
Search Parameters- CORP:LM Realty 31B

END RETURNS
*********************************************************
TAB - (Transit Adjudication Bureau - from 07/14/1998 to 05/18/18)

Search Parameters- CORP:LM Realty 31B

END RETURNS
*********************************************************

Tuesday June 12, 2018

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

HSBC BANK USA, N.A.

                          Plaintiff,

vs.

LM REALTY 31B, LLC AND LARISA
MARKUS et al.

                          Defendants.

-------------------------------------------------------------------X

SUMMONS AND COMPLAINT

-------------------------------------------------------------------X

GROSS POLOWY, LLC
Attorney for Plaintiff
1775 Wehrle Drive, Suite 100
Williamsville, NY 14221

**EXHIBIT G**

**BLANK ROME LLP**
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212) 885-5000
Ira L. Herman
Philip M. Guffy

*Attorneys for Yuri Vladimirovich Rozhkov*
*in his Capacity as Trustee and Foreign*
*Representative for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re:

       **LARISA MARKUS,**

             Debtor in a Foreign Proceeding.
-------------------------------------------------------------x

Chapter 15

Case No. 19-10096 (  )

**LISTS AND STATEMENTS FILED**
**PURSUANT TO BANKRUPTCY RULE 1007(a)(4)**

      Yuri Vladimirovich Rozhkov (the "Foreign Representative"), the financial administrator

and foreign representative of Larisa Markus (the "Debtor" or "Ms. Markus") in Ms. Markus'

pending insolvency proceeding in the Russian Federation, hereby files the following statements and

lists in accordance with Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure of the United

States, which provides:

> In addition to the documents required under § 1515 of the Code, a foreign
> representative filing a petition for recognition under chapter 15 shall file with
> the petition: (A) a corporate ownership statement containing the information
> described in Rule 7007.1; and (B) unless the court orders otherwise, a list
> containing the names and addresses of all persons or bodies authorized to
> administer foreign proceedings of the debtor, all parties to litigation pending
> in the United States in which the debtor is a party at the time of the filing of
> the petition, and all entities against whom provisional relief is being sought
> under § 1519 of the Code.

Fed. R. Bankr. P. 1007(a)(4).

**Corporate Ownership Statement:**

To be provided at a later date, as upon information and belief, the Debtor has interests in no fewer than ten entities. Such interests are to be determined after discovery is obtained by the Foreign Representative regarding the relationship pf the Debtor to such entities.

**Custodian in the Foreign Proceeding Respecting Debtor:**

Yuri Vladimirovich Rozhkov
PO Box 194
Moscow
109147
Russian Federation

**Litigation Parties in the United States:**

The following litigations affecting the Debtor are pending in the United States:

- *40 Broad Street Portfolio, LLC v. LM Realty 20A, LLC et al.*, Case No 850252/2017, pending in the Supreme Court of the State of New York;

- *40 Broad Street Portfolio, LLC v. LM Realty 23H, LLC et al.*, Case No 850253/2017, pending in the Supreme Court of the State of New York;

- *40 Broad Street Portfolio, LLC v. LM Realty 24C, LLC et al.*, Case No 850254/2017, pending in the Supreme Court of the State of New York;

- *10WEA Realty, LLC v. LM Realty 10C, LLC et al.*, Case No 850159/2018, pending in the Supreme Court of the State of New York;

- *HSBC Bank USA, N.A. v. LM Realty 31B, LLC et al.*, Case No 850323/2018, pending in the Supreme Court of the State of New York.

**Entities Against Whom Provisional Relief is Sought Under 11 U.S.C. § 1519:**

As of the date hereof, the Foreign Representative has not filed a motion seeking provisional relief. The Foreign Representative reserves its right to seek provisional relief at a later date.

2

I, Yuri Vladimirovich Rozhkov, hereby declare, pursuant to 28 U.S.C. § 1746, under penalty of

perjury under the laws of the United States of America that the information set forth above is, to the

best of my knowledge, information and belief, complete and correct.

Executed on January 10, 2019

Yuri Vladimirovich Rozhkov
The Secured Foreign
Representative for the Debtor