# In Re:

*LARISA IVANOVNA MARKUS; 19-10096-mg*

*FOREIGN ECONOMIC INDUSTRIAL BANK; 16-13534-mg*

*July 23, 2019*

*eScribers, LLC*

*(973) 406-2250*

*operations@escribers.net*

*www.escribers.net*

*To purchase copies of this transcript, please contact us by phone*



**Min-U-Script® with Word Index**

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   - - - - - - - - - - - - - - - - - - - -x

5   In the Matters of:

6   FOREIGN ECONOMIC INDUSTRIAL BANK          Case No.

7   LIMITED, "VNESHPROMBANK" LTD. AND          16-13534-mg

8   STATE CORPORATION "DEPOSIT INSURANCE

9   AGENCY",

10          Debtor.

11   - - - - - - - - - - - - - - - - - - - -x

12   LARISA IVANOVNA MARKUS AND                Case No.

13   YURI VLADIMIROVICH ROZHKOV,               19-10096-mg

14          Debtor.

15   - - - - - - - - - - - - - - - - - - - -x

16

17              United States Bankruptcy Court

18              One Bowling Green

19              New York, New York

20              July 23, 2019

21              11:01 AM

22

23   B E F O R E:

24   HON. MARTIN GLENN

25   U.S. BANKRUPTCY JUDGE

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

1

2   16-13534-mg   Foreign Economic Industrial Bank Limited

3   Case Management Conference. (CC: Doc. No. 110, 112 - 114)

4

5   19-10096-mg   Larisa Ivanovna Markus and Yuri Vladimirovich

6   Rozhkov

7   Case Management Conference. (CC: Doc. No. 84, 87, 88, 90, 91)

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  Penina Wolicki

21   eScribers, LLC

22   352 Seventh Avenue, Suite #604

23   New York, NY 10001

24   (973)406-2250

25   operations@escribers.net

```
 1
 2   A P P E A R A N C E S:
 3   MARKS & SOKOLOV LLC
 4         Attorneys for Foreign Representatives of
 5         Foreign Economic Industrial Bank and Larisa Markus
 6         1835 Market Street
 7         Suite 1717
 8         Philadelphia, PA 19103
 9
10   BY:   BRUCE S. MARKS, ESQ.
11
12
13   ARCHER, ATTORNEYS AT LAW
14         Attorneys for Foreign Representatives of
15         Foreign Economic Industrial Bank and Larisa Markus
16         1717 Arch Street
17         Suite 3500
18         Philadelphia, PA 19103
19
20   BY:   DOUGLAS G. LENEY, ESQ.
21
22
23
24
25
```

1

2 LAW OFFICE OF VICTOR A. WORMS

3         Attorneys for Debtors Larisa Markus and Bank

4         48 Wall Street

5         New York, NY 10005

6

7 BY:   VICTOR A. WORMS, ESQ.

8

9

10 THE LAW OFFICES OF DANIEL A. SINGER PLLC

11         Attorneys for LM Entities

12         630 Third Avenue

13         18th Floor

14         New York, NY 10017

15

16 BY:   DANIEL A. SINGER, ESQ.

17

18

19 RICHARDS KIBBE & ORBE LLP

20         Attorneys for Richards Kibbe & Orbe LLP

21         200 Liberty Street

22         New York, NY 10281

23

24 BY:   GREGORY GENNADY PLOTKO, ESQ.

25

1

2  ROSENBERG & ESTIS, P.C.

3      Attorneys for LM Entities

4      733 Third Avenue

5      New York, NY 10017

6

7  BY:   HOWARD W. KINGSLEY, ESQ.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              THE COURT:  Foreign Economic Industrial Bank Limited,

3     16-13534, and Larisa Ivanovna Markus, et al., 19-10096.

4         (Pause)

5              THE CLERK:  Good morning, is the CourtCall operator on

6     the line?

7              COURTCALL OPERATOR:  Yes, Madam Clerk.

8              THE CLERK:  Okay, you can connect the parties to

9     listen for 11 o'clock.  Thank you.

10             COURTCALL OPERATOR:  You're welcome.  Madam Clerk?

11             THE CLERK:  Yes.

12             COURTCALL OPERATOR:  They're listen-only?

13             THE CLERK:  Yes.

14             COURTCALL OPERATOR:  Thank you.

15        (Pause)

16             THE COURT:  All right.  Let me have the appearances,

17    first for the foreign representative.

18             MR. MARKS:  Your Honor, This is Bruce Marks.  I

19    represent the Deposit Insurance Agency, which is the foreign

20    representative in the bank case.  And I represent Larisa

21    Markus -- I'm sorry -- I represent Mr. Rozhkov, who is the

22    foreign representative in the Larisa Markus bankruptcy.  And on

23    CourtCall I have Sergey Sokolov, who is the head of our office

24    in Moscow, and I have Nina Kahn.  With me from my firm, I have

25    my paralegal Katia Popova, and then we have new counsel who's

1   working with us today.

2          MR. LENEY:  Good morning, Your Honor.  Douglas Leney

3   from Archer & Greiner.  I filed a -- my office filed a pro hac

4   vice motion last night.  I am not sure whether and to what

5   extent my direct participation today would be necessary, but --

6          THE COURT:  That's fine.

7          MR. LENEY:  -- would ask the Court's indulgence.

8   Thank you, Your Honor.

9          THE COURT:  That's fine.

10          MR. WORMS:  Good morning, Your Honor.  Victor A. Worms

11   for Larisa Markus and also for the bank.

12          MR. SINGER:  Good morning, Your Honor.  Daniel A.

13   Singer for a whole list of entities which I will list in the

14   record.  And in short form, they've often been referred to as

15   the Protax entities and the LM entities.  But I'll list them

16   all now.  It's LM Realty 31B, LLC; LM Realty 27D, LLC; LM

17   Realty 24, LLC; LM Realty 23H, LLC; LM Realty 20A, LLC; LM

18   Realty 18 West, LLC; LM Realty 10C, LLC; LM Property

19   Management; First Integrated Construction; Innovative

20   Construction Group Inc.; Larisa Markus Revocable Trust; the

21   LarMar Foundation -- and those are what's referred to as the LM

22   entities, typically, in this case.

23          And for the Protax entities we have Ilya Bykov; Protax

24   Services Inc.; and Protax Services Consulting.  Now, Mr. Bykov

25   is not an entity, but he's typically been referred to that for

 1   the short form.

 2           THE COURT:  For short-form purposes, I'm just going to

 3   refer to the LM entities, okay?

 4           MR. SINGER:  That is fine, Your Honor.  Just so you

 5   know the reason for the designations, that they're completely

 6   different.  Protax is an accounting firm and services the LM

 7   entities.

 8           THE COURT:  I'm just going to refer to --

 9           MR. SINGER:  No, okay --

10           THE COURT:  -- all of your clients as the LM entities,

11   just for purposes of ease --

12           MR. SINGER:  Understood.

13           THE COURT:  Okay.  All right.

14           So obviously I entered this order scheduling the case

15   management conference on July 15th.

16           MR. PLOTKO:  Sorry, Your Honor.

17           THE COURT:  You've all been fighting letter wars --

18   oh, I'm sorry.  Go ahead.

19           MR. POLTKO:  Sorry, just a couple more appearances

20   here.

21           THE COURT:  Okay, go ahead.

22           MR. POLTKO:  Gregory Plotko on behalf Richards Kibbe &

23   Orbe LLP.

24           THE COURT:  Okay, thank you.

25           MR. KINGSLEY:  And good morning, Your Honor.  Howard

1   Kingsley of Rosenberg & Estis, on behalf of the LM entities,

2   who are seeking to be relieved as counsel.

3           THE COURT:  Okay.  So I entered this scheduling order.

4   You all have been engaged in a variety of letter wars before

5   Judge Vyskocil, motion practice.  I asked for status letters

6   about what was pending.  I assume I've now been told everything

7   that is pending.

8           Let me make it clear, the letter wars are ending now.

9   Let me ask a few questions, at the start.

10          I am looking at Mr. Marks' July 19th letter, item 2,

11  the bank and Markus foreign representatives' letters dated June

12  10, 2019, requesting a discovery conference concerning the

13  failure of the LM entities to comply with the disclosure

14  provisions, et cetera.

15          Mr. Marks' letter indicates that the LM entities

16  haven't complied with an order regarding discovery.  Mr. Marks,

17  do you want to just briefly address that?

18          MR. MARKS:  Your Honor, I would be pleased to do that.

19  And I'd like to thank the Court for having the status

20  conference, because it has been the way -- in this case, the

21  only way we've gotten discovery is by having matters be through

22  the court.  And yesterday, at about midnight, Mr. Singer

23  produced some additional documents, including the bank -- some

24  of the bank statements that we have been looking for.

25          These are bank statements that we have sought since

1   June 10th --

2           THE COURT:  Okay, just tell me --

3           MR. MARKS:  Yes.

4           THE COURT:  -- have you gotten everything that you

5   have requested?

6           MR. MARKS:  No, we have not.

7           THE COURT:  Have you identified to Mr. Singer what you

8   requested that hasn't been produced?

9           MR. MARKS:  Well, it was only produced at midnight

10  last night.

11          THE COURT:  Okay.

12          MR. MARKS:  But it's the same things that have not

13  been produced.  But I'll tell you what, Your Honor, it is, if I

14  may?

15          THE COURT:  Go ahead.

16          MR. MARKS:  And it's a short list.

17          THE COURT:  Go ahead.

18          MR. MARKS:  Number one, the envelopes, the postmarked

19  envelopes, of the checks that were sent after the freezing

20  order was entered.  We're trying to determine where --

21          THE COURT:  I understand what you're trying to

22  determine.  I've read that.  I understand --

23          MR. MARKS:  Yes.

24          THE COURT:  -- you want to see whether --

25          MR. MARKS:  The checks were mailed out --

1       THE COURT:  -- checks were sent before or after a

2   freeze order.

3       MR. MARKS:  Yes.

4       THE COURT:  I --

5       MR. MARKS:  Two, we want to see the check ledger for

6   the LM trust -- if I can use the short term, the Larisa Markus

7   Revocable Trust and 550 Park Avenue, because we want to see the

8   order of the checks.  Same reason.

9       THE COURT:  Okay.

10      MR. MARKS:  Want to see if the checks were --

11      THE COURT:  What else?

12      MR. MARKS:  And three, Your Honor, Judge Vyskocil

13  ordered that they would have to disclose where the funds are.

14  About a million -- about a million-two, okay, went out of the

15  LM Trust and 550 Park.  Some of it went to Protax entities.  We

16  just got those bank statements yesterday.

17      We didn't get the bank -- I'm sorry, excuse me.  I

18  misspoke.  For the Larisa Markus entities.  So we know now what

19  funds are there and what aren't in there.  But there was over,

20  I'd say, 600,000 dollars, that went to some of the Protax

21  entities:  Protax, Inc., Pro Legal Services, we wanted to get

22  the bank statements --

23      THE COURT:  Okay.

24      MR. MARKS:  -- to show if the funds that came from the

25  sale of property are still there.

1        THE COURT:  And let me ask you, Mr. Markus, did you

2    specific -- were you specific in the request for those

3    documents?

4        MR. MARKS:  Yes, we were.

5        THE COURT:  Okay.

6        MR. MARKS:  In the letter to Mr. Singer, after we got

7    the disclosure on May 29th -- the disclosure to the Court

8    didn't say how much money was where.  So we --

9        THE COURT:  I'm just trying to find out --

10       MR. MARKS:  I've been specific.

11       THE COURT:  Okay.

12       MR. MARKS:  I've been specific.

13       THE COURT:  All right.

14       MR. MARKS:  And I could tell Your Honor which entities

15   they are, if that's helpful.  And I have it right here.  And

16   this is in our letter to the Court.  I actually --

17       THE COURT:  I --

18       MR. MARKS:  -- it's my June 10th letter.  In my June

19   10th letter, we listed the entities right here, Your Honor.

20   This is ECF 60 in the Markus case.  And I'm looking at page 2

21   of 3 of my letter.  And we were looking for the account

22   statements, Your Honor.  ECF 60.  That's my May 31st letter.

23       For Pro Legal International, 93,000; Protax, 226,000;

24   Protax, 20,000; Protax 24,500; Protax 60,000; Protax 60,000.

25       We want to know if those funds are still in -- another

FOREIGN ECONOMIC INDUSTRIAL BANK; LARISA MARKUS          13

1   8,000 for Protax, another 120,000 for Protax, another 20,000

2   for Protax.  We want to know if those funds are still in the

3   Protax Legal bank account.  We want to know whether those funds

4   are still in the Protax account.  Because any of those funds

5   that were still in the account as of May 29th, were ordered

6   frozen.

7          THE COURT:  Okay.  All right.  Anything else that

8   you're -- okay.

9          Mr. Singer?

10         MR. SINGER:  Thank you, Your Honor.  Now, I believe I

11  placed most of the --

12         THE COURT:  Go up to the podium.

13         MR. SINGER:  Oh, absolutely.

14         THE COURT:  Would you, please?

15         And all I want you to address for now is the

16  discovery.

17         MR. SINGER:  And I believe most of these items have

18  already been addressed in my letters by --

19         THE COURT:  I don't want to know about whether you've

20  addressed them by letter.

21         MR. SINGER:  Um-hum.

22         THE COURT:  Have you produced the documents that Mr.

23  Marks has identified and as repeated on the record now?

24         MR. SINGER:  I will say this, I'm going to answer very

25  directly to Your Honor.  We produced all the statements that

1   showed where the proceeds were going.  So we're just --

2          THE COURT:  Mr. Marks -- excuse me, Mr. Singer, I want

3   to know whether you have produced any bank records or other

4   documents that show where the funds were transferred to, where

5   they are now.  That's really a yes or a no?

6          MR. SINGER:  Yes, I have.  And I'll explain.

7          THE COURT:  All documents?  You're not -- there are no

8   documents in your possession, custody, or control -- which also

9   includes your clients -- that have been requested by Mr. Marks,

10  that have not yet been produced with respect to the flow of

11  funds?

12         MR. SINGER:  I have to -- sorry.

13         THE COURT:  Go ahead.

14         MR. SINGER:  I have to explain that a little bit, just

15  so I can be very clear with the Court.  What happened with

16  Judge Vyskocil, when we disclosed to her -- if I may have a

17  one-minute leeway, and I will answer your question completely?

18         THE COURT:  Go ahead.

19         MR. SINGER:  Is that the proceeds from the U.K.

20  property were deposited into the LM Revocable Trust account

21  here in the United States.  At the time that the freeze went

22  into effect, some money had already been disbursed from the

23  proceeds.  Some were paid to attorneys.  Some were paid to

24  Protax.  Some were paid to other LM entities.

25         What Mr. Marks has, at this point, is all the

1  statements pertaining to all the -- what I've referred to as

2  the LM entities.  What he doesn't have, okay, and which we are

3  going to adamantly argue, and if necessary, make motion

4  practice over, is the Protax bank statements.

5          Protax services many, many different clients.  They

6  have never once requested, in any subpoena -- and I would have

7  moved to quash if they had done so -- okay -- Protax account

8  statements.  There's never been an order to produce Protax

9  account statements.  And if there had been such an order, I

10  would have moved for the appropriate relief, because that is

11  completely separate from the LM entities.

12          Regarding all the other entities, I will explain to

13  Your Honor, I -- they now have -- they have all the statements,

14  both from May -- when I produced the discovery that was due on

15  June 19th, I produced all the statements for the non-Protax LM

16  entities that were available at that time.  Okay?  They were

17  all given to them.

18          I then -- new statements became available.  And

19  unfortunately I was delayed in Toronto, as I explained to their

20  colleague, so I had to -- I did email it late last night.  I

21  was supposed to get back Sunday evening; I got back midday on

22  Monday.  Completely out of my control, because of weather,

23  apparently.  And so everything that's available, they have been

24  given.

25          There is four accounts, which at the end of this

1  month, they should be getting new account statements from my

2  client.  I think it is the LM Revocable Trust comes due

3  around -- my client said, around July 28th.  And the same thing

4  with and account called 551 Park Avenue.  When I get those

5  account statements, I will forward it to him.  So yes --

6          THE COURT:  Let me ask -- let me drill down a little

7  bit.

8          MR. SINGER:  Yeah.  Yeah.

9          THE COURT:  Are there Protax statements that include

10  information about any of the entities that Mr. Marks has asked

11  about but also include information about unrelated entities?

12  Because you talked about Protax has lots of other clients, and

13  there's lots of other information.  That gets handled with

14  redaction.  But you can't withhold documents that -- don't

15  interrupt -- you can't withhold documents that have information

16  about any of the entities involved in the litigation, because

17  the documents contain other things.  You deal with it with

18  redaction.

19          Do you know whether there are statements that have not

20  been produced because you say they include information about

21  other unrelated clients, but also include information that Mr.

22  Marks has requested.

23          MR. SINGER:  I want to be very clear about this, Your

24  Honor.  We have had a series of subpoenas throughout this case,

25  never once, one occasion whatsoever, have they ever requested

1  Protax bank statements.  The reason why they knew they didn't

2  do that because it's way off base, in my opinion.  They have

3  never ever requested --

4          THE COURT:  Could you answer my question?

5          MR. SINGER:  It --

6          THE COURT:  Are there Protax statements that include

7  information about any of the parties involved in this

8  litigation, but also include information about other unrelated

9  entities --

10         MR. SINGER:  Abs --

11         THE COURT:  Let me finish.

12         MR. SINGER:  Sorry.

13         THE COURT:  Because as I said before, that gets dealt

14 with regularly through redacting information about unrelated

15 clients.

16         Do you know, as you stand there now, whether there are

17 statements that you have not produced that include -- you

18 didn't produce because they include information about other

19 entities?  That's a yes or a no.

20         MR. SINGER:  I have not produced any Protax

21 statements, and yes, they do contain information about many

22 other entities, absolutely.

23         THE COURT:  And they do contain inform -- you know

24 that there are statements that you have not produced that

25 include information about the LM entities --

1          MR. SINGER:  Well, they would -- they would --

2          THE COURT:  -- yes or no?

3          MR. SINGER:  I mean, because -- yeah.  Because on

4   the -- on the LM Revocable Trust, it says that it gets

5   deposited into the -- it says it.  I mean, it says the money to

6   Protax.  So there's no --

7          THE COURT:  Okay.  When are you going to be able to

8   produce all statements from Protax redacted to exclude

9   unrelated information that include information about the LM

10  entities?

11         MR. SINGER:  I would -- well, I would want to -- I

12  would like to reserve the right to make a motion practice (sic)

13  about that.

14         THE COURT:  No, I deal with discovery just the way I'm

15  dealing with them now.  I don't have motion practice.  You read

16  my chambers rules and you'll see that.  I deal with discovery

17  issues very, very promptly.

18         What you've told me now is that there are Protax

19  documents that contain information about the LM entities but

20  also contain information about lots of unrelated clients.  And

21  what I'm telling you is, the way that is being dealt with is my

22  order on the record -- I'm so ordering the transcript -- that

23  you produce in redacted form all statements that include

24  information -- that have not been produced, that include

25  information about the LM entities.  And you will certify that

1    the only thing that has been redacted is information about

2    unrelated clients.

3            Why shouldn't -- I'm going to give you a chance to

4    tell me why shouldn't I order what I've just said?

5            MR. SINGER:  Because it's I -- in my opinion, Your

6    Honor, it's overly -- it's overly intrusive --

7            THE COURT:  Okay.

8            MR. SINGER:  -- okay -- into their -- if I may

9    finish -- I'm sorry, Your Honor.

10           THE COURT:  No, go ahead.

11           MR. SINGER:  Okay.  It's overly intrusive.  There -- I

12   have not seen the Protax bank statements, so I can't tell you

13   what exactly is in there, but there may be transactions which

14   involve more than one client -- it's possible -- and it would

15   be violating the right of a client.

16           THE COURT:  Oh, I understand.  And I'm telling you --

17           MR. SINGER:  Right.

18           THE COURT:  -- that you can redact the statements to

19   remove the information about unrelated entities.  What you

20   can't do is refuse to produce documents that relate to the

21   parties in this litigation, because it happens to be included

22   in documents that includes information about other entities.

23           MR. SINGER:  So just so I'm clear, Your Honor, because

24   I want to make sure I'm going to --

25           THE COURT:  But you're going to certify -- you're

1   going to put in a statement under oath, that the only thing

2   that has been redacted is information about entities other --

3   unrelated entities -- I'll use that as a shorthand term.

4   You'll work out with Mr. Marks --

5           MR. SINGER:  Okay, I'll --

6           THE COURT:  -- how that's going to be done.

7           I want -- there has to -- if you're going to redact

8   documents, there is going to be a certification that any

9   information relating to the LM entities -- and I'm short-

10  handing it -- has been produced.

11          MR. SINGER:  Okay.  Because of this -- I would want

12  this anyway, but particularly because I'm going to be

13  certifying it as an attorney, I want to make sure I'm a hundred

14  percent clear.

15          THE COURT:  Order the transcript.  I'm being crystal

16  clear here.

17          MR. SINGER:  Oh, I'm sorry, Your Honor.  I just wanted

18  to add a question.  But --

19          THE COURT:  Go ahead.

20          MR. SINGER:  So I basically -- from my

21  understanding -- so if it's, for example -- the reason this is

22  becoming an immediate issue is because the -- there were

23  deposits from the LM Revocable Trust account into Protax.  And

24  obviously those are the -- those are the types of transactions

25  that we're looking for, because it involves an LM entity that

1   has transactions in or out of Protax.  I just want to make sure

2   I'm understanding Your Honor's order.

3          THE COURT:  Mr. Marks, do you want to address that?

4          MR. MARKS:  I do, Judge.

5          THE COURT:  I'm not giving you unrelated -- I'm not

6   giving you information about other clients.

7          MR. MARKS:  Your Honor, I have no interest in his --

8          THE COURT:  Okay.

9          MR. MARKS:  -- other clients.  But I have an interest

10  in the bank statements.  And I'd tell Your Honor that I would

11  like to have them produced, if Your Honor would agree.

12          The money flow began on March 29th of 2019 to Pro

13  Legal International, one of their entities.  We would like the

14  bank statements for March, April, May, June, so that we can see

15  what the balances are; because if the --

16          THE COURT:  You're not going to see the balances that

17  relate to other --

18          MR. MARKS:  Well, there's --

19          THE COURT:  -- to their other clients.

20          MR. MARKS:  -- going to be money coming in and out of

21  the account, right, Your Honor?

22          THE COURT:  I don't know.  I haven't seen them.

23          MR. MARKS:  Okay.  But here's the issue.  We're trying

24  to find out -- I don't care, again, about what their -- why the

25  money is going into the account, why the money is going out of

1   the account.  But what I need to know is:  is the money that

2   came from the LM Trust still in the account?

3           So the only way I can know that is to figure out what

4   went in, what went out, and what's left -- if you follow me --

5   so I could trace everything; right, Judge?

6           So if somebody is trying to trace money, and you know

7   the money went into somebody else's account, you get the

8   account statement, you just don't get any of the details as to

9   why the other transactions existed.  That's what I'm trying to

10  figure out, whether any of that money was still in the

11  account -- actually I only need them through -- I really need

12  them through May 29th, because that's when Judge Vyskocil

13  entered her order.

14          THE COURT:  Okay.  Here's what --

15          MR. MARKS:  Does Your Honor understand my concern?

16          THE COURT:  Just stop a second.  Stop.

17          MR. MARKS:  Sorry.

18          THE COURT:  Sit down, please.  You can have a seat.

19          MR. SINGER:  How about the other things about the

20  envelopes?  I wanted to address those.

21          THE COURT:  Well, we'll get to that.

22          MR. SINGER:  Okay, thank you.

23          THE COURT:  Okay.  Mr. Marks and Mr. Singer, with

24  respect to these other Protax accounts for which statements

25  haven't been produced, I want you to try to agree on the form

1  of an order for production.  I will give you until Friday at

2  noon to do that.

3          If you agree, submit it as -- and you can reserve your

4  objections to what I'm ordering, Mr. Singer.  I have no problem

5  about that.  Good luck, frankly.

6          If you can't agree, submit your counter-proposed

7  order.  This is going to get resolved.  We're not going to have

8  another hearing.  I'm just going resolve it.  I'm just telling

9  you it's going to get resolved.

10          I understand Mr. Marks' issue about -- because I

11  certainly litigated cases that involved tracing.  Okay?  And

12  see if you can resolve -- it may be that the balance of the

13  accounts -- they're account statements by month, I assume.  And

14  the balance of the account statements at the end of the month,

15  not indicating whose money it is, I think it probably should be

16  disclosed.  But I want you to see if you can agree on the form

17  of the order with respect to these other statements.

18          They're going to get produced.  There is going to be

19  redaction.  Your client is not going to have to disclose

20  information about other entities.

21          MR. SINGER:  May I say one thing?

22          THE COURT:  Go ahead.

23          MR. SINGER:  Okay.  So one thing -- I want to be

24  clear, now.  I'm going to confirm this with my client.  My

25  understanding that the transactions that you see on the LM

1  Revocable Trust bank accounts to Protax were to pay old bills,

2  all of which -- I know all of which were before May 29th.  So I

3  want to be clear about that.  If there were any transfers that

4  occurred prior to the order, from what I understand -- I will

5  confirm this -- were to go to pay old bills.

6          THE COURT:  Frankly, I don't care whether they're

7  before the freeze order or after the freeze order, because even

8  if they're before the freeze order, there may be issues about

9  avoidance of any transactions.

10          So I'm not drawing a line between before or after the

11  freeze order.  It's certainly relevant to the issue of whether,

12  for example, there was contempt or something like that.  Okay?

13  But in terms of disclosure of information, it's not limited to

14  post-freeze-order.  Clear?

15          MR. SINGER:  I am clear.  Do we have a time frame,

16  though for that?  Just that we will --

17          THE COURT:  Well, you're going to submit the order --

18          MR. SINGER:  Okay.

19          THE COURT:  -- by this Friday.  How much time do you

20  need -- you ought to -- don't wait for the order.  Do you have

21  the documents already?

22          MR. SINGER:  I do not have the documents.

23          THE COURT:  Okay, where's your client?

24          MR. SINGER:  He's in -- he's in New York, as far as I

25  know.

 1          THE COURT:  Okay.

 2          MR. SINGER:  I mean, Protax --

 3          THE COURT:  Well, when you leave here, you'll call

 4  your client --

 5          MR. SINGER:  Sure.

 6          THE COURT:  -- and they better start pulling -- Mr.

 7  Marks has identified, what, three months or four months?

 8          MR. MARKS:  Your Honor, March, April, May, June -- I'm

 9  sorry, March, April, May, June, July.

10          THE COURT:  Five months.  Okay.

11          So their statement for five months.

12          MR. SINGER:  To the extent -- not to go back to -- but

13  July might not be available --

14          THE COURT:  Don't go back.

15          MR. SINGER:  -- but so as soon as they're made

16  available.

17          THE COURT:  Okay.

18          MR. SINGER:  Yeah.  I'll make --

19          THE COURT:  All right.  Okay.

20          MR. SINGER:  -- I will discuss, and I will reserve my

21  rights.

22          THE COURT:  You ought to be able to work this issue

23  out.  What I'm being crystal clear about is you all ought to

24  understand that redaction is the way one deals with production

25  of documents that involve unrelated parties, for example,

1  particularly with things like bank statements that involve

2  transfers and things like that.  Okay.

3          Okay, now let's deal with the next issue.  Go ahead,

4  Mr. Singer.

5          MR. SINGER:  May I go back to the podium now?

6          THE COURT:  Yes, go ahead.  Please.

7          MR. SINGER:  Okay.

8          THE COURT:  So we're talking about the envelopes.  As

9  I understand it, Mr. Marks is trying to determine whether there

10  were transfers after the freeze order.  And so he's asked for

11  production of the envelopes that were -- so what's the story

12  there?

13          MR. SINGER:  First of all -- and I put my position

14  clear in my letter is that I -- my position is those should not

15  be produced.  And let me explain why, very simply.

16          First of all, there was no transfer.  He knows this,

17  because he has all the LM Revocable Trust accounts, and if

18  there was a transfer, the check would have cleared and it would

19  be done.  So this is the line of discovery, as far as I'm

20  concerned, which he's not even entitled to.  It's a waste -- he

21  wants -- this is a waste of everybody's time --

22          THE COURT:  Do you have the envelopes?

23          MR. SINGER:  I have kept the envelope in escrow in my

24  office.  Yes, I have.

25          THE COURT:  Okay, produce the -- I'm ordering that the

1     envelopes be produced.

2          MR. MARKS:  Your Honor, Mr. Plotko has an envelope

3     and -- I'm sorry, Howard, what's your last name?

4          MR. KINGSLEY:  Kingsley.

5          MR. MARKS:  And Mr. Kingsley have envelopes.  We're

6     looking for three envelopes.  But those are the people to whom

7     the checks were mailed.

8          THE COURT:  Okay.  If the envelopes are -- if the

9     envelopes are in the possession, custody, or control of one of

10     the counsel -- when I say possession, custody, or control, it

11     could be at your client, it could be -- if you know that it

12     exists, I'm ordering it produced.  Put that in the order as

13     well.

14          Next issue.  Any other discovery issues?

15          MR. SINGER:  I don't -- I think that's all I had

16     marked down as --

17          THE COURT:  Mr. Marks?

18          MR. MARKS:  One.  And again, it's a simple one.  We'd

19     like to have the check register for the LM Trust.  That would

20     be for the -- that would be for the month of June.  It would --

21     they would keep a check register, like anybody else.

22          THE COURT:  Mr. Singer?

23          MR. SINGER:  I have -- my objection would be the same.

24     I have no idea if they even have a check register or how

25     their --

1            THE COURT:  Well, I guess you'll find out today, won't

2    you?

3            MR. SINGER:  So for what period, the check register?

4            MR. MARKS:  Your Honor, I'm sorry.  The order was on

5    May 29th.  May 1st through May 31st.

6            THE COURT:  Okay.  Add it to the order.  I'm ordering

7    it produced.

8            Any other discovery issues?

9            MR. MARKS:  Not for --

10           THE COURT:  Any other counsel have any other discovery

11   issues?

12           MR. SINGER:  No, we're having -- there's a meet-and-

13   confer we're having on probably Friday.  We'll --

14           THE COURT:  Say that again?

15           MR. MARKS:  Your Honor, we have an outstanding -- it's

16   not ripe for today, Your Honor.  We have an issue on the

17   ediscovery, whether there's been compliance with the order --

18           THE COURT:  You'll --

19           MR. MARKS:  -- it's not ripe for today.

20           THE COURT:  It's not ripe for today.

21           MR. SINGER:  Not ripe for today.

22           THE COURT:  Look, I'm just telling you all -- and I

23   don't mean to pick on anybody about this, this is how I deal

24   with discovery issues.  Okay?

25           I don't want motions.  If I hear argument, for

1   example -- if there's some nuanced privilege issue, I'll ask

2   for letter briefs on it.  But typically, I listen to counsel

3   and I resolve the discovery disputes.  No motions.  It cuts

4   down the cost and the time.

5          If you can't resolve issues, you call chambers and you

6   request a telephone conference.  And I will -- you may have

7   been here during the last hearing in Beechwood.  And what I

8   said there is what experience shows is because counsel find out

9   that the discovery disputes are going to be resolved within a

10  day or two, they don't come to me, because they realize it

11  isn't going to be weeks of motion practice for an issue to get

12  resolved.

13         And the last thing I would say in that.  After

14  repeated -- if there are -- this very rarely ever happens now.

15  But if there are repeated instances where I think discovery

16  issues are raised that the parties should have worked out and

17  they don't, I get pretty testy about it.  And I will -- you

18  don't want that.

19         MR. MARKS:  Your Honor, if I might?

20         THE COURT:  Go ahead.

21         MR. MARKS:  I don't want you to get testy, Judge, but

22  there were two issues that -- there are discovery issues that

23  are out there that we didn't initiate.

24         And on the letters, by the way, Judge Vyskocil --

25         THE COURT:  Just tell me what it is.

1     MR. MARKS:  Okay.  We served a subpoena on Mr. Worms,

2  who purports to represent Ms. Markus.  And he filed a motion to

3  quash.

4     THE COURT:  What is -- what is it you want from -- is

5  it a document subpoena or deposition subpoena?

6     MR. MARKS:  Document subpoena.

7     THE COURT:  What is the documents you asked for?

8     MR. MARKS:  Well, one is we wanted the documents that

9  evidenced his authority to represent Ms. Markus.  Number two,

10  we want the documents that would indicate whether Ms. Markus

11  received the notice that was sent to her, of the Chapter 15

12  proceeding.  We wanted any powers of attorney that Ms. Markus

13  executed that relate to this Chapter 15 proceeding here,

14  because we know she executed one that related to --

15     THE COURT:  This is on the issue of the motion to

16  vacate recognition?

17     MR. MARKS:  That is correct.  For whatever reason, Ms.

18  Markus has chosen to appear in this case.  So we asked for all

19  documents that relate to her --

20     THE COURT:  Okay.

21     MR. MARKS:  -- assets.

22     THE COURT:  Let me hear from Mr. Worms.

23     MR. MARKS:  So Your Honor, we didn't reach out to

24  chambers on it --

25     THE COURT:  I'm just asking Mr. Worms now to --

1          MR. MARKS:  But he filed a motion to quash.

2          THE COURT:  Yeah.  What's the basis for the motion to

3     quash, Mr. Worms?

4          MR. WORMS:  Judge, I think Mr. Marks hasn't correctly

5     represented to the Court what this document request is, what

6     the subpoena is specifically.  It's actually quite voluminous

7     in its request.  It seeks documents from Ms. Markus, who he

8     well knows, is in a prison in Russia someplace.

9          THE COURT:  Right.

10         MR. WORMS:  I mean, the detail and the extent of what

11    he's seeking goes beyond the pale of information that would

12    help --

13         THE COURT:  Mr. Worms, let me just stop you there,

14    because as you just articulated it, I've heard that same

15    argument for years, and it gets no traction from me.  Okay?

16         So be specific about -- let me ask you this.  Have you

17    met and conferred with Mr. Marks to address, document-by-

18    document, what is included within his request?  Because just as

19    I've indicated, I deal with discovery disputes in this very

20    expeditious fashion, I don't need motions to quash subpoenas

21    when you have a discovery dispute.

22         Mr. Marks has asked for discovery from you of certain

23    documents.  You meet and confer and you endeavor to resolve it.

24    Document requests should be as specific as they possibly can

25    be.  And Mr. Marks was fairly specific in identifying for me

1   what he's asked for.  Perhaps his request is broader, but that

2   usually gets worked out in the meet-and-confer between counsel.

3          I will agree, I have this; I will give you that; I

4   can't -- I don't understand what you're asking for in this; can

5   you refine it further.  That's how discovery disputes generally

6   get worked out and don't have to come to me.

7          I think in twelve-and-a-half years I've only quashed

8   one subpoena for discovery, okay, when its:  they're asking for

9   too much; it's too burdensome; she's in jail.  Okay.  I'm

10  telling this -- you were up at the microphone, and I said it to

11  you, but it's for the benefit of all of you in going forward.

12         But go ahead, Mr. Worms.

13         MR. WORMS:  Judge, I don't think you can address the

14  issue of the motion to quash or the subpoena separate from the

15  motion to vacate the recognition order, because the recognition

16  order is the predicate for all these orders, including

17  specifically, the subpoena.

18         And I think if the Court takes a look at --

19         THE COURT:  Mr. Worms, I overrule that objection.  I

20  will deal with the issue about vacating recognition.  The

21  issue, as I understand it, about vacating recognition, is

22  whether proper service was done on your client or not.  What

23  Mr. Marks has asked for, it seems to me, are documents --

24  discovery that go directly to the issue of whether recognition

25  was proper, whether recognition should be vacated.

1       When I have -- I'll just tell you, when I have matters

2   pending before me -- people say, we have a motion to dismiss

3   pending, Your Honor.  And I say that's nice, but discovery is

4   going forward.

5       So I'm overruling -- look, Mr. Worms, I'm just telling

6   you now, you meet and -- before you leave here today, you meet

7   and confer with Mr. Marks.  You seek to resolve -- he's been

8   very specific to me, at least, about what documents he wants.

9   They all seem to have a direct bearing on the motion to vacate

10  recognition.  And --

11      MR. WORMS:  I'm not quite sure if that's true --

12      THE COURT:  Stop.  Don't interrupt me.  It goes to all

13  of you.  When I'm speaking, don't interrupt.

14      I expect -- Mr. Marks, I expect from you and Mr.

15  Worms, a status letter by this Friday at noon as to the status

16  of the issues about the requests for production from Mr. Worms.

17  Okay?  And I will -- if you want you can state whatever

18  objections you want, Mr. Worms, and I will rule on it without a

19  further hearing, based on the status letters.  Understood?

20      Go ahead, Mr. Marks.

21      MR. MARKS:  I didn't want to interrupt.

22      THE COURT:  Go ahead.

23      MR. MARKS:  There is one other subpoena, Your Honor,

24  that's out there.  We've put a subpoena -- this relates to

25  where he purports to represent the bank.  And he filed a motion

1    to vacate the bank recognition order.  So we served a subpoena

2    on him for any documents, for example, that indicate that he's

3    authorized to represent the bank.

4           He had some purported basis to challenge the

5    recognition.  We asked him for any documents that he has that

6    support the allegations of his motion to vacate.

7           Your Honor, we served the subpoena on Mr. Worms,

8    because there's just no way that he represents the bank.  The

9    bank is in insolvency proceeding in Russia.  The --

10          THE COURT:  He filed an appearance on behalf of the

11   bank?

12          MR. MARKS:  Yes.

13          THE COURT:  Okay.

14          MR. MARKS:  I mean, this is --

15          THE COURT:  Okay.  Address -- I'm just telling you --

16          MR. WORMS:  Judge, if I might --

17          THE COURT:  -- to stop --

18          MR. MARKS:  We'll do the same process.

19          THE COURT:  -- meet and confer.  I want the letter by

20   Friday at noon.  Go ahead, Mr. Worms.

21          MR. WORMS:  I was just going to let the Court know

22   that in my letter of Friday, July 19th, I indicated I would be

23   making a motion to quash that subpoena, which I did do this

24   morning, Your Honor.

25          So I'm happy to meet with Mr. Marks and to confer with

1  him.  But I --

2          THE COURT:  I just told you how I deal -- I don't have

3  hearings on motions to quash subpoenas.  We deal with it the

4  way I'm dealing with you all now.  It's a discovery dispute.

5  You meet and confer.  You address the specific document

6  requests.

7          I'm telling you now that you are not going to delay

8  discovery by saying I have a motion pending to vacate

9  recognition.  That isn't happening.  Okay?

10          So it seems to me that the documents Mr. Marks has

11  requested go to the issues that are relevant to the motions to

12  vacate recognition, and therefore, you're going to produce them

13  unless you have some other basis for saying I can't, I won't,

14  et cetera.

15          MR. WORMS:  No, Judge.  Let me just address that point

16  that you just made -- this last point.  The documents he

17  requests are not entirely related to recognition.  It goes well

18  beyond the scope of recognition.  And I will, in my letter to

19  you on Friday, Judge, address those issues.

20          THE COURT:  Look, I'm telling you right now, I don't

21  want to hear -- the scope of discovery is broader than the

22  precise issues in the litigation or on recognition.  Unless you

23  have a good-faith basis to assert privilege, attorney-client

24  privilege, you're going to produce the documents.  I'm telling

25  you in the clearest terms, and I don't want to have to tell you

1   again, after getting letters on this, that you're not producing

2   the documents because you think they're overbroad or it's not

3   specifically limited to the issues on the motion to vacate

4   recognition.

5        You will produce all non-privileged documents that

6   have been requested.  Do you understand that, Mr. Worms?

7        MR. WORMS:  Judge, I do understand.  I was just trying

8   to bring to the Court's attention a statement that was not

9   entirely correct.  And that was specifically that these

10  documents are well beyond the scope of the recognition issue,

11  Judge.

12       THE COURT:  All right.

13       MR. WORMS:  That's all I --

14       THE COURT:  And I'm telling you that whether they're

15  beyond the scope of the recognition issue, if they -- unless

16  they are -- you have a good-faith basis to allege attorney-

17  client privilege, you're going to produce them.

18       MR. WORMS:  Okay, Judge.

19       THE COURT:  Okay.  Has that resolved all of the

20  discovery issues for today?

21       Mr. Worms' letter of July 19th, in the penultimate

22  paragraph, indicates that on July 15, 2019, counsel for his

23  clients wrote to the Court requesting that both cases be

24  referred to mediation in an effort to facilitate a settlement

25  of both cases.

1         Have counsel discussed the request for mediation?

2         MR. WORMS:  Your Honor, I wrote to Mr. Marks several

3    emails last week indicating a strong interest on our part to

4    mediate as a part of a process to try to settle these cases.

5         He expressed, I would say, reluctance to mediate.  I

6    think, Judge, given all the issues here in this case, it would

7    not only serve judicial economy, but I think it would

8    facilitate a settlement of this case, Judge.

9         So I reaffirm --

10        THE COURT:  Okay, you've asked.  Let me hear, Mr.

11   Marks, what's your position about mediation?

12        MR. MARKS:  Your Honor, we're not -- we're not

13   interested in his proposal, which was to stay everything in

14   order to mediate.

15        THE COURT:  Okay, I --

16        MR. MARKS:  But particularly, we're not interested in

17   mediating with Mr. Worms, for two reasons.  One is, we doubt

18   that he really represents Ms. Markus.  She's in prison in

19   Russia.  She has attorneys in Russia.  This is -- at the end of

20   the day, any resolution with Ms. Markus would need to be likely

21   a global resolution.  If her attorneys in Russia who actually

22   do represent her --

23        THE COURT:  May I ask you this?  Has he represented to

24   you that he does represent her?

25        MR. MARKS:  Well, yeah, he filed a -- we asked him --

1  the subpoenas we asked him for the evidence that he has that

2  represents Ms. Markus.  He didn't --

3          THE COURT:  He's representing to the Court that he

4  represents -- he's filed an appearance in --

5          MR. MARKS:  I --

6          THE COURT:  -- and he's represented to the Court that

7  he's representing her.

8          MR. MARKS:  I understand that.  We're trying to

9  understand how that -- but Your Honor, in terms of --

10          THE COURT:  Let's get over that.

11          MR. MARKS:  Okay.

12          THE COURT:  What's your position on mediation?

13          MR. MARKS:  For Ms. Markus, Your Honor, there's no

14  reason to mediate through Mr. Worms for Ms. Markus.  She's a

15  Russian in prison with Russian attorneys who handled her guilty

16  plea of taking the two billion dollars.  If there's going to be

17  a discussion with Ms. Markus, it will have to be in Russia,

18  with her attorneys.

19          THE COURT:  You haven't given me a good reason for not

20  directing mediation, because mediation works when you get

21  everybody in the room together.

22          MR. MARKS:  The only room we could get Ms. Markus in,

23  Your Honor, is in Russia.

24          What we would do -- if Mr. Worms says he's going to go

25  to Russia and he wants to do something in Russia with his

1    client and with the two foreign representatives who are in

2    Russia, then that would be something I would take instruction

3    on.  But a mediation with him on behalf of Ms. Markus, in our

4    opinion, doesn't make sense.

5            THE COURT:  Why not?

6            MR. MARKS:  Because there's a -- there are global

7    issues with which her counsel in Russia are familiar with --

8            THE COURT:  How do you resolve the global issues if

9    her -- she isn't getting out of prison to go to a mediation.

10           MR. MARKS:  Well, as --

11           THE COURT:  How do you -- how do you resolve the

12   global issues without her representative participating in the

13   mediation?  You may discover it was a waste of time and that'll

14   be the end of it.  But you haven't persuaded me why mediation

15   doesn't make sense?

16           MR. MARKS:  Because we -- the people, Your Honor, who

17   would need to participate in that mediation would be the people

18   who had knowledge of Ms. Markus' worldwide financial concerns.

19   And with all due respect, I don't think it's Mr. Worms.  He's

20   had no communications with her.  We don't believe he's had any

21   communications with her Russian lawyers or any other

22   representative of somebody who's associated with Ms. Markus,

23   other than perhaps Mr. Bykov, who might have been the person

24   who -- well, we're pretty certain that it was Mr. Bykov who was

25   the person who paid him the money.  That's the issue on Ms.

 1  Markus.  We don't think he's the right person.

 2           I mean, and on the Bank, Your Honor, I mean, it's a

 3  little crazy.

 4           THE COURT:  Why?

 5           MR. MARKS:  We represent the bank.  He doesn't.  The

 6  bank -- how could we -- the bank is -- the bank is in

 7  insolvency proceeding, Your Honor, in Russia.  The bank is

 8  controlled by the Deposit Insurance Agency.  The Deposit

 9  Insurance Agency has engaged our firm to represent the bank.

10           With all due respect, Your Honor, there is no

11  conceivable way that Mr. Worms could represent the bank.  And

12  then, how could we possibly have a mediation where one of her

13  major creditors is the bank represented by Mr. Worms, with her?

14  I mean, how could that -- it makes -- how could he possibly be

15  representing the bank whose interests are directly adverse to

16  Ms. Markus, in a mediation, where we're trying to find out what

17  happened to the two billion dollars that she pled that she took

18  from the bank?

19           So with all due respect, it just doesn't make sense to

20  do this through Mr. Worms.  Somebody -- Your Honor, maybe --

21  there is no -- with all due respect, Judge, there's no way he

22  could represent the bank.

23           THE COURT:  You know, about three decades ago --

24           MR. MARKS:  Yeah.

25           THE COURT:  -- I remember being told by a senior

1  partner in the firm that I was practicing, never start an

2  argument "with all due respect, Judge".

3            MR. MARKS:  Okay.  I didn't mean with due respect to

4  Your Honor.  It's with all due respect to Mr. Worms, we don't

5  see any way that he could represent a bank that's in insolvency

6  that's controlled by the Deposit Insurance Agency.

7            THE COURT:  All right.

8            MR. MARKS:  It would be like me coming to a court,

9  okay, as a debtor of a bank that's controlled by the FDIC --

10           THE COURT:  Let me ask you a question, Mr. Marks.  Can

11  this matter be globally resolved through a settlement?

12           MR. MARKS:  Globally?  Yes.  I don't know, Your Honor,

13  because I'm only right now responsible for trying to recover

14  the assets in the United States.  But what I would say, Your

15  Honor, it's premature to have a mediation until two things

16  happen.

17           One is that we get the electronic discovery that we've

18  been seeking and should have been produced pursuant to the

19  orders at the May 29th hearing, and it hasn't been produced

20  yet.  And number two, we want to take a deposition of Mr.

21  Bykov.

22           Once we've done those two things, once we've got the

23  electronic discovery and we have the Rule -- whatever it is --

24  2002, 2004, I forget the nomenclature in the bankruptcy -- then

25  we'd be in a position.

1              I mean --

2              THE COURT:  So let me ask this.

3              MR. MARKS:  Yeah.

4              THE COURT:  If -- this is a Chapter 15 -- two Chapter

5     15 cases.

6              MR. MARKS:  That's right.

7              THE COURT:  And this Court's authority only extends to

8     property in the United States.  Can't there be a resolution of

9     the Chapter 15 case that deals with the property in the United

10    States that leaves -- go and litigate whatever else in the

11    world you want to do, but on my watch, I deal with property in

12    the United States.

13             So I hear you about wanting to get discovery so that

14    you're all on a level playing field about what is the property

15    in the United States, who was it transferred, when was it

16    transferred, and can avoidance claims or whatever be brought.

17    But do you agree that it ought -- it should be possible to have

18    a resolution of these Chapter 15 cases by dealing with the

19    claims to property in the United States?

20             MR. MARKS:  Not exactly.  And if I could tell --

21             THE COURT:  Tell my why.

22             MR. MARKS:  -- tell Your Honor why.  And this

23    actually, the issue came up with Judge Vyskocil in terms of the

24    breadth of discovery.  We're getting discovery here in the

25    United States not just to discover assets in the United States

1  but to discover assets that might be outside the United

2  States.

3          For example, we're taking discovery of banks to find

4  where money has been wired.  Well, we may learn -- and we did,

5  for example, that money was wired to companies in Nevis, which

6  we now believe were controlled by Ms. Markus.

7          THE COURT:  Wired from the United States?

8          MR. MARKS:  Through the United States.

9          THE COURT:  Okay.

10          MR. MARKS:  Because, I mean, you put the JP --

11          THE COURT:  Well, the new Madoff decision from the

12  Second Circuit would suggest if there were transfers from the

13  United States even to foreign countries that it might be

14  recoverable under 548, for example.

15          MR. MARKS:  But here --

16          THE COURT:  Look.  We're not going to go further on

17  this issue today.

18          MR. MARKS:  I just wanted to, Judge --

19          THE COURT:  I'm not particularly -- you haven't

20  persuaded me that -- stop.  You haven't persuaded me that

21  mediation shouldn't take place to try to resolve the issues

22  regarding property in the United States.  I agree that you need

23  to be able to get this discovery that you -- let's address

24  the -- what's the status of the request for electronic

25  discoveries?

1         MR. MARKS:  May I just add --

2         THE COURT:  No, just answer my question about that.  I

3    want to know about the electronic discovery.

4         MR. MARKS:  We got an email from Mr. Singer a couple

5    of weeks ago.  We asked him where we are in the electronic

6    discovery, because there were not very many emails and no text

7    messages produced.

8         He said that they had done certain searches, okay, and

9    the searches come up with "too many hits", and therefore they

10   aborted them.

11        THE COURT:  May I ask, did you exchange search terms?

12        MR. MARKS: So after that we exchanged search terms.

13   And we provided our search terms, and we had questions to him,

14   because it didn't look like they were searching all the -- and

15   we asked to have a meet and confer.  That was supposed to

16   happen yesterday, so that we would be able to update the Court

17   today.

18        Mr. Singer had travel problems.  We appreciate that.

19        THE COURT:  Right.

20        MR. MARKS:  So we're going to have the meet and

21   confer -- when?

22        MR. SINGER:  Friday is fine.  Friday morning I had

23   said to you in the email.

24        MR. MARKS:  So it's all fair and good.

25        THE COURT:  Okay.

1          MR. MARKS:  Your Honor, I just wanted to just say one

2    thing.

3          THE COURT:  Go ahead.

4          MR. MARKS:  The problem with when you're talking about

5    settling the dispute over the property in the United States,

6    what Mr. Bykov may say, well, I want a global release in order

7    to do that, and so that makes the settlement in the United

8    States a little more complicated.

9          THE COURT:  You're speculating.

10          MR. MARKS:  Well, if I were his attorney I would.

11          THE COURT:  Well, look, you're speculating.

12          MR. MARKS:  But you're right.

13          THE COURT:  You know, I've heard lots of reasons why

14    people don't want to discuss settlement.

15          MR. MARKS:  But if Your Honor wants to suggest a

16    mediation that would take place sometime in September, after we

17    can complete the electronic discovery, we can take Mr. Bykov's

18    deposition.  To me that would be sensible.  And if it were to

19    take place in Moscow, it would be even more sensible.

20          THE COURT:  Have you noticed the deposition?

21          MR. MARKS:  Not yet, but we can do that, Judge.

22    That's easy to do.

23          We could schedule it for late August.  We could

24    schedule it for early September.  It depends on counsel's

25    schedule.

FOREIGN ECONOMIC INDUSTRIAL BANK; LARISA MARKUS         46

1          MR. SINGER:  Your Honor, may I respond to some of the

2    things that have been said?

3          THE COURT:  Go ahead.  Go ahead.

4          MR. SINGER:  Okay.

5          THE COURT:  Mr. Singer.

6          MR. SINGER:  First of all, without going into the

7    substance, Mr. Marks is very well aware that there are

8    settlement discussions going on on a global level, which is

9    exactly why it would make sense to do mediation here to

10   coordinate those efforts.

11         As far as discovery goes, we have produced over 25,000

12   pages of documents.  There is simply no situation where they

13   don't know where the property is when it was transferred, et

14   cetera.

15         I don't want to waste the Court's time on this, so

16   I'll have a meet and confer with his office on Friday, but one

17   of the issues is they've never provided me with search terms.

18   So what I did in the email, as per the Court's order, is I had

19   my --

20         THE COURT:  Just stop.

21         MR. SINGER:  Yes.

22         THE COURT:  Just stop.

23         MR. SINGER:  Yes.

24         THE COURT:  You're going to have a meet-and-confer on

25   Friday.

1         MR. SINGER:  Sure.  Sure.

2         THE COURT:  The way electronic discovery typically

3    gets resolved, at least on an interim basis, is to agree on a

4    series of search terms.  I don't know how many computers have

5    to be searched.  I don't know whether they're tape backup

6    drives, whether they're hard drives, what the status is.  I'm

7    not going to get -- I don't want to hear about it today, okay?

8         But I just know how electronic discovery typically

9    gets handled, and you're going to endeavor to do that at a meet

10   and confer.

11        MR. SINGER:  And if we can't, then we will call the

12   Court for a conference, I believe you had said, correct?

13        THE COURT:  You will.

14        MR. SINGER:  Okay.  Thank you.

15        THE COURT:  Okay.  I was going to set a date for a

16   hearing on the pending motions to vacate recognition, but I'm

17   not going to do that until after these discovery issues that I

18   addressed today, after the discovery is produced.

19        And I want updated status reports, Mr. Marks, about --

20   were you going to submit --

21        I've said to work out the terms of an order, and if

22   you can't, you'll let me know why by Friday.  And in that there

23   should be an accompanying letter to indicate when this

24   remaining document production's going to be done.  And then I

25   will set a hearing on --

1          So as I understand it, they'll talk separately about

2    the Richards Kibbe motion to withdraw.  There are two motions

3    pending on vacating recognition of the two foreign proceedings;

4    is that correct?

5          MR. WORMS:  Yes, Your Honor.

6          THE COURT:  Mr. Worms.  Are there any other motions

7    pending?  The discovery disputes, I think I've dealt with that.

8    Are there any other substantive motions that are pending?

9          MR. MARKS:  Yes, there's a real big one.  That's what

10   we call the emergency motion regarding our clients' revoking

11   the LM Trust and taking possession of the over 4.2 million

12   dollars which has now been frozen.  I really would like a

13   hearing on that, because --

14         THE COURT:  Is that fully briefed?

15         MR. MARKS:  It is -- no, Your Honor.  What would

16   happen, Judge, is pursuant to Judge Vyskocil's chamber rules,

17   we submitted an order to show cause and the motion.  She

18   granted the order to show cause, in part, at the May 29th

19   hearing by freezing the proceeds, but in the transition,

20   setting a hearing, a response date, and a hearing date got

21   lost, as it were.

22         THE COURT:  May I -- let me --

23         MR. MARKS:  We --

24         THE COURT:  Just a second.  Here's what I want done.

25   Okay.  You've told me that not all briefing is complete.

1          MR. MARKS:  They haven't responded.

2          THE COURT:  Briefing is not complete.

3          MR. WORMS:  May I?

4          THE COURT:  Confer, and by Friday noon I want -- do it

5     as a separate letter with a proposed briefing schedule on --

6          This was item 1 in your letter, Mr. Marks.  The

7     foreign representatives' emergency motion to enforce the

8     recognition order, et cetera.  You filed your motion, right?

9          MR. MARKS:  It was subsequently filed electronically.

10    It's on the docket.  It's on the docket, Judge.

11         THE COURT:  And so the response to the motion hasn't

12    been filed and your reply.  So the remaining briefing is the

13    response to the motion and the reply.  Okay.

14         By Friday at noon you will, if you can agree on that

15    remaining briefing, you'll put it in the letter.  After seeing

16    that letter, I'll decide on scheduling a hearing on it.  But I

17    want to see the briefs.

18         Just a second, Mr. Singer.  Mr. Singer, are you

19    speaking to the emergency motion?

20         MR. SINGER:  Well, I -- going ahead, absolutely.  May

21    I say?

22         THE COURT:  Go ahead.

23         MR. SINGER:  So I had recently discovered from the

24    client that that account, the LM Revocable Trust account, is

25    about to be closed.  It will be closed on August 25th.  And

1  from what my client explained to me, that there is -- usually

2  you want to take care of that two weeks before, because they

3  start shutting down your ability to address those funds.

4          So what I would like to propose to the Court is in the

5  interim, and absolutely I'm confirming with the Court, because

6  I'm not going to violate any order still standing, to have that

7  money deposited into my escrow account, and then once an

8  appropriate decision is made, obviously, I would proceed

9  accordingly.  But we don't want to -- we would obviously prefer

10  not to have a --

11          THE COURT:  How much money is in the account?

12          MR. SINGER:  I could tell you exactly.  It is one --

13  it looks like it's a little over a million dollars.

14          THE COURT:  Okay.  Talk with Mr. Marks and see if you

15  can agree as to where the funds -- I don't want to hear any

16  more about it now.  See if the two of you can agree on who

17  should hold the funds.

18          Is there any reason, Mr. Marks, the account shouldn't

19  be closed?

20          MR. MARKS:  No, Your Honor.

21          THE COURT:  Okay.  So long as you're sure whether the

22  money is, right?

23          MR. MARKS:  There's two accounts.  There's the 540

24  Park Avenue and the LM Trust account.  Be happy to have both of

25  them closed and the entire 4.2 million dollars paid into

 1   hopefully something that the two of us can agree, or Your Honor

 2   will call.

 3           THE COURT:  Okay.  Mr. Singer?

 4           MR. SINGER:  That's fine.  We'll confer with Mr.

 5   Marks.  The only issue is, Your Honor, if we can't agree,

 6   because of the time I'm going to have to --

 7           MR. MARKS:  By Friday we'll respond to the Court.

 8           THE COURT:  I gave until Friday.

 9           MR. SINGER:  If we don't resolve, we'll have to ask

10   for expedited relief because of the timing of the bank's

11   timelines they've put on to us.

12           THE COURT:  I can't imagine that you won't agree.

13           MR. SINGER:  I think we will.  I think we will.

14           THE COURT:  This is something --

15           MR. SINGER:  Very simple.

16           THE COURT:  I can't imagine you're not going to agree

17   on this.

18           MR. SINGER:  Thank you.

19           THE COURT:  Okay?  And if you agree, put it in a

20   consent order, all right?  Separate from an order on the other

21   discovery issues.  It'll be a separate order that deals with

22   closing of the accounts, transfer into an escrow, et cetera.

23   Okay?

24           MR. SINGER:  That's fine.

25           THE COURT:  All right.  When I see the letters on

1   Friday I will decide about how -- when I look at the remaining

2   briefing schedule, when I see whether there is -- what the

3   discovery schedule is for the remaining documents, I will

4   decide when to schedule the hearing on the motions to vacate

5   recognition.  Is briefing completed on that?

6          MR. MARKS:  Your Honor, if I might?

7          THE COURT:  Go ahead.

8          MR. MARKS:  Briefing is completed on the motion to

9   vacate the Larisa Markus recognition order.  We ask that Your

10  Honor not impose the burden of us having to brief the motion to

11  vacate the bank's order pending a decision whether Mr. Worms is

12  authorized to represent the bank.

13         THE COURT:  No.  You're going to address the -- you're

14  going to address both, okay?  If there's motions to vacate

15  recognition to both, you'll address both.

16         What briefs remain to be done on the bank?

17         MR. MARKS:  There's no hearing date, Your Honor.

18         THE COURT:  I know there's no hearing date, but I'm

19  asking --

20         MR. MARKS:  Well, we haven't filed our response.

21         THE COURT:  When are you going to file the response?

22         MR. MARKS:  We'd want two weeks, Your Honor.

23         THE COURT:  Mr. Worms, you object to the two weeks?

24         MR. WORMS:  Not at all, Judge.

25         THE COURT:  Okay.

1          MR. WORMS:  And any reply --

2          THE COURT:  And I'll give you a week to file a reply.

3          MR. WORMS:  A week.  Yes, Judge.

4          THE COURT:  Okay.  Put that schedule in a letter that

5    you're going to submit to me on Friday.

6          Just a second, Mr. Singer.

7          MR. MARKS:  Your Honor, if I might?  If it turns out

8    that Mr. Worms doesn't have authority --

9          THE COURT:  No.

10         MR. MARKS:  -- to represent the bank?

11         THE COURT:  Look.  He's appeared.  He's counsel of

12   record.  He's filed a motion to vacate recognition.  You're

13   opposing it.  You can oppose it.  He can file a reply.  That's

14   how we're going to proceed.

15         I'm not going to delay further, okay?  You're not

16   going to put off -- I'm just telling you.  Discovery is going

17   to go forward.  This motion practice is going to go forward.

18   So I want to see whatever motions are pending.  By noon Friday

19   I want to see the remaining briefing schedule on anything

20   that's open, okay?  Oppositions and replies.

21         MR. WORMS:  Judge?

22         THE COURT:  Mr. Worms?

23         MR. WORMS:  Just very briefly, Your Honor.  I would

24   like to come back to the issue that seems unresolved so far,

25   which is the possibility for mediation towards settlement of

1  this case.

2          THE COURT:  I'm not going to order mediation yet.  I

3  think-- Mr. Worms, I'm a big fan of mediation.

4          MR. WORMS:  Me too, Judge.

5          THE COURT:  But I also, and I've said this quite often

6  from the bench.  What's important in any mediation is that

7  there be a level playing field on information that's required

8  for each side to intelligently proceed with settlement

9  discussions.

10          It does seem to me that the issue of funds in the

11  United States or that flowed outside the United States that may

12  be subject to an avoidance claim here or elsewhere is required

13  to have a level playing field.  I will be perfectly prepared to

14  direct mediation after there has been discovery of those

15  matters.  Mr. Marks is entitled to have the information, which

16  it absolutely seems to me he needs, to be able to make an

17  intelligent settlement proposal.  If he knows how much -- what

18  are the funds that are here, what funds were transferred out,

19  where did they go, can those be recovered in an adversary

20  proceeding in this court or do his clients have to go elsewhere

21  to do that?  All that information is required, I think, for Mr.

22  Marks to be able to take a position in settlement.  And yes,

23  I'm a fan of mediation, but it's important that he have this

24  basic information.

25          Do you agree, Mr. Marks?

1          MR. MARKS:  I do, Your Honor.

2          THE COURT:  Okay.  Because I --

3          MR. MARKS:  And --

4          THE COURT:  You get the information, and I'm going to

5      push hard about the mediation issue.

6          MR. MARKS:  Your Honor, I do, and there is, we

7      believe, some merit to having discussions with Mr. Bykov.  That

8      we --

9          MR. WORMS:  Was happening.

10          MR. MARKS:  And I was only addressing the issue --

11          THE COURT:  Please go ahead and have your discussions.

12          MR. MARKS:  And we are in the process of that.

13          THE COURT:  Okay.  All right.  Okay.

14          MR. SINGER:  May I -- Your --

15          THE COURT:  Just stop.

16          MR. SINGER:  No, no.  There is something that has to

17      do with everybody, but it has to do -- it's for the Court too,

18      for Court's --

19          There is a pre-trial conference that was scheduled on

20      August 6th relating to something called 40 Broad Street.  I

21      don't see the purpose of that going forward.  I don't even know

22      what it would be going forward for at this point.  So I'd like

23      to be clear that that's not happening.  And I don't know if

24      there's any protest or what the position of other counsel is.

25      I don't even --

1        THE COURT:  It's not on my calendar.

2        MR. MARKS:  Your Honor, we agree.  If it --

3        THE COURT:  It's not on my calendar, Mr. Singer.

4        MR. MARKS:  If it's not on your calendar --

5        MR. SINGER:  It went on your calendar.

6        MR. MARKS:  Your Honor has just solved the problem.

7        THE COURT:  Okay.

8        MR. SINGER:  I have one, and I will be quiet.  One

9   thing.

10        THE COURT:  Go ahead.  So if somehow it didn't get on

11   my calendar but it's there, we're not having it on August 6th.

12        MR. SINGER:  Okay.  One thing and I'll be very quiet.

13        THE COURT:  Okay.

14        MR. SINGER:  There is no reason to delay mediation

15   because of no discovery.  He has gotten --

16        THE COURT:  Okay.  Mr. Singer?

17        MR. SINGER:  -- so much discovery it is --

18        THE COURT:  Mr. Singer?

19        MR. SINGER:  He is --

20        THE COURT:  Mr. Singer?  I'm not ordering mediation

21   today.  All right?  There are issues about discovery that have

22   arisen today.  I've dealt with them all.  We're going to see

23   whether I get the orders on Friday or whether there continues

24   to be a dispute.

25        I am telling you, when there has been what I consider

 1  to be a level playing field, I am going to come down very hard

 2  on mediating it.  But until all that information about how much

 3  money is here in the United States, how much money was here and

 4  got transferred out, where did it go, and Mr. Marks can

 5  evaluate what, if anything, can be done to try and recover it.

 6  Can a settlement be reached that deals exclusively with the

 7  property that's in the United States with all rights reserved

 8  to any claims or defenses as to property that was transferred

 9  out?  That may be a possibility as well.  That's how we're

10  going to proceed.

11          We're adjourned.

12      (Whereupon these proceedings were concluded at 12:07 PM)

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                              I N D E X

3   RULINGS:                                    PAGE   LINE

4   LM entities and Protax entities are          18     22

5   ordered to produce redacted Protax

6   statements with relevant information.

7   The three envelopes requested in             27     11

8   discovery are ordered produced.

9   LM Revocable Trust check register for        28      6

10  May 2019  is ordered produced.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                      C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9    _____

10   Penina Wolicki (CET-569)

11   AAERT Certified Electronic Transcriber

12

13   eScribers

14   352 Seventh Ave., Suite #604

15   New York, NY 10001

16

17   Date:  July 24, 2019

18

19

20

21

22

23

24

25

LARISA IVANOVNA MARKUS; 19-10096-mg
FOREIGN ECONOMIC INDUSTRIAL BANK; 16-13534-mg

July 23, 2019

**A**

**ability (1)**
50:3
**able (6)**
18:7;25:22;43:23;
44:16;54:16,22
**aborted (1)**
44:10
**Abs (1)**
17:10
**absolutely (5)**
13:13;17:22;
49:20;50:5;54:16
**accompanying (1)**
47:23
**accordingly (1)**
50:9
**account (26)**
12:21;13:3,4,5;
14:20;15:7,9;16:1,4,
5;20:23;21:21,25;
22:1,2,7,8,11;23:13,
14,49:24,24;50:7,11,
18,24
**accounting (1)**
8:6
**accounts (7)**
15:25;22:24;
23:13;24:1;26:17;
50:23;51:22
**actually (5)**
12:16;22:11;31:6;
37:21;42:23
**adamantly (1)**
15:3
**add (3)**
20:18;28:6;44:1
**additional (1)**
9:23
**address (15)**
9:17;13:15;21:3;
22:20;31:17;32:13;
34:15;35:5,15,19;
43:23;50:3;52:13,14,
15
**addressed (3)**
13:18,20;47:18
**addressing (1)**
55:10
**adjourned (1)**
57:11
**adversary (1)**
54:19
**adverse (1)**
40:15
**again (4)**
21:24;27:18;
28:14;36:1
**Agency (4)**
6:19;40:8,9;41:6
**ago (2)**

**40:23;44:5**

**agree (19)**
21:11;22:25;23:3,
6,16;32:3;42:17;
43:22;47:3;49:14;
50:15,16;51:1,5,12,
16,19;54:25;56:2
**ahead (24)**
8:18,21;10:15,17;
14:13,18;19:10;
20:19;23:22;26:3,6;
29:20;32:12;33:20,
22;34:20;45:3;46:3,
3;49:20,22;52:7;
55:11;56:10
**al (1)**
6:3
**allegations (1)**
34:6
**allege (1)**
36:16
**apparently (1)**
15:23
**appear (1)**
30:18
**appearance (1)**
34:10;38:4
**appearances (2)**
6:16;8:19
**appeared (1)**
53:11
**appreciate (1)**
44:18
**appropriate (2)**
15:10;50:8
**April (3)**
21:14;25:8,9
**Archer (1)**
7:3
**argue (1)**
15:3
**argument (3)**
28:25;31:15;41:2
**arisen (1)**
56:22
**around (2)**
16:3,3
**articulated (1)**
31:14
**assert (1)**
35:23
**assets (4)**
30:21;41:14;
42:25;43:1
**associated (1)**
39:22
**assume (2)**
9:6;23:13
**attention (1)**
36:8
**attorney (3)**
20:13;30:12;45:10
**attorney- (1)**

**36:16**

**attorney-client (1)**
35:23
**Attorneys (9)**
4:3,11,20;5:3;
14:23;37:19,21;
38:15,18
**August (4)**
45:23;49:25;
55:20;56:11
**authority (3)**
30:9;42:7;53:8
**authorized (2)**
34:3;52:12
**available (5)**
15:16,18,23;25:13,
16
**Avenue (4)**
4:12;5:4;11:7;
16:4;50:24
**avoidance (3)**
24:9;42:16;54:12
**aware (1)**
46:7

**B**

**back (6)**
15:21,21;25:12,
14;26:5;53:24
**backup (1)**
47:5
**balance (2)**
23:12,14
**balances (2)**
21:15,16
**Bank (43)**
4:3;6:2,20;7:11;
9:11,23,24,25;11:16,
17,22;13:3;14:3;
15:4;17:1;19:12;
21:10,14;24:1;26:1;
33:25;34:1,3,8,9,11;
40:2,5,6,6,6,7,9,11,
13,15,18,22;41:5,9;
52:12,16;53:10
**bankruptcy (2)**
6:22;41:24
**banks (1)**
43:3
**bank's (2)**
51:10;52:11
**base (1)**
17:2
**based (1)**
33:19
**basic (1)**
54:24
**basically (1)**
20:20
**basis (6)**
31:2;34:4;35:13,
23;36:16;47:3

**bearing (1)**
33:9
**became (1)**
15:18
**becoming (1)**
20:22
**Beechwood (1)**
29:7
**began (1)**
21:12
**behalf (4)**
8:22;9:1;34:10;
39:3
**bench (1)**
54:6
**benefit (1)**
32:11
**better (1)**
25:6
**beyond (4)**
31:11;35:18;
36:10,15
**big (2)**
48:9;54:3
**billion (2)**
38:16;40:17
**bills (2)**
24:1,5
**bit (2)**
14:14;16:7
**both (7)**
15:14;36:23,25;
50:24;52:14,15,15
**breadth (1)**
42:24
**brief (1)**
52:10
**briefed (1)**
48:14
**briefing (9)**
48:25;49:2,5,12,
15;52:2,5,8;53:19
**briefly (1)**
9:17;53:23
**briefs (3)**
29:2;49:17;52:16
**bring (1)**
36:8
**Broad (1)**
55:20
**broader (2)**
32:1;35:21
**brought (1)**
42:16
**Bruce (1)**
6:18
**burden (1)**
52:10
**burdensome (1)**
32:9
**Bykov (7)**
7:23,24;39:23,24;
41:21;45:6;55:7

**Bykov's (1)**
45:17

**C**

**calendar (5)**
56:1,3,4,5,11
**call (5)**
25:3;29:5;47:11;
48:10;51:2
**called (2)**
16:4;55:20
**came (3)**
11:24;22:2;42:23
**can (29)**
6:8;11:6;14:15;
19:18;21:14;22:3,
18;23:3,12,16;31:24;
32:4,13;33:17;
41:10;42:16;45:17,
17,21;49:14;50:15,
16;51:1;53:13,13;
54:19;57:4,5,6
**care (3)**
21:24;24:6;50:2
**case (11)**
6:20;7:22;8:14;
9:20;12:20;16:24;
30:18;37:6,8;42:9;
54:1
**cases (6)**
23:11;36:23,25;
37:4;42:5,18
**cause (2)**
48:17,18
**certain (1)**
31:22;39:24;44:8
**certainly (2)**
23:11;24:11
**certification (1)**
20:8
**certify (1)**
18:25;19:25
**certifying (1)**
20:13
**cetera (5)**
9:14;35:14;46:14;
49:8;51:22
**challenge (1)**
34:4
**chamber (1)**
48:16
**chambers (3)**
18:16;29:5;30:24
**chance (1)**
19:3
**Chapter (6)**
30:11,13;42:4,4,9,
18
**check (6)**
11:5;26:18;27:19,
21,24;28:3
**checks (6)**

10:19,25;11:1,8,
10;27:7
**chosen (1)**
30:18
**Circuit (1)**
43:12
**claim (1)**
54:12
**claims (3)**
42:16,19;57:8
**clear (13)**
9:8;14:15;16:23;
19:23;20:14,16;
23:24;24:3,14,15;
25:23;26:14;55:23
**cleared (1)**
26:18
**clearest (1)**
35:25
**CLERK (6)**
6:5,7,8,10,11,13
**client (14)**
16:2,3;19:14,15;
23:19,24;24:23;
25:4;27:11;32:22;
36:17;39:1;49:24;
50:1
**clients (13)**
8:10;14:9;15:5;
16:12,21;17:15;
18:20;19:2;21:6,9,
19;36:23;54:20
**clients' (1)**
48:10
**closed (4)**
49:25,25;50:19,25
**closing (1)**
51:22
**colleague (1)**
15:20
**coming (2)**
21:20;41:8
**communications (2)**
39:20,21
**companies (1)**
43:5
**complete (3)**
45:17;48:25;49:2
**completed (2)**
52:5,8
**completely (4)**
8:5;14:17;15:11,
22
**compliance (1)**
28:17
**complicated (1)**
45:8
**complied (1)**
9:16
**comply (1)**
9:13
**computers (1)**
47:4

**conceivable (1)**
40:11
**concern (1)**
22:15
**concerned (1)**
26:20
**concerning (1)**
9:12
**concerns (1)**
39:18
**concluded (1)**
57:12
**confer (12)**
28:13;31:23;33:7;
34:19,25;35:5;44:15,
21;46:16;47:10;
49:4;51:4
**conference (5)**
8:15;9:12,20;29:6;
47:12;55:19
**conferred (1)**
31:17
**confirm (2)**
23:24;24:5
**confirming (1)**
50:5
**connect (1)**
6:8
**consent (1)**
51:20
**consider (1)**
56:25
**Construction (2)**
7:19,20
**Consulting (1)**
7:24
**contain (5)**
16:17;17:21,23;
18:19,20
**contempt (1)**
24:12
**continues (1)**
56:23
**control (4)**
14:8;15:22;27:9,
10
**controlled (4)**
40:8;41:6,9;43:6
**coordinate (1)**
46:10
**correctly (1)**
31:4
**cost (1)**
29:4
**counsel (12)**
6:25;9:2;27:10;
28:10;29:2,8;32:2;
36:22;37:1;39:7;
53:11;55:24
**counsel's (1)**
45:24
**counter-proposed (1)**
23:6

**countries (1)**
43:13
**couple (2)**
8:19;44:4
**COURT (225)**
6:2,16;7:6,9;8:2,8,
10,13,17,21,24;9:3,
19,22;10:2,4,7,11,15,
17,21,24;11:1,4,9,11,
23;12:1,5,7,9,11,13,
16,17;13:7,12,14,19,
22;14:2,7,13,15,18;
16:6,9;17:4,6,11,13,
23;18:2,7,14;19:7,
10,16,18,25;20:6,15,
19;21:3,5,8,16,19,
22;22:14,16,18,21,
23;23:22;24:6,17,19,
23;25:1,3,6,10,14,17,
19,22;26:6,8,22,25;
27:8,17,22;28:1,6,
10,14,18,20,22;
29:20,25;30:4,7,15,
20,22,25;31:2,5,9,
13;32:18,19;33:12,
22;34:10,13,15,17,
19,21;35:2,20;36:12,
14,19,23;37:10,15,
23;38:3,3,6,6,10,12,
19;39:5,8,11;40:4,
23,25;41:7,8,10;
42:2,4,7,21;43:7,9,
11,16,19;44:2,11,16,
19,25;45:3,9,11,13,
20;46:3,5,20,22,24;
47:2,12,13,15;48:6,
14,22,24;49:2,4,11,
22;50:4,5,11,14,21;
51:3,7,8,12,14,16,19,
25;52:7,13,18,21,23,
25;53:2,4,9,11,22;
54:2,5,20;55:2,4,11,
13,15,17;56:1,3,7,10,
13,16,18,20
**CourtCall (6)**
6:5,7,10,12,14,23
**Court's (5)**
7:7;36:8;42:7;
46:15,18;55:18
**crazy (1)**
40:3
**creditors (1)**
40:13
**crystal (2)**
20:15;25:23
**custody (3)**
14:8;27:9,10
**cuts (1)**
29:3

**D**

**DANIEL (3)**

4:10,16;7:12
**date (5)**
47:15;48:20,20;
52:17,18
**dated (1)**
9:11
**day (2)**
29:10;37:20
**deal (10)**
16:17;18:14,16;
26:3;28:23;31:19;
32:20;35:2,3;42:11
**dealing (3)**
18:15;35:4;42:18
**deals (4)**
25:24;42:9;51:21;
57:6
**dealt (4)**
17:13;18:21;48:7;
56:22
**debtor (2)**
41:9
**Debtors (1)**
4:3
**decades (1)**
40:23
**decide (3)**
49:16;52:1,4
**decision (3)**
43:11;50:8;52:11
**defenses (1)**
57:8
**delay (3)**
35:7;53:15;56:14
**delayed (1)**
15:19
**depends (1)**
45:24
**Deposit (4)**
6:19;40:8,8;41:6
**deposited (3)**
14:20;18:5;50:7
**deposition (4)**
30:5;41:20;45:18,
20
**deposits (1)**
20:23
**designations (1)**
8:5
**detail (1)**
31:10
**details (1)**
22:8
**determine (3)**
10:20,22;26:9
**different (2)**
8:6;15:5
**direct (3)**
7:5;33:9;54:14
**directing (1)**
38:20
**directly (3)**
13:25;32:24;40:15

**disbursed (1)**
14:22
**disclose (2)**
11:13;23:19
**disclosed (2)**
14:16;23:16
**disclosure (4)**
9:13;12:7,7;24:13
**discover (2)**
39:13;42:25;43:1
**discovered (1)**
49:23
**discoveries (1)**
43:25
**discovery (50)**
9:12,16,21;13:16;
15:14;18:14,16;
26:19;27:14;28:8,10,
24;29:3,9,15,22;
31:19,21,22;32:5,8,
24;33:3,3;35:4,8,21;
36:20;41:17,23;
42:13,24,24;43:3,23;
44:3,6;45:17;46:11;
47:2,8,17,18;48:7;
51:21;52:3;53:16;
54:14;56:15,17,21
**discuss (2)**
25:20;45:14
**discussed (1)**
37:1
**discussion (1)**
38:17
**discussions (4)**
46:8;54:9;55:7,11
**dismiss (1)**
33:2
**dispute (4)**
31:21;35:4;45:5;
56:24
**disputes (5)**
29:3,9;31:19;32:5;
48:7
**docket (2)**
49:10,10
**document (7)**
30:5,6;31:5,18,24;
35:5;47:24
**document-by- (1)**
31:17
**documents (34)**
9:23;12:3;13:22;
14:4,7,8;16:14,15,
17;18:19;19:20,22;
20:8;24:21,22;
25:25;30:7,8,10,19;
31:7,23;32:23;33:8;
34:2,5;35:10,16,24;
36:2,5,10;46:12;52:3
**dollars (6)**
11:20;38:16;
40:17;48:12;50:13,
25

LARISA IVANOVNA MARKUS; 19-10096-mg
FOREIGN ECONOMIC INDUSTRIAL BANK; 16-13534-mg

July 23, 2019

done (10)
15:7;20:6;26:19;
32:22;41:22;44:8;
47:24;48:24;52:16;
57:5
doubt (1)
37:17
Douglas (1)
7:2
down (6)
16:6;22:18;27:16;
29:4;50:3;57:1
drawing (1)
24:10
drill (1)
16:6
drives (2)
47:6,6
due (9)
15:14;16:2;39:19;
40:10,19,21;41:2,3,4
during (1)
29:7

**E**

early (1)
45:24
ease (1)
8:11
easy (1)
45:22
ECF (2)
12:20,22
Economic (1)
6:2
economy (1)
37:7
ediscovery (1)
28:17
effect (1)
14:22
effort (1)
36:24
efforts (1)
46:10
electronic (8)
41:17,23;43:24;
44:3,5;45:17;47:2,8
electronically (1)
49:9
else (4)
11:11;13:7;27:21;
42:10
else's (1)
22:7
elsewhere (2)
54:12,20
email (4)
15:20;44:4,23;
46:18
emails (2)
37:3;44:6

emergency (3)
48:10;49:7,19
end (4)
15:25;23:14;
37:19;39:14
endeavor (2)
31:23;47:9
ending (1)
9:8
enforce (1)
49:7
engaged (2)
9:4;40:9
entered (4)
8:14;9:3;10:20;
22:13
entire (1)
50:25
entirely (2)
35:17;36:9
Entities (40)
4:11;5:3;7:13,15,
15,22,23;8:3,7,10;
9:1,13,15;11:15,18,
21;12:14,19;14:24;
15:2,11,12,16,10,
11,16;17:9,19,22,25;
18:10,19,25;19:19,
22;20:2,3,9;21:13;
23:20
entitled (2)
26:20;54:15
entity (2)
7:25;20:25
envelope (2)
26:23;27:2
envelopes (11)
10:18,19;22:20;
26:8,11,22;27:1,5,6,
8,9
escrow (1)
26:23;50:7;51:22
ESQ (4)
4:7,16,24;5:7
ESTIS (2)
5:2;9:1
et (6)
6:3;9:14;35:14;
46:13;49:8;51:22
evaluate (1)
57:5
even (7)
24:7;26:20;27:24;
43:13;45:19;55:21,
25
evening (1)
15:21
everybody (2)
38:21;55:17
everybody's (1)
26:21
evidence (1)
38:1

evidenced (1)
30:9
exactly (4)
19:13;42:20;46:9;
50:12
example (8)
20:21;24:12;
25:25;29:1;34:2;
43:3,5,14
exchange (1)
44:11
exchanged (1)
44:12
exclude (1)
18:8
exclusively (1)
57:6
excuse (2)
11:17;14:2
executed (2)
30:13,14
existed (1)
22:9
exists (1)
27:12
expect (2)
33:14,14
expedited (1)
51:10
expeditious (1)
31:20
experience (1)
29:8
explain (4)
14:6,14;15:12;
26:15
explained (2)
15:19;50:1
expressed (1)
37:5
extends (1)
42:7
extent (3)
7:5;25:12;31:10

**F**

facilitate (2)
36:24;37:8
failure (1)
9:13
fair (1)
44:24
fairly (1)
31:25
familiar (1)
39:7
fan (2)
54:3,23
far (4)
24:24;26:19;
46:11;53:24
fashion (1)

31:20
FDIC (1)
41:9
few (1)
9:9
field (4)
42:14;54:7,13;
57:1
fighting (1)
8:17
figure (2)
22:3,10
file (3)
52:21;53:2,13
filed (13)
7:3,3;30:2;31:1;
33:25;34:10;37:25;
38:4;49:8,9,12;
52:20;53:12
financial (1)
39:18
find (6)
12:9;21:24;28:1;
29:8;40:16;43:3
fine (6)
7:6,9;8:4;44:22;
51:4,24
finish (2)
17:11;19:9
firm (4)
6:24;8:6;40:9;41:1
first (5)
6:17;7:19;26:13,
16;46:6
Five (2)
25:10,11
Floor (1)
4:13
flow (2)
14:10;21:12
flowed (1)
54:11
follow (1)
22:4
Foreign (9)
6:2,17,19,22;9:11;
39:1;43:13;48:3;
49:7
forget (1)
41:24
form (5)
7:14;8:1;18:23;
22:25;23:16
forward (7)
16:5;32:11;33:4;
53:17,17;55:21,22
Foundation (1)
7:21
four (2)
15:25;25:7
frame (1)
24:15
frankly (2)

23:5;24:6
freeze (7)
11:2;14:21;24:7,7,
8,11;26:10
freezing (2)
10:19;48:19
Friday (20)
23:1;24:19;28:13;
33:15;34:20,22;
35:19;44:22,22;
46:16,25;47:22;49:4,
14;51:7,8;52:1;53:5,
18;56:23
frozen (2)
13:6;48:12
fully (1)
48:14
funds (15)
11:13,19,24;
12:25;13:2,3,4;14:4,
11;50:3,15,17;54:10,
18,18
further (4)
32:5;33:19;43:16;
53:15

**G**

gave (1)
51:8
generally (1)
32:5
GENNADY (1)
4:24
gets (7)
16:13;17:13;18:4;
31:15;32:2;47:3,9
given (4)
15:17,24;37:6;
38:19
giving (2)
21:5,6
global (6)
37:21;39:6,8,12;
45:6;46:8
globally (2)
41:11,12
goes (4)
31:11;33:12;
35:17;46:11
Good (8)
6:5;7:2,10,12;
8:25;23:5;38:19;
44:24
good-faith (2)
35:23;36:16
granted (1)
48:18
GREGORY (2)
4:24;8:22
Greiner (1)
7:3
Group (1)

7:20
**guess (1)**
28:1
**guilty (1)**
38:15

## H

**hac (1)**
7:3
**handing (1)**
20:10
**handled (3)**
16:13;38:15;47:9
**happen (3)**
41:16;44:16;48:16
**happened (2)**
14:15;40:17
**happening (3)**
35:9;55:9,23
**happens (2)**
19:21;29:14
**happy (3)**
34:25;50:24
**hard (3)**
47:6;55:5;57:1
**head (1)**
6:23
**hear (7)**
28:25;30:22;
35:21;37:10;42:13;
47:7;50:15
**heard (2)**
31:14;45:13
**hearing (14)**
23:8;29:7;33:19;
41:19;47:16,25;
48:13,19,20,20;
49:16;52:4,17,18
**hearings (1)**
35:3
**help (1)**
31:12
**helpful (1)**
12:15
**here's (3)**
21:23;22:14;48:24
**hits (1)**
44:9
**hold (1)**
50:17
**Honor (70)**
6:18;7:2,8,10,12;
8:4,16,25;9:18;
10:13;11:12;12:14,
19,22;13:10,25;
15:13;16:24;19:6,9,
23;20:17;21:7,10,11,
21;22:15;25:8;27:2;
28:4,15,16;29:19;
30:23;33:3,23;34:7,
24;37:2,12;38:9,13,
23;39:16;40:2,7,10,

20;41:4,12,15;42:22;
45:1,15;46:1;48:5,
15;50:20;51:1,5;
52:6,10,17,22;53:7,
23;55:1,6;56:2,6
**Honor's (1)**
21:2
**hopefully (1)**
51:1
**HOWARD (3)**
5:7;8:25;27:3
**hundred (1)**
20:13

## I

**idea (1)**
27:24
**identified (3)**
10:7;13:23;25:7
**identifying (1)**
31:25
**Ilya (1)**
7:23
**imagine (2)**
51:12,16
**immediate (1)**
20:22
**important (2)**
54:6,23
**impose (1)**
52:10
**Inc (3)**
7:20,24;11:21
**include (12)**
16:9,11,20,21;
17:6,8,17,18,25;
18:9,23,24
**included (2)**
19:21;31:18
**includes (2)**
14:9;19:22
**including (2)**
9:23;32:16
**indicate (3)**
30:10;34:2;47:23
**indicated (2)**
31:19;34:22
**indicates (2)**
9:15;36:22
**indicating (2)**
23:15;37:3
**indulgence (1)**
7:7
**Industrial (1)**
6:2
**inform (1)**
17:23
**information (33)**
16:10,11,13,15,20,
21;17:7,8,14,18,21,
25;18:9,9,19,20,24,
25;19:1,19,22;20:2,

9;21:6;23:20;24:13;
31:11;54:7,15,21,24;
55:4;57:2
**initiate (1)**
29:23
**Innovative (1)**
7:19
**insolvency (3)**
34:9;40:7;41:5
**instances (1)**
29:15
**instruction (1)**
39:2
**Insurance (4)**
6:19;40:8,9;41:6
**Integrated (1)**
7:19
**intelligent (1)**
54:17
**intelligently (1)**
54:8
**interest (3)**
21:7,9;37:3
**interested (2)**
37:13,16
**interests (1)**
40:15
**interim (2)**
47:3;50:5
**International (2)**
12:23;21:13
**interrupt (4)**
16:15;33:12,13,21
**into (11)**
14:20,22;18:5;
19:8;20:23;21:25;
22:7;46:6;50:7,25;
51:22
**intrusive (2)**
19:6,11
**involve (3)**
19:14;25:25;26:1
**involved (3)**
16:16;17:7;23:11
**involves (1)**
20:25
**issue (25)**
20:22;21:23;
23:10;24:11;25:22;
26:3;27:14;28:16;
29:1,11;30:15;32:14,
20,21,24;36:10,15;
39:25;42:23;43:17;
51:5;53:24;54:10;
55:5,10
**issues (25)**
18:17;24:8;27:14;
28:8,11,24;29:5,16,
22,22;33:16;35:11,
19,22;36:3,20;37:6;
39:7,8,12;43:21;
46:17;47:17;51:21;
56:21

**item (2)**
9:10;49:6
**items (1)**
13:17
**Ivanovna (1)**
6:3

## J

**jail (1)**
32:9
**JP (1)**
43:10
**Judge (30)**
9:5;11:12;14:16;
21:4;22:5,12;29:21,
24;31:4;32:13;
34:16;35:15,19;36:7,
11,18;37:6,8;40:21;
41:2;42:23;43:18;
45:21;48:16,16;
49:10;52:24;53:3,
21;54:4
**judicial (1)**
37:7
**July (8)**
8:15;9:10;16:3;
25:9,13;34:22;36:21,
22
**June (9)**
9:11;10:1;12:18,
18;15:15;21:14;
25:8,9;27:20

## K

**Kahn (1)**
6:24
**Katia (1)**
6:25
**keep (1)**
27:21
**kept (1)**
26:23
**KIBBE (4)**
4:19,20;8:22;48:2
**KINGSLEY (6)**
5:7;8:25;9:1;27:4,
4,5
**knew (1)**
17:1
**knowledge (1)**
39:18
**knows (3)**
26:16;31:8;54:17

## L

**Larisa (9)**
4:3;6:3,20,22;
7:11,20;11:6,18;52:9
**LarMar (1)**
7:21

**last (8)**
7:4;10:10;15:20;
27:3;29:7,13;35:16;
37:3
**late (2)**
15:20;45:23
**LAW (2)**
4:2,10
**lawyers (1)**
39:21
**learn (1)**
43:4
**least (2)**
33:8;47:3
**leave (2)**
25:3;33:6
**leaves (1)**
42:10
**ledger (1)**
11:5
**leeway (1)**
14:17
**left (1)**
22:4
**Legal (4)**
11:21;12:23;13:3;
21:13
**Leney (3)**
7:2,2,7
**letter (25)**
8:17;9:4,8,10,15;
12:6,16,18,19,21,22;
13:20;26:14;29:2;
33:15;34:19,22;
35:18;36:21;47:23;
49:5,6,15,16;53:4
**letters (7)**
9:5,11;13:18;
29:24;33:19;36:1;
51:25
**level (5)**
42:14;46:8;54:7,
13;57:1
**Liberty (1)**
4:21
**likely (1)**
37:20
**Limited (3)**
6:2;24:13;36:3
**line (3)**
6:6;24:10;26:19
**list (4)**
7:13,13,15;10:16
**listed (1)**
12:19
**listen (2)**
6:9;29:2
**listen-only (1)**
6:12
**litigate (1)**
42:10
**litigated (1)**
23:11

**litigation (4)**
16:16;17:8;19:21;
35:22
**little (5)**
14:14;16:6;40:3;
45:8;50:13
**LLC (7)**
7:16,16,17,17,17,
18,18
**LLP (3)**
4:19,20;8:23
**LM (41)**
4:11;5:3;7:15,16,
16,16,17,17,17,18,
18,21;8:3,6,10;9:1,
13,15;11:6,15;14:20,
24;15:2,11,15;16:2;
17:25;18:4,9,19,25;
20:9,23,25;22:2;
23:25;26:17;27:19;
48:11;49:24;50:24
**long (1)**
50:21
**Look (9)**
28:22;32:18;33:5;
35:20;43:16;44:14;
45:11;52:1;53:11
**looking (6)**
9:10,24;12:20,21;
20:25;27:6
**looks (1)**
50:13
**lost (1)**
48:21
**lots (4)**
16:12,13;18:20;
45:13
**luck (1)**
23:5

## M

**Madam (2)**
6:7,10
**Madoff (1)**
43:11
**mailed (2)**
10:25;27:7
**major (1)**
40:13
**makes (2)**
40:14;45:7
**making (1)**
34:23
**Management (2)**
7:19;8:15
**many (6)**
15:5,5;17:21;44:6,
9;47:4
**March (4)**
21:12,14;25:8,9
**marked (1)**
27:16

**MARKS (146)**
6:18,18;9:16,18;
10:3,6,9,12,16,18,23,
25;11:3,5,10,12,24;
12:4,6,10,12,14,18;
13:23;14:2,9,25;
16:10,22;20:4;21:3,
4,7,9,18,20,23,22;15,
17,23;25:7,8;26:9;
27:2,5,17,18;28:4,9,
15,19;29:19,21;30:1,
6,8,17,21,23;31:1,4,
17,22,25;32:23;33:7,
10,14,20,23,24;31:12,
14,18,25;35:10;37:2,
14,14,22,16;38:5,8,8,
11,13,22;39:6,10,16;
40:5,24;41:3,8,10,
12;42:3,6,20,22;
43:8,10,15,18;44:1,
4,12,20,24;45:1,4,10,
12,15,21;46:7;47:19;
48:9,15,23;49:1,6,9;
50:14,18,20,23;51:5,
7;52:6,8,17,20,22;
53:7,10;54:15,22,25;
55:1,3,6,10,12;56:2,
4,6;57:4
**Marks' (3)**
9:10,15;23:10
**Markus (30)**
4:3;6:3,21,22;
7:11,20;9:11;11:6,
18;12:1,20;30:2,9,
10,12,18;31:7;37:18,
20;38:2,13,14,17,22;
39:3,22;40:1,16;
43:6;52:9
**Markus' (1)**
39:18
**matter (1)**
41:11
**matters (3)**
9:21;33:1;54:15
**may (36)**
10:14;12:7,22;
13:5;14:16;15:14;
19:8,13;21:14;
22:12;23:12,21;24:2,
8;25:8,9;26:5;28:5,5,
5;29:6;37:23;39:13;
41:19;43:4;44:1,11;
45:6;46:1;48:18,22;
49:3,20;54:11;
55:14;57:9
**maybe (1)**
40:20
**mean (12)**
18:3,5;25:2;28:23;
31:10;34:14;40:2,2,
14;41:3;42:1;43:10
**mediate (4)**
37:4,5,14;38:14

**mediating (2)**
37:17;57:2
**mediation (26)**
36:24;37:1,11;
38:12,20,20;39:3,9,
13,14,17;40:12,16;
41:15;43:21;45:16;
46:9;53:25;54:2,3,6,
14,23;55:5;56:14,20
**meet (10)**
31:23;33:6,6;
34:19,25;35:5;44:15,
20;46:16;47:9
**meet-and- (1)**
28:12
**meet-and-confer (2)**
32:2;46:24
**merit (1)**
55:7
**messages (1)**
44:7
**met (1)**
31:17
**microphone (1)**
32:10
**midday (1)**
15:21
**midnight (2)**
9:22;10:9
**might (8)**
25:13;29:19;
34:16;39:23;43:1,
13;52:6;53:7
**million (4)**
11:14;48:11;
50:13,25
**million-two (1)**
11:14
**misspoke (1)**
11:18
**Monday (1)**
15:22
**money (20)**
12:8;14:22;18:5;
21:12,20,25,25;22:1,
6,7,10;23:15;39:25;
43:4,5;50:7,11,22;
57:3,3
**month (4)**
16:1;23:13,14;
27:20
**months (4)**
25:7,7,10,11
**more (5)**
8:19;19:14;45:8,
19;50:16
**morning (7)**
6:5;7:2,10,12;
8:25;34:24;44:22
**Moscow (2)**
6:24;45:19
**most (2)**
13:11,17

**motion (31)**
7:4;9:5;15:3;
18:12,15;19:11;30:2,
15;31:1,2;32:14,15;
33:2,9,25;34:6,23;
35:8;36:3;48:2,10,
17;49:7,8,11,13,19;
52:8,10;53:12,17
**motions (12)**
28:25;29:3;31:20;
35:3,11;47:16;48:2,
6,8;52:4,14;53:18
**moved (2)**
15:7,10
**much (8)**
12:8;24:19;32:9;
50:11;54:17;56:17;
57:2,3

## N

**name (1)**
27:3
**necessary (2)**
7:5;15:3
**need (8)**
22:1,11,11;24:20;
31:20;37:20;39:17;
43:22
**needs (1)**
54:16
**Nevis (1)**
43:5
**New (9)**
4:5,14,22;5:5;
6:25;15:18;16:1;
24:24;43:11
**next (2)**
26:3;27:14
**nice (1)**
33:3
**night (3)**
7:4;10:10;15:20
**Nina (1)**
6:24
**nomenclature (1)**
41:24
**non-privileged (1)**
36:5
**non-Protax (1)**
15:15
**noon (6)**
23:2;33:15;34:20;
49:4,14;53:18
**notice (1)**
30:11
**noticed (1)**
45:20
**nuanced (1)**
29:1
**Number (3)**
10:18;30:9;41:20
**NY (4)**

4:5,14,22;5:5

## O

**oath (1)**
20:1
**object (1)**
52:23
**objection (2)**
27:23;32:19
**objections (2)**
23:4;33:18
**obviously (2)**
8:14;20:24;50:8,9
**occasion (1)**
16:25
**occurred (1)**
24:4
**o'clock (1)**
6:9
**off (2)**
17:2;53:16
**OFFICE (5)**
4:2;6:23;7:3;
26:24;46:16
**OFFICES (1)**
4:10
**often (2)**
7:14;54:5
**old (2)**
24:1,5
**once (5)**
15:6;16:25;41:22,
22;50:7
**one (24)**
10:18;16:25;
19:14;21:13;23:21,
23;25:24;27:9,18,18;
30:8,14;32:8;33:23;
37:17;40:12;41:17;
45:1;46:16;48:9;
50:12;56:8,8,12
**one-minute (1)**
14:17
**only (13)**
9:21;10:9;19:1;
20:1;22:3,11;32:7;
37:7;38:22;41:13;
42:7;51:5;55:10
**open (1)**
53:20
**operator (5)**
6:5,7,10,12,14
**opinion (3)**
17:2;19:5;39:4
**oppose (1)**
53:13
**opposing (1)**
53:13
**Oppositions (1)**
53:20
**ORBE (3)**
4:19,20;8:23

19-10096-mg   Doc 98-2   Filed 07/26/19   Entered 07/26/19 12:06:25   Exhibit B
Pg 66 of 69
LARISA IVANOVNA MARKUS; 19-10096-mg
FOREIGN ECONOMIC INDUSTRIAL BANK; 16-13534-mg

July 23, 2019

**order (45)**
8:14;9:3,16;10:20;
11:2,8;15:8,9;18:22;
19:4;20:15;21:2;
22:13;23:1,7,17;
24:4,7,7,8,11,17,20;
26:10;27:12;28:4,6,
17;32:15,16;34:1;
37:14;45:6;46:18;
47:21;48:17,18;
49:8;50:6;51:20,20,
21;52:9,11;54:2

**ordered (2)**
11:13;13:5

**ordering (6)**
18:22;23:4;26:25;
27:12;28:6;56:20

**orders (3)**
32:16;41:19;56:23

**ought (4)**
24:20;25:22,23;
42:17

**out (28)**
10:25;11:14;12:9;
15:22;20:4;21:1,20,
24,25;22:3,4,10;
25:23;28:1;29:8,16,
23;30:23;32:2,6;
33:24;39:9;40:16;
47:21;53:7;54:18;
57:4,9

**outside (2)**
43:1;54:11

**outstanding (1)**
28:15

**over (7)**
11:19;15:4;38:10;
45:5;46:11;48:11;
50:13

**overbroad (1)**
36:2

**overly (3)**
19:6,6,11

**overrule (1)**
32:19

**overruling (1)**
33:5

## P

**page (1)**
12:20

**pages (1)**
46:12

**paid (5)**
14:23,23,24;
39:25;50:25

**pale (1)**
31:11

**paragraph (1)**
36:22

**paralegal (1)**
6:25

**Park (4)**
11:7,15;16:4;
50:24

**part (3)**
37:3,4;48:18

**participate (1)**
39:17

**participating (1)**
39:12

**participation (1)**
7:5

**particularly (4)**
20:12;26:1;37:16;
43:19

**parties (5)**
6:8;17:7;19:21;
25:25;29:16

**partner (1)**
41:1

**Pause (2)**
6:4,15

**pay (2)**
24:1,5

**PC (1)**
5:2

**pending (11)**
9:6,7;33:2,3;35:8;
47:16;48:3,7,8;
52:11;53:18

**penultimate (1)**
36:21

**people (5)**
27:6;33:2;39:16,
17;45:14

**per (1)**
46:18

**percent (1)**
20:14

**perfectly (1)**
54:13

**Perhaps (2)**
32:1;39:23

**period (1)**
28:3

**person (3)**
39:23,25;40:1

**persuaded (3)**
39:14;43:20,20

**pertaining (1)**
15:1

**pick (1)**
28:23

**place (3)**
43:21;45:16,19

**placed (1)**
13:11

**playing (4)**
42:14;54:7,13;
57:1

**plea (1)**
38:16

**please (4)**
13:14;22:18;26:6;
55:11

**pleased (1)**
9:18

**pled (1)**
40:17

**PLLC (1)**
4:10

**PLOTKO (4)**
4:24;8:16,22;27:2

**PM (1)**
57:12

**podium (2)**
13:12;26:5

**point (4)**
14:25;35:15,16;
55:22

**POLTKO (2)**
8:19,22

**Popova (1)**
6:25

**position (7)**
26:13,14;37:11;
38:12;41:25;54:22;
55:24

**possession (4)**
14:8;27:9,10;
48:11

**possibility (2)**
53:25;57:9

**possible (2)**
19:14;42:17

**possibly (3)**
31:24;40:12,14

**post-freeze-order (1)**
24:14

**postmarked (1)**
10:18

**powers (1)**
30:12

**practice (6)**
9:5;15:4;18:12,15;
29:11;53:17

**practicing (1)**
41:1

**precise (1)**
35:22

**predicate (1)**
32:16

**prefer (1)**
50:9

**premature (1)**
41:15

**prepared (1)**
54:13

**pre-trial (1)**
55:19

**pretty (2)**
29:17;39:24

**prior (1)**
24:4

**prison (4)**
31:8;37:18;38:15;
39:9

**privilege (4)**
29:1;35:23,24;
36:17

**pro (4)**
7:3;11:21;12:23;
21:12

**probably (2)**
23:15;28:13

**problem (3)**
23:4;45:4;56:6

**problems (1)**
44:18

**proceed (4)**
50:8;53:14;54:8;
57:10

**proceeding (5)**
30:12,13;34:9;
40:7;54:20

**proceedings (2)**
48:3;57:12

**proceeds (4)**
14:1,19,23;48:19

**process (3)**
34:18;37:4;55:12

**produce (10)**
15:8;17:18;18:8,
23;19:20;26:25;
35:12,24;36:5,17

**produced (28)**
9:23;10:8,9,13;
13:22,25;14:3,10;
15:14,15;16:20;
17:17,20,24;18:24;
20:10;21:11;22:25;
23:18;26:15;27:1,
12;28:7;41:18,19;
44:7;46:11;47:18

**producing (1)**
36:1

**production (4)**
23:1;25:24;26:11;
33:16

**production's (1)**
47:24

**promptly (1)**
18:17

**proper (2)**
32:22,25

**Property (13)**
7:18;11:25;14:20;
42:8,9,11,14,19;
43:22;45:5;46:13;
57:7,8

**proposal (2)**
37:13;54:17

**propose (1)**
50:4

**proposed (1)**
49:5

**Protax (37)**
7:15,23,23,24;8:6;
11:15,20,21;12:23,
24,24,24,24;13:1,1,2,

3,4;14:24;15:4,5,7,8;
16:9,12;17:1,6,20;
18:6,8,18;19:12;
20:23;21:1;22:24;
24:1;25:2

**protest (1)**
55:24

**provided (2)**
44:13;46:17

**provisions (1)**
9:14

**pulling (1)**
25:6

**purported (1)**
34:4

**purports (2)**
30:2;33:25

**purpose (1)**
55:21

**purposes (2)**
8:2,11

**pursuant (2)**
41:18;48:16

**push (1)**
55:5

**put (10)**
20:1;26:13;27:12;
33:24;43:10;49:15;
51:11,19;53:4,16

## Q

**quash (8)**
15:7;30:3;31:1,3,
20;32:14;34:23;35:3

**quashed (1)**
32:7

**quiet (2)**
56:8,12

**quite (3)**
31:6;33:11;54:5

## R

**raised (1)**
29:16

**rarely (1)**
29:14

**reach (1)**
30:23

**reached (1)**
57:6

**read (2)**
10:22;18:15

**reaffirm (1)**
37:9

**real (1)**
48:9

**realize (1)**
29:10

**really (4)**
14:5;22:11;37:18;
48:12

**Realty (7)**
7:16,16,17,17,17,
18,18
**reason (9)**
8:5;11:8;17:1;
20:21;30:17;38:14,
19;50:18;56:14
**reasons (2)**
37:17;45:13
**received (1)**
30:11
**recently (1)**
49:23
**recognition (25)**
30:16;32:15,15,20,
21,24,25;33:10;34:1,
5;35:9,12,17,18,22;
36:4,10,15;47:16;
48:3;49:8;52:5,9,15;
53:12
**record (4)**
7:14;13:23;18:22;
53:12
**records (1)**
14:3
**recover (2)**
41:13;57:5
**recoverable (1)**
43:14
**recovered (1)**
54:19
**redact (2)**
19:18;20:7
**redacted (4)**
18:8,23;19:1;20:2
**redacting (1)**
17:14
**redaction (4)**
16:14,18;23:19;
25:24
**refer (2)**
8:3,8
**referred (5)**
7:14,21,25;15:1;
36:24
**refine (1)**
32:5
**refuse (1)**
19:20
**regarding (4)**
9:16;15:12;43:22;
48:10
**register (4)**
27:19,21,24;28:3
**regularly (1)**
17:14
**relate (4)**
19:20;21:17;
30:13,19
**related (2)**
30:14;35:17
**relates (1)**
33:24

**relating (2)**
20:9;55:20
**release (1)**
45:6
**relevant (2)**
24:11;35:11
**relief (2)**
15:10;51:10
**relieved (1)**
9:2
**reluctance (1)**
37:5
**remain (1)**
52:16
**remaining (6)**
47:24;49:12,15;
52:1,3;53:19
**remember (1)**
40:25
**remove (1)**
19:19
**repeated (3)**
13:23;29:14,15
**replies (1)**
53:20
**reply (5)**
49:12,13;53:1,2,13
**reports (1)**
47:19
**represent (16)**
6:19,20,21;30:2,9;
33:25;34:3;37:22,
24;40:5,9,11,22;
41:5;52:12;53:10
**representative (5)**
6:17,20,22;39:12,
22
**representatives (1)**
39:1
**representatives' (2)**
9:11;49:7
**represented (4)**
31:5;37:23;38:6;
40:13
**representing (3)**
38:3,7;40:15
**represents (4)**
34:8;37:18;38:2,4
**request (8)**
12:2;29:6;31:5,7,
18;32:1;37:1;43:24
**requested (9)**
10:5,8;14:9;15:6;
16:22,25;17:3;
35:11;36:6
**requesting (2)**
9:12;36:23
**requests (4)**
31:24;33:16;35:6,
17
**required (1)**
54:7,12,21
**reserve (3)**

18:12;23:3;25:20
**reserved (1)**
57:7
**resolution (4)**
37:20,21;42:8,18
**resolve (5)**
23:8,12;29:3,5;
31:23;33:7;39:8,11;
43:21;51:9
**resolved (7)**
23:7,9;29:9,12;
36:19;41:11;47:3
**respect (10)**
14:10;22:24;
23:17;39:19;40:10,
19,21;41:2,3,4
**respond (2)**
46:1;51:7
**responded (1)**
49:1
**response (5)**
48:20;49:11,13;
52:20,21
**responsible (1)**
41:13
**Revocable (9)**
7:20;11:7;14:20;
16:2;18:4;20:23;
24:1;26:17;49:24
**revoking (1)**
48:10
**RICHARDS (4)**
4:19,20;8:22;48:2
**right (27)**
6:16;8:13;12:13,
15,19;13:7;18:12;
19:15,17;21:21;
22:5;25:19;31:9;
35:20;36:12;40:1;
41:7,13;42:6;44:19;
45:12;49:8;50:22;
51:20,25;55:13;
56:21
**rights (2)**
25:21;57:7
**ripe (4)**
28:16,19,20,21
**room (2)**
38:21,22
**ROSENBERG (2)**
5:2;9:1
**Rozhkov (1)**
6:21
**rule (2)**
33:18;41:23
**rules (2)**
18:16;48:16
**Russia (12)**
31:8;34:9;37:19,
19,21;38:17,23,25,
25;39:2,7;40:7
**Russian (3)**
38:15,15;39:21

|   |
|---|
| **S** |

**sale (1)**
11:25
**same (4)**
10:12;11:8;16:3;
27:23;31:14;34:18
**saying (2)**
35:8,13
**schedule (9)**
45:23,24,25;49:5;
52:2,3,4;53:4,19
**scheduled (1)**
55:19
**scheduling (3)**
8:14;9:3;49:16
**scope (4)**
35:18,21;36:10,15
**search (5)**
44:11,12,13;
46:17;47:4
**searched (1)**
47:5
**searches (2)**
44:8,9
**searching (1)**
44:14
**seat (1)**
22:18
**second (5)**
22:16;43:12;
48:24;49:18;53:6
**seeing (1)**
49:15
**seek (1)**
33:7
**seeking (3)**
9:2;31:11;41:18
**seeks (1)**
31:7
**seem (2)**
33:9;54:10
**seems (4)**
32:23;35:10;
53:24;54:16
**senior (1)**
40:25
**sense (4)**
39:4,15;40:19;
46:9
**sensible (2)**
45:18,19
**sent (3)**
10:19;11:1;30:11
**separate (5)**
15:11;32:14;49:5;
51:20,21
**separately (1)**
48:1
**September (2)**
45:16,24
**Sergey (1)**

6:23
**series (2)**
16:24;47:4
**serve (1)**
37:7
**served (3)**
30:1;34:1,7
**service (1)**
32:22
**Services (5)**
7:24,24;8:6;11:21;
15:5
**set (2)**
47:15,25
**setting (1)**
48:20
**settle (1)**
37:4
**settlement (11)**
36:24;37:8;41:11;
45:7,14;46:8;53:25;
54:8,17,22;57:6
**settling (1)**
45:5
**several (1)**
37:2
**short (4)**
7:14;8:1;10:16;
11:6
**short- (1)**
20:9
**short-form (1)**
8:2
**shorthand (1)**
20:3
**show (4)**
11:24;14:4;48:17,
18
**showed (1)**
14:1
**shows (1)**
29:8
**shutting (1)**
50:3
**sic (1)**
18:12
**side (1)**
54:8
**simple (2)**
27:18;51:15
**simply (2)**
26:15;46:12
**SINGER (103)**
4:10,16;7:12,13;
8:4,9,12;9:22;10:7;
12:6;13:9,10,13,17,
21,24;14:2,6,12,14,
19;16:8,23;17:5,10,
12,20;18:1,3,11;
19:5,8,11,17,23;
20:5,11,17,20;22:19,
22,23;23:4,21,23;
24:15,18,22,24;25:2,

5,12,15,18,20;26:4,5,
7,13,23;27:15,22,23;
28:3,12,21;44:4,18,
22;46:1,4,5,6,21,23;
47:1,11,14;49:18,18,
20,23;50:12;51:3,4,
9,13,15,18,24;53:6;
55:14,16;56:3,5,8,
12,14,16,17,18,19,20
**Sit (1)**
22:18
**situation (1)**
46:12
**Sokolov (1)**
6:23
**solved (1)**
56:6
**somebody (4)**
22:6,7;39:22;
40:20
**somehow (1)**
56:10
**someplace (1)**
31:8
**sometime (1)**
45:16
**soon (1)**
25:15
**sorry (13)**
6:21;8:16,18,19;
11:17;14:12;17:12;
19:9;20:17;22:17;
25:9;27:3;28:4
**sought (1)**
9:25
**speaking (2)**
33:13;49:19
**specific (9)**
12:2,2,10,12;
31:16,24,25;33:8;
35:5
**specifically (4)**
31:6;32:17;36:3,9
**speculating (2)**
45:9,11
**stand (1)**
17:16
**standing (1)**
50:6
**start (4)**
9:9;25:6;41:1;50:3
**state (1)**
33:17
**statement (4)**
20:1;22:8;25:11;
36:8
**statements (33)**
9:24,25;11:16,22;
12:22;13:25;15:1,4,
8,9,13,15,18;16:1,5,
9,19;17:1,6,17,21,
24;18:8,23;19:12,18;
21:10,14;22:24;

23:13,14,17;26:1
**States (20)**
14:21;41:14;42:8,
10,12,15,19,25,25;
43:2,7,8,13,22;45:5,
8;54:11,11;57:3,7
**status (8)**
9:5,19;33:15,15,
19;43:24;47:6,19
**stay (1)**
37:13
**still (8)**
11:25;12:25;13:2,
4,5;22:2,10;50:6
**Stop (9)**
22:16,16;31:13;
33:12;34:17;43:20;
46:20,22;55:15
**story (1)**
26:11
**Street (3)**
4:4,21;55:20
**strong (1)**
37:3
**subject (1)**
54:12
**submit (5)**
23:3,6;24:17;
47:20;53:5
**submitted (1)**
48:17
**subpoena (14)**
15:6;30:1,5,5,6;
31:6;32:8,14,17;
33:23,24;34:1,7,23
**subpoenas (4)**
16:24;31:20;35:3;
38:1
**subsequently (1)**
49:9
**substance (1)**
46:7
**substantive (1)**
48:8
**suggest (2)**
43:12;45:15
**Sunday (1)**
15:21
**support (1)**
34:6
**supposed (2)**
15:21;44:15
**sure (9)**
7:4;19:24;20:13;
21:1;25:5;33:11;
47:1,1;50:21

**T**

**talk (2)**
48:1;50:14
**talked (1)**
16:12

**talking (2)**
26:8;45:4
**tape (1)**
47:5
**telephone (1)**
29:6
**telling (13)**
18:21;19:16;23:8;
28:22;32:10;33:5;
34:15;35:7,20,24;
36:14;53:16;56:25
**term (2)**
11:6;20:3
**terms (10)**
24:13;35:25;38:9;
42:23;44:11,12,13;
46:17;47:4,21
**testy (2)**
29:17,21
**that'll (1)**
39:13
**therefore (2)**
35:12;44:9
**think- (1)**
54:3
**Third (2)**
4:12;5:4
**though (1)**
24:16
**three (4)**
11:12;25:7;27:6;
40:23
**throughout (1)**
16:24
**timelines (1)**
51:11
**timing (1)**
51:10
**today (15)**
7:1,5;28:1,16,19,
20,21;33:6;36:20;
43:17;44:17;47:7,
18;56:21,22
**together (1)**
38:21
**told (5)**
9:6;18:18;35:2;
40:25;48:25
**took (1)**
40:17
**Toronto (1)**
15:19
**towards (1)**
53:25
**trace (2)**
22:5,6
**tracing (1)**
23:11
**traction (1)**
31:15
**transactions (6)**
19:13;20:24;21:1;
22:9;23:25;24:9

**transcript (2)**
18:22;20:15
**transfer (3)**
26:16,18;51:22
**transferred (7)**
14:4;42:15,16;
46:13;54:18;57:4,8
**transfers (4)**
24:3;26:2,10;
43:12
**transition (1)**
48:19
**travel (1)**
44:18
**true (1)**
33:11
**Trust (15)**
7:20;11:6,7,15;
14:20;16:2;18:4;
20:23;22:2;24:1;
26:17;27:19;48:11;
49:24;50:24
**try (4)**
22:25;37:4;43:21;
57:5
**trying (11)**
10:20,21;12:9;
21:23;22:6,9;26:9;
36:7;38:8;40:16;
41:13
**turns (1)**
53:7
**twelve-and-a-half (1)**
32:7
**Two (20)**
11:5;29:10,22;
30:9;37:17;38:16;
39:1;40:17;41:15,20,
22;42:4;48:2,3;50:2,
16,23;51:1;52:22,23
**types (1)**
20:24
**typically (5)**
7:22,25;29:2;47:2,
8

**U**

**UK (1)**
14:19
**Um-hum (1)**
13:21
**under (2)**
20:1;43:14
**Understood (2)**
8:12;33:19
**unfortunately (1)**
15:19
**United (20)**
14:21;41:14;42:8,
9,12,15,19,25,25;
43:1,7,8,13,22;45:5,
7;54:11,11;57:3,7

**unless (3)**
35:13,22;36:15
**unrelated (11)**
16:11,21;17:8,14;
18:9,20;19:2,19;
20:3;21:5;25:25
**unresolved (1)**
53:24
**up (4)**
13:12;32:10;
42:23;44:9
**update (1)**
44:16
**updated (1)**
47:19
**use (2)**
11:6;20:3
**usually (2)**
32:2;50:1

**V**

**vacate (14)**
30:16;32:15;33:9;
34:1,6;35:8;12;36:3;
47:16;52:4,9,11,14;
53:12
**vacated (1)**
32:25
**vacating (3)**
32:20,21;48:3
**variety (1)**
9:4
**vice (1)**
7:4
**VICTOR (3)**
4:2,7;7:10
**violate (1)**
50:6
**violating (1)**
19:15
**voluminous (1)**
31:6
**Vyskocil (6)**
9:5;11:12;14:16;
22:12;29:24;42:23
**Vyskocil's (1)**
48:16

**W**

**wait (1)**
24:20
**Wall (1)**
4:4
**wants (3)**
26:21;33:8;38:25;
45:15
**wars (3)**
8:17;9:4,8
**waste (4)**
26:20,21;39:13;
46:15

LARISA IVANOVNA MARKUS; 19-10096-mg
FOREIGN ECONOMIC INDUSTRIAL BANK; 16-13534-mg

July 23, 2019

**watch (1)**
 42:11
**way (14)**
 9:20,21;17:2;
 18:14,21;22:3;
 25:24;29:24;34:8;
 35:4;40:11,21;41:5;
 47:2
**weather (1)**
 15:22
**week (3)**
 37:3;53:2,3
**weeks (5)**
 29:11;44:5;50:2;
 52:22,23
**welcome (1)**
 6:10
**West (1)**
 7:18
**what's (9)**
 7:21;22:4;26:11;
 27:3;31:2;37:11;
 38:12;43:24;54:6
**whatsoever (1)**
 16:25
**where's (1)**
 24:23
**Whereupon (1)**
 57:12
**whole (1)**
 7:13
**who's (2)**
 6:25;39:22
**whose (2)**
 23:15;40:15
**wired (3)**
 43:4,5,7
**withdraw (1)**
 48:2
**withhold (2)**
 16:14,15
**within (2)**
 29:9;31:18
**without (3)**
 33:18;39:12;46:6
**work (3)**
 20:4;25:22;47:21
**worked (3)**
 29:16;32:2,6
**working (1)**
 7:1
**works (1)**
 38:20
**world (1)**
 42:11
**worldwide (1)**
 39:18
**WORMS (52)**
 4:2,7;7:10,10;
 30:1,22,25;31:3,4,
 10,13;32:12,13,19;
 33:5,11,15,16,18;
 34:7,16,20,21;35:15;

 36:6,7,13,18;37:2,
 17;38:14,24;39:19;
 40:11,13,20;41:4;
 48:5,6;49:3;52:11,
 23,24;53:1,3,8,21,22,
 23;54:3,4;55:9
**Worms' (1)**
 36:21
**wrote (2)**
 36:23;37:2

## Y

**years (2)**
 31:15;32:7
**yesterday (3)**
 9:22;11:16;44:16
**York (5)**
 4:5,14,22;5:5;
 24:24

## 1

**1 (1)**
 49:6
**10 (1)**
 9:12
**10005 (1)**
 4:5
**10017 (2)**
 4:14;5:5
**10281 (1)**
 4:22
**10C (1)**
 7:18
**10th (3)**
 10:1;12:18,19
**11 (1)**
 6:9
**12:07 (1)**
 57:12
**120,000 (1)**
 13:1
**15 (7)**
 30:11,13;36:22;
 42:4,5,9,18
**15th (1)**
 8:15
**16-13534 (1)**
 6:3
**18 (1)**
 7:18
**18th (1)**
 4:13
**19-10096 (1)**
 6:3
**19th (4)**
 9:10;15:15;34:22;
 36:21
**1st (1)**
 28:5

## 2

**2 (2)**
 9:10;12:20
**20,000 (2)**
 12:24;13:1
**200 (1)**
 4:21
**2002 (1)**
 41:24
**2004 (1)**
 41:24
**2019 (3)**
 9:12;21:12;36:22
**20A (1)**
 7:17
**226,000 (1)**
 12:23
**23H (1)**
 7:17
**24 (1)**
 7:17
**24,500 (1)**
 12:24
**25,000 (1)**
 46:11
**25th (1)**
 49:25
**27D (1)**
 7:16
**28th (1)**
 16:3
**29th (8)**
 12:7;13:5;21:12;
 22:12;24:2;28:5;
 41:19;48:18

## 3

**3 (1)**
 12:21
**31B (1)**
 7:16
**31st (2)**
 12:22;28:5

## 4

**4.2 (2)**
 48:11;50:25
**40 (1)**
 55:20
**48 (1)**
 4:4

## 5

**540 (1)**
 50:23
**548 (1)**
 43:14
**550 (2)**

 11:7,15
**551 (1)**
 16:4

## 6

**60 (2)**
 12:20,22
**60,000 (2)**
 12:24,24
**600,000 (1)**
 11:20
**630 (1)**
 4:12
**6th (2)**
 55:20;56:11

## 7

**733 (1)**
 5:4

## 8

**8,000 (1)**
 13:1

## 9

**93,000 (1)**
 12:23