**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------x
In re:                                                                  **FOR PUBLICATION**

            LARISA MARKUS,                      Chapter 15
                                             Case No. 19-10096 (MG)
                    Debtor in a Foreign Proceeding.
-------------------------------------------------------------------------x

**MEMORANDUM OPINION EXPLAINING IMPOSITION OF SANCTIONS ON**
**VICTOR A. WORMS, ESQ., COUNSEL FOR FOREIGN DEBTOR LARISA MARKUS**

*A P P E A R A N C E S:*

LAW OFFICES OF VICTOR A. WORMS
*Attorneys for Foreign Debtor Larisa Markus*
48 Wall Street, Suite 1100
New York, NY 10005
By:    Victor A. Worms, Esq.

 MARKS & SOKOLOV, LLC
*Attorneys for Yuri Vladimirovich Rozhkov in his Capacity*
*as Trustee and Foreign Representative for the Foreign Debtor Larisa Markus*
1835 Market Street, 17th Floor
Philadelphia, PA 19103
By:    Bruce S. Marks, Esq.
        Nina Farzana Khan, Esq.
           and
ARCHER & GREINER, P.C.
630 Third Avenue
New York, New York 10017
By:    Gerard DiConza, Esq.
        Lance A. Schildkraut, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

On October 8, 2019, the Court entered an Order imposing sanctions on Victor A. Worms,

Esq. ("Worms"), counsel of record for the foreign debtor Larisa Markus ("Markus"), following a

hearing on October 3, 2019 at which the Court explained that an Order imposing sanctions

against Worms would be entered because of his knowing and willful failure to provide discovery

1

required by a subpoena served on Worms on behalf of Markus on June 25, 2019. ("Sanctions Order," ECF Doc. # 157.)

The Sanctions Order resulted from the granting of the Markus Foreign Representative's Motion for Sanctions Against Victor A. Worms and Larisa Markus. ("Sanctions Motion," ECF Doc. # 136.) The Foreign Representative argued that sanctions should be awarded against Worms and Markus pursuant to FED. R. CIV. P. 37(b)(2)(A)(vii) and (b)(2)(C). The Foreign Representative seeks an award of $40,000 in attorneys' fees and costs in connection with seeking discovery from Markus and preparing the Rule 37 Motion. (*Id.* at 6.) The Foreign Representative also requests that the Court hold Worms in contempt for failure to comply with the subpoena. (*Id.* at 17–18.)

Worms opposed the Foreign Representative's motion and filed a cross-motion against the Foreign Representative and his attorney, Bruce S. Marks, Esq., seeking sanctions under Rule 11 for frivolous conduct and unlawful discovery. ("Worms Sanctions Opposition," ECF Doc. # 138-4.) Worms did not comply with the Local Rules regarding notice for scheduling his cross-motion for hearing, but the Court nevertheless considered the cross-motion at the hearing on October 3, 2019. (The Court denied Worms' cross-motion during the October 3, 2019 hearing. The cross-motion was frivolous.)

The Foreign Representative filed a reply, arguing that the Recognition Order and subsequent orders by this Court require Worms to comply with the subpoena. ("Sanctions Reply," ECF Doc. # 139 at 6–7.) The Court denied Worms' Motion to Quash Subpoena on July 30, 2019; the order denying Worms' motion also required Worms to "immediately communicate with Markus and her agents, including attorneys, to obtain and produce responsive documents . .

2

. to the extent the documents are in Markus' possession, custody, or control." (*See* "July 30, 2019 Discovery Order," ECF Doc. # 107.)

The Court finds that Worms' misconduct in violating the discovery orders was knowing, willful and intentional. The Sanctions Order imposed monetary sanctions on Worms in the amount of $1,000 per day from September 5, 2019 until Worms complies with the Court's discovery orders. This Opinion further explains the Court's findings of fact and conclusions of law supporting the sanctions award.

## I.    **BACKGROUND**

The background of this chapter 15 case ("Markus Case," Case No. 19-10096 (MG)), and in the related chapter 15 case of Foreign Economic Industrial Bank, Ltd. ("Bank Case," Case No. 16-13534 (MG)), has been described in numerous prior opinions and orders entered by Judge Vyskocil, who originally presided over these cases, and by me since the cases were transferred to me on June 24, 2019.

On April 1, 2019, in the Markus Case, Judge Vyskocil granted the Foreign Representative's motion for recognition of a foreign main proceeding and authorized the Foreign Representative, pursuant to section 1521(a)(4) of the Bankruptcy Code, to "examine witnesses, take evidence concerning the debtor's assets, affairs, rights, obligations or liabilities . . . ." ("Recognition Order," ECF Doc. # 29 at 9.[1]) On May 28, 2019, Worms appeared as counsel for Markus in this case. ("Notice of Appearance," ECF Doc. # 55.) On June 18, 2019, Worms filed Motions to Vacate Recognition in the Markus Case and the Bank Case. (Markus Case, ECF Doc. # 70; Bank Case, ECF Doc. # 106.) The most recent opinion by me, denying the motions to

---

[1]    Unless otherwise indicated, references to ECF document numbers are to the Markus Case and not the Bank Case.

vacate the recognition orders entered by Judge Vyskocil, was entered on October 8, 2019.[2]

(Memorandum Opinion and Order Denying Motions to Vacate Recognition as Foreign Main

Proceedings (hereinafter, "October 8 Opinion," ECF Doc. # 158).)

Worms' client in this case, the foreign debtor Larisa Markus, is currently serving a long

jail sentence in Russia after pleading guilty to embezzling over $2 billion.  Despite Worms'

stonewalling of discovery, the Foreign Representative has so far documented that Markus

transferred—at a minimum—millions of dollars of her assets to the United States.  The Foreign

Representative continues to try to discover the evidence trail of Markus' missing fortune.  While

Markus is in jail in Russia, limiting her ability to personally assist in complying with her

discovery obligations in this case,[3] she has agents and attorneys in multiple countries where she

is known to have had property, including in the U.S., U.K., France, Latvia and Russia.  The fact

that Worms' client is in a Russian jail does not relieve Worms of his professional obligations to

respond to legitimate discovery in this case.

Worms may not bury his head in the sand, as he has knowingly and intentionally done in

this case.  Worms knows who Markus' agents and attorneys are in the U.S. and other countries;

Worms knows that, acting through her agents and attorneys, Markus engaged in numerous

transactions around the world transferring assets that she has so far shielded from efforts of the

---

[2]        An important ruling in that opinion is also relevant here as well.  As stated in the October 8 Opinion:

On May 28, 2019, Worms appeared as counsel for Markus in the Markus Case.  (ECF Doc.
# 55.)  As a result of that notice of appearance, Markus, through Worms, has appeared
generally in the Markus chapter 15 Case.  As a result of Worms' appearance, Markus
became a party to the Markus Case; Worms thereby became obligated to fulfill all
responsibilities of counsel appearing in an any case in this Court.  Worms' disregard of his
professional responsibilities in respect of discovery undertaken on behalf of the Markus
Foreign Representative has resulted in a substantial sanctions award against Worms.
Markus and Worms have repeatedly violated orders entered in this case.

October 8 Opinion at 4–5.

[3]        The Court assumes Markus does not have responsive documents in her jail cell.

Foreign Representative to recover as part of the Russian bankruptcy estate; Worms has failed to demonstrate that he has made reasonable efforts to gather responsive documents from Markus' agents and attorneys.  As explained below, FED. R. CIV. P. 34, applicable in this chapter 15 case, requires a party to produce all responsive documents in the party's "possession, custody or control," which includes documents held by her agents and attorneys in this country or elsewhere.

Worms' discovery misconduct began during the time that Judge Vyskocil was presiding over these cases and has continued since the cases were transferred to me.  (*See, e.g.*, May 29, 2019 Hr'g Tr. at 24, 29 (ECF Doc. # 59) (Judge Vyskocil finding that "there is clearly a pattern of [the LM Entities] not complying with [their] discovery obligations and of stonewalling that has to come to an end" and noting the Court was "getting tired of the games here").)  Worms is being paid for his work in this case by the LM Trust,[4] a revocable trust governed by New York law, for which Markus was the settlor, and by Ilya Bykov, a New York resident whom Markus provided a power of attorney.[5]  To be clear, however, this Court's order imposing sanctions on Worms is based solely on his misconduct in this case since it was transferred to me.

On June 25, 2019, the Foreign Representative served "Larisa Markus, C/O Victor A. Worms" with a subpoena for the production of documents.  ("Subpoena," ECF Doc. # 79-2.)  On July 9, 2019, Worms moved to quash the Subpoena.  ("Motion to Quash Subpoena," ECF Doc. #

---

[4]    On May 27, 2019, the Foreign Representative took steps to terminate the revocable trust; Worms and the LM Trust's counsel dispute that the termination was effective, an issue that will be dealt with in a separate opinion. If the termination was effective, the trust assets reverted to Markus, which the Foreign Representative seeks to recover in a pending turnover motion.

[5]    According to evidence submitted by counsel to the Foreign Representative, Markus contributed her ownership interests in the so-called "LM Entities" to the LM Trust and to the LARMAR Foundation, the equivalent of a Panama trust.  Markus is the sole lifetime beneficiary of each trust.  The LM Entities include eight "LM" New York LLCs, which owned New York apartments purchased by Markus for more than $16 million between 2008 and 2015.   In addition, Markus is listed as the sole member of 550 Park Avenue, LLC, which received $3 million from the sale of her London property, which Ilya Bykov allegedly concealed in discovery.

79.)  At a hearing on July 23, 2019, the Court was very clear with Worms that he had to produce

all non-privileged responsive documents to the Foreign Representative's counsel.[6]  A written

order denying the Motion to Quash Subpoena was entered on July 30, 2019.  (July 30, 2019

Discovery Order, ECF Doc. # 107.)

The July 30, 2019 Discovery Order also ordered Worms to "immediately communicate

with Markus and her agents, including attorneys, to obtain and produce responsive documents . .

. to the extent the documents are in Markus' possession, custody, or control."  (*Id.*)  It also

required Worms to produce documents responsive to the Subpoena by August 15, 2019.  (*Id.*)

Worms thereafter requested an extension of time to respond to the Subpoena until September 4,

2019 because, he said, he needed time to have the Subpoena translated into Russian for his

client.  ("Worms Letter," ECF Doc. # 108.)  The Court granted the extension but stated that: "No

further extensions will be granted.  So you better be sure that the subpoena is translated promptly

---

[6]    During the July 23, 2019 hearing, Worms continued to argue against having to produce documents in
response to the subpoena.  He *did not* argue that he is not required to produce responsive documents that are in the
possession of Markus's agents and attorneys.

> THE COURT: Look, I'm telling you right now, I don't want to hear -- the scope of
> discovery is broader than the precise issues in the litigation or on recognition.  Unless you
> have a good-faith basis to assert privilege, attorney-client privilege, you're going to
> produce the documents. I'm telling you in the clearest terms, and I don't want to have to
> tell you again, after getting letters on this, that you're not producing the documents because
> you think they're overbroad or it's not specifically limited to the issues on the motion to
> vacate recognition.  You will produce all non-privileged documents that have been
> requested.  Do you understand that, Mr. Worms?
> MR. WORMS: Judge, I do understand.  I was just trying to bring to the Court's attention a
> statement that was not entirely correct.  And that was specifically that these documents are
> well beyond the scope of the recognition issue, Judge.
> THE COURT: All right.
> MR. WORMS: That's all I --
> THE COURT: And I'm telling you that whether they're beyond the scope of the
> recognition issue, if they – unless they are -- you have a good-faith basis to allege attorney-
> client privilege, you're going to produce them.
> MR. WORMS: Okay, Judge.

July 23, 2019 Hr'g Tr. at 36 (ECF Doc. # 103.)

and delivered to Ms. Markus." (Aug. 7, 2019 Hr'g Tr. at 8:14–16 (ECF Doc. # 129).) The Court

also indicated that failure to comply with the order would result in possible sanctions. (*Id.* at

9:11–16.)

Despite the clear September 4, 2019 deadline for Worms to produce documents, Worms

did not do so. At a September 9, 2019 hearing, Worms argued for the first time that he did not

have a duty to produce documents in Markus' possession, custody or control held by her agents

outside the United States. (Sept. 9, 2019 Hr'g Tr. at 78, 82 (ECF Doc. # 146).) That objection

had not been raised by Worms in any written objection or response to discovery previously filed

with the Court. The Court was clear that Worms had to produce responsive documents in the

possession of Markus' agents and attorneys outside of the U.S.[7]

---

[7]     During the September 9, 2019 hearing, the Court was very clear that Worms had to produce documents in
the possession, custody or control of Markus' agents and attorneys, including those outside the U.S.:

> THE COURT: I'm looking at the order dated July 30, 24 2019. It's ECF docket number
> 107. On the first page in paragraph number 2, Worms shall immediately communicate
> with Markus and her agents, including attorneys, to obtain and produce responsive
> documents by the dates indicated below to the extent the documents are in Markus'
> possession, custody, or control. 3. Markus and Worms shall produce all documents
> responsive to the subpoenas to the extent the documents are in their possession, custody,
> or control. So custody or control doesn't mean things that -- pieces of paper you have in
> your -- just in your office. . . . And then in B, Worms and Markus shall produce all
> remaining responsive documents by 5 p.m. on Thursday, August 15, 2019. That time got
> extended and you didn't bring us any documents. . . . What you didn't answer to me, is
> whether her attorneys in London or her attorneys in Moscow have any documents that are
> responsive to the subpoena. Do you know one way or the other whether they do?
> MR. WORMS: I do not, Your Honor.
> THE COURT: Okay. You're ordered -- I ordered you already to produce by dates certain
> documents in Markus' possession, custody, or control. It includes her agents and her
> attorneys. You're her attorney here. *You are not going to shield responsive documents
> that are in the possession of her attorneys in London or her attorneys in Russia if there are
> responsive documents. One of the reasons that I gave you time to produce and then
> extended the time was that you -- it was going to take you some time to collect things.* You
> had to translate the subpoena into Russian for Ms. Markus and for her attorneys, perhaps.
> For her attorneys in Moscow, not for her attorneys in London. And you stonewalled.
> MR. WORMS: No, Judge. I beg to disagree with that statement.
> THE COURT: Let me ask you this. In response to a July 30, 2019 order, did you produce
> any documents from Ms. Markus?
> MR. WORMS: I did –
> THE COURT: Yes or no?

As explained below, Worms' objection that he doesn't have to produce documents in the possession of Markus' attorneys and agents outside the U.S. is without merit; any competent attorney practicing in chapter 15 cases, as Worms does, would know this, or would have filed a request seeking clarification rather than simply ignoring the orders. Rather, Worms did what he has done throughout this case—stonewall.

At the hearing on October 3, 2019, Worms confirmed that he still had not produced responsive documents. (Oct. 3, 2019 Hr'g Tr. at 51–52 (ECF Doc. # 160).) During the hearing, the Court denied Worm's cross-motion for sanctions against the Foreign Representative and his counsel—the cross-motion was utterly frivolous. (*Id.* at 69.)

At the conclusion of the October 3, 2019 hearing, the Court granted the Foreign Representative's Sanctions Motion against Worms, ordering that monetary sanctions be paid to the Clerk of the U.S. Bankruptcy Court because Worms knowingly and intentionally violated multiple discovery orders entered by the Court. The Court briefly explained on the record the reasons for imposing the sanctions. (*Id.* at 67–70.) With respect to the Foreign Representative's request for payment of attorneys' fees for making of the motion for sanctions, the Court deferred ruling on the

---

MR. WORMS: I did not produce any documents because there weren't documents to be produced, Judge. And if I might elaborate briefly on that –
THE COURT: All right. You can stand on it. [Mr. Marks,] Bring a motion for contempt.
MR. WORMS: May I just elaborate, Judge, because there is a legal issue here that requires a firm interpretation. And that is whether or not this Court's power extend beyond the territorial jurisdiction of the United States to direct the compliance of subpoena of individuals outside this country, Your Honor. That hasn't been addressed, because as I read the Court's order –
THE COURT: Okay. You know what? You can respond to the contempt motion by briefing it, if that's what you want to do.
MR. WORMS: Well, Judge –
THE COURT: And -- no. Stop. We're not going further. You were ordered, you ignored it. You ignored it at your peril. If it turns out you have a good defense, you'll ultimately prevail. If it turns out you don't, it's going to cost you big bucks. Okay?

Sept. 9, 2019 Hr'g Tr. at 79–82 (emphasis added) (ECF Doc. # 146.)

8

request until counsel for the Foreign Representative files detailed time records supporting the request for fees.  (*Id.* at 70–71.)

The Court finds as facts that Worms knowingly and intentionally—indeed brazenly—violated previous Court orders compelling compliance with discovery.  Worms has engaged in a continuous pattern of misconduct, disregarding clear warnings from the Court that failure to comply with Court orders would lead to imposition of sanctions.  The Order imposing sanctions was entered by the Court on October 8, 2019.  (Sanctions Order, ECF Doc. # 157.)

The issues arising from Worms' continuous pattern of obstructing legitimate discovery have been raised in multiple filings and at numerous court hearings.  On multiple occasions the Court ordered that Worms comply with discovery.  On July 30, 2019, the Court entered a written order compelling Worms to produce non-privileged documents on or before August 15, 2019.  (July 30, 2019 Discovery Order, ECF Doc. # 107.)  At the September 9 hearing, Worms attempted to explain away his failure to comply with the July 30, 2019 Discovery Order (Sept. 9, 2019 Hr'g Tr. at 78, 82 (ECF Doc. # 146)), and with the August 7, 2019 oral order (Aug. 7, 2019 Hr'g Tr. at 9 (ECF Doc. # 129)) compelling production by September 4, 2019 of all non-privileged documents responsive to the Subpoena.  (Subpoena, ECF Doc. # 79-2.)  Worms asserted that he "misunderstood" the Court because he "believed" Markus had no duty to produce documents in her "possession, custody or control" through her agents outside the United States.  (Sept. 9, 2019 Hr'g Tr. at 82 (ECF Doc. # 146).)  Black letter law is to the contrary.  No reasonable attorney could believe otherwise.  Worms' "misunderstanding" is the latest in a string of excuses to justify non-compliance with orders.

## II.    <u>LEGAL STANDARD</u>

Section 1521(a) outlines the discretionary relief a court may order upon recognition.  11 U.S.C. § 1521(a).  The discretion that is granted is "exceedingly broad," since a court may grant

"any appropriate relief" that would further the purposes of chapter 15 and protect the debtor's assets and the interests of creditors. 8 COLLIER ON BANKRUPTCY ¶ 1521.01 (16th ed. 2019).

"Subsection 1521(a)(4) enables discovery" and "[s]ubsection 1521(a)(5) permits the delivery of assets located in the United States to a foreign representative or another person for administration or realization but stops short of allowing repatriation or distribution." 8 COLLIER ON BANKRUPTCY ¶ 1521.02 (16th ed. 2019). Discovery under section 1521(a)(4) "enables a Foreign Representative to take broad discovery concerning the property and affairs of a [foreign] debtor." *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 471 B.R. 342, 346 (Bankr. S.D.N.Y. 2012). Where discovery is sought, the protective conditions of section 1522 apply.

"Section 1521(a)(7) authorizes the court to grant to the foreign representative the sort of relief that might be available to a trustee appointed in a full bankruptcy case," including the turnover of property belonging to the debtor. *In re Inversora Eléctrica de Buenos Aires S.A.,* 560 B.R. 650, 655 (Bankr. S.D.N.Y. 2016) (internal citation omitted).

Section 1521(b) permits the court, at the request of the foreign representative, to "entrust the distribution of all or part of the debtor's assets located in the United States to the foreign representative . . . provided that the court is satisfied that the interests of the creditors in the United States will be sufficiently protected." 11 U.S.C. § 1521(b). For example, in *In re Tri-Continental Exch. Ltd.*, 349 B.R. 627 (Bankr. E.D. Cal. 2006), the court permitted the turnover of funds to foreign representatives for administration where the funds would be maintained in a deposit account within the jurisdiction of the court but could be used to fund efforts to realize additional assets.

### A.    Discovery in a Chapter 15 Case Is Not Limited to Documents in the United States

Contrary to Worms' contention, discovery in a chapter 15 case is not limited to documents in the United States.  Permissible discovery also extends to documents in the possession, custody or control of a party, including documents held by a party's attorneys or agents.  Any argument by Worms that he is not required to produce documents in Markus' "possession, custody or control" by agents outside the United States lacks merit.

The court may order the production of documents from outside the United States.  Rule 45's subpoena power is not limited to the production of documents located within the United States.  *See Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1200 (11th Cir. 2016) ("The only geographical limitation provided by Rule 45 concerns the location for the act of production-not the location of the documents or information to be produced."); *Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 147–48 (S.D.N.Y. 2011), *aff'd sub nom. Tiffany (NJ) LLC v. Andrew*, No. 10 CIV. 9471 WHP, 2011 WL 11562419 (S.D.N.Y. Nov. 14, 2011) ("If the party subpoenaed has the practical ability to obtain the documents, the actual physical location of the documents—even if overseas—is immaterial.").

Discovery in chapter 15 cases does not change this result.  Where parties have argued that the requested discovery lacks a sufficient nexus to the United States because it does not involve the recovery of property in the United States, courts have held that "[r]equests for discovery in chapter 15 need not concern assets in the U.S. to be permissible under § 1521(a)(4)."  *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 471 B.R. at 347.  Further, where disputes have arisen regarding whether the law in the foreign proceeding's jurisdiction would permit the requested discovery, courts have deferred to declarations provided by lawyers in that country

11

regarding the scope of discovery in the foreign jurisdiction.  *See In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 814 (Bankr. S.D.N.Y. 2018).  Here, the Sokolov Declarations state that Russian law allows for the discovery requested here.  ("Sokolov Decl.," ECF Doc. # 133-4, ¶¶ 5–6, 8–9.)  Worms has provided no evidence to rebut this assertion.  Thus, Worms was required to comply with the Subpoena seeking information from outside of the United States.

Moreover, unlike Section 1521(a)(5), which explicitly entrusts the Foreign Representative with the authority to administer the debtor's assets within the territorial jurisdiction of the United States, section 1521(a)(4) provides no such jurisdictional limitation. The choice to omit a jurisdictional limitation in (a)(4) indicates that Congress did not intend to limit chapter 15 discovery to the United States alone.

Consistent with comity, chapter 15 provides bankruptcy courts with "broad, flexible, and pragmatic rules" to fashion discretionary relief.  *Platinum Partners*, 583 B.R. at 810.  Upon recognition, a bankruptcy court can authorize discovery "concerning the debtor's assets, affairs, rights, obligations or liabilities."  11 U.S.C. §1521(a)(4) and (a)(7); *see also Platinum Partners*, 583 B.R. at 803 (enforcing subpoena pursuant to sections 542(e) and 1521(a)(4) and (7), and FED. R. BANKR. P. 2004).  As *Platinum Partners* noted, section 542(e) and FED. R. BANKR. P. 2004 are "either directly applicable to chapter 15 cases or, in the alternative, delineate relief which can be granted by the court" pursuant to sections 1521(a)(4) or (a)(7).  *Platinum Partners*, 583 B.R. at 810.  Broad discovery under section 1521 promotes a significant chapter 15 objective—"provid[ing] judicial assistance to foreign representatives in gathering information which will enable them to comply with their duties." *Id.* at 821.  By its nature, chapter 15 involves parties located outside the United States.  Absent some express language in

chapter 15 of any geographical limitation on the scope of discovery, there is no basis for the Court in this case to impose such a limitation.

Section 1521(a)(4) "enables a Foreign Representative to take broad discovery concerning the property and affairs" of a debtor. *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 471 B.R. at 346. Further, discovery under section 1521(a)(4) need not "concern the preservation or recovery of property in the United States" because chapter 15 "is not an independent *in rem* proceeding but an ancillary proceeding designed to assist a foreign representative in administering the foreign estate." *Id.* at 347; *In re Fairfield Sentry Ltd. Lit.*, 458 B.R. 665, 679 n.5 (S.D.N.Y. 2011) (stating that section 1521(a)(4) "allows for discovery in the United States whether or not a debtor has assets here"). Here, the permitted section 1521(a)(4) "broad discovery" concerns Markus' worldwide financial affairs, which will aid in recovery of assets that Markus embezzled and is dissipating through her agents in various countries, including the U.S., U.K., France, Latvia and Russia.

Additionally, pursuant to section 1507(a), "[a]dditional assistance can be provided [to a foreign representative by a court] by making . . . Rule 2004 fully applicable" in a chapter 15 case. *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 471 B.R. at 346–47; *see also In re Petroforte Brasileiro de Petroleo Ltda.*, 542 B.R. 899, 911 (Bankr. S.D. Fla. 2015) (concluding that scope of chapter 15 discovery was not solely controlled by section 1521; Rule 2004 is also applicable). As *Millennium* observed, "one of the main purposes of chapter 15 is to assist a foreign representative in the administration of the foreign estate, . . . which would militate in favor of granting a foreign representative broad discovery rights using the full scope of Rule 2004." *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 471 B.R. at 347; *see also Belton v. GE Capital Consumer Lending, Inc. (In re Belton)*, Case No. 15 CV 1934 (VB),

2015 U.S. Dist. LEXIS 144371, at *5–6 n.3 (S.D.N.Y. Oct. 14, 2015) ("A Rule 2004

examination is a very broad, pre-litigation discovery process designed to assist the trustee in

revealing the nature and extent of the estate, ascertaining assets, and discovering whether any

wrongdoing has occurred.") (citation omitted).

Finally, FED. R. CIV. P. 45 is made applicable in bankruptcy cases by FED. R. BANKR. P.

9016. A subpoena issued under Rule 45 requires the production of documents responsive to the

subpoena, wherever the documents may be located. *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d

1194, 1200 (11th Cir. 2016); *In re Hulley Enters.*, 358 F. Supp. 3d 331, 345 (S.D.N.Y. 2019).

No attorney could reasonably believe otherwise.

### B.    Documents in the Possession of the Foreign Debtors' Agents and Attorneys Must Be Produced

Worms has argued without any citation to authority that he has no responsibility to

collect and produce responsive documents that are in the possession of Markus' agents and

attorneys outside the United States. Civil Rule 34(a) provides in pertinent part as follows:

> (a) Scope. Any party may serve on any other party a request (1) to
> produce and permit the party making the request, or someone acting
> on the requestor's behalf, to inspect and copy, any designated
> documents (including writings, drawings, graphs, charts,
> photographs, phonorecords, and other data compilations from which
> information can be obtained, translated, if necessary, by the
> respondent through detection devices into reasonably usable form),
> or to inspect and copy, test, or sample any tangible things which
> constitute or contain matters within the scope of Rule 26(b) *and
> which are in the possession, custody or control of the party upon
> whom the request is served*; . . . .

FED. R. CIV. P. 34(a) (emphasis added).

There is a considerable body of caselaw regarding "possession, custody or control."

This Court addressed the issue at some length in *In re Lozano*, 392 B.R. 48 (Bankr. S.D.N.Y.

2008). The Court explained in *Lozano*:

> "The concept of 'control' is very important in applying the rule, but the application of the concept is often highly fact-specific. [Production may be required] if the party to whom the request is made has the legal right to obtain the document, even though in fact it has no copy." 8A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS 2210 (2d ed. 1994) (footnote omitted). Professor Wright's treatise goes on to point out that "under some circumstances courts interpret the concept to go beyond whether the litigant has a legal right to obtain materials and focus on *practical ability to obtain them.* Caution must be exercised when the notion of control is extended in this manner, however, because sometimes the party's ability to obtain compliance from nonparties may prove more modest than anticipated." *Id.* (emphasis added).

*Id.* at 53.

The *Lozano* opinion also discussed the Second Circuit's opinion in *Shcherbakovskiy v. Da Capo Al Fine, Ltd.,* 490 F.3d 130 (2d Cir. 2007). The court in *Shcherbakovskiy* explained:

> Turning to the legal issues first, a party is not obliged to produce, at the risk of sanctions, documents that it does not possess or cannot obtain. *See* FED. R. CIV. P. 34(a) ("Any may serve on any other party a request . . . to produce . . . documents . . . which are in the *possession, custody or control* of the party upon whom the request is served . . . ." (emphasis added)), *E.E.O.C. v. Carrols Corp.,* 215 F.R.D. 46, 52 (N.D.N.Y. 2003); *see also Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 204 (1958) (acknowledging that Rule 34 requires inquiry into whether party has control over documents), *Fisher v. U.S. Fidelity & Guar. Co.,* 246 F.2d 344, 350 (7th Cir. 1957). We also think it fairly obvious that a party also need not seek such documents from third parties if compulsory process against the third parties is available to the party seeking the documents. However, if a party has access and the practical ability to possess documents not available to the party seeking them, production may be required. *In Re NASDAQ Market–Makers Antitrust Litig.,* 169 F.R.D. 493, 530 (S.D.N.Y. 1996).

*Shcherbakovskiy,* 490 F.3d at 138 (footnote omitted).

Both *Shcherbakovskiy* and *Lozano*, unlike this case, involved efforts to obtain discovery from third-parties who were *not* shown to be agents or attorneys of the party from whom discovery was sought. In this case, however, it is Markus' agents and attorneys that allegedly have documents responsive to the Subpoena. Worms has not demonstrated that he has taken appropriate steps (or any steps at all) to obtain these documents for production in this case in response to the Subpoena. Here, Markus has the right to obtain documents from her agents and attorneys and, in turn, Worms must produce the documents in response to the Subpoena.[8]

### C.    Rule 37 Sanctions Are Appropriate Where a Party or Attorney Fail to Respond to Discovery

Civil Rule 37(d) provides in pertinent part as follows:

> (1) *In General.*
> (A) *Motion; Grounds for Sanctions.* The court where the action is pending may, on motion, order sanctions if:
> . . . .
> (ii) a party, after being properly served with . . . a request for inspection under Rule 34, fails to serve its answers, objections, or written response.
> (B) *Certification.* A motion for sanctions for failing to answer or respond must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action.
> (2) *Unacceptable Excuse for Failing to Act.* A failure described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c).
> (3) *Types of Sanctions.* Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)—(vi). Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure

---

[8]    The Court believes it is unnecessary to resolve the issue whether under Russian Law the Foreign Representative succeeded to the rights of all documents, including otherwise privileged documents, in the possession of Markus' agents and attorneys since Markus is a party in this case and must comply with discovery. In a bankruptcy case in the United States, a bankruptcy trustee succeeds to the attorney-client privilege of the debtor. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 353–54 (1985). The Foreign Representative has not, at least so far, argued that Markus (and her attorneys) can withhold privileged documents. Worms has not argued that responsive documents are protected by attorney-client privilege.

was substantially justified or other circumstances make an award of
expenses unjust.

FED. R. CIV. P. 37(d).

In *Funk v. Belneftekhim*, 861 F.3d 354 (2d Cir. 2017), the Second Circuit upheld the

district court's imposition of monetary sanctions where the sanctioned party had willfully

disregarded two court orders, the district court had warned the sanctioned party that it might be

sanctioned, and one to two months had elapsed since the district court issued discovery orders

compelling production. *See id.* at 368–70. Here, Worms' willful disregard of this Court's two

discovery orders issued nearly two months ago and this Court's warnings to Worms that

sanctions might be levied against him for failure to comply with this Court's orders weigh in

favor of imposing sanctions. (Aug. 7, 2019 Hr'g Tr. at 7–8 (ECF Doc. # 129).)

### D.    Contempt Sanctions Are Appropriate Where a Party or Attorney Violates Court Orders

*1.    Court's Authority to Punish for Contempt*

Fed. R. Civ. P. 37(b)(2)(A)(vii) provides as follows:

(b) Failure to Comply with a Court Order.
. . . .
(2) *Sanctions Sought in the District Where the Action Is Pending.*
(A) *For Not Obeying a Discovery Order.*  If a party or a party's
officer, director, or managing agent—or a witness designated under
Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or
permit discovery, including an order under Rule 26(f), 35, or 37(a),
the court where the action is pending may issue further just orders.
They may include the following:
. . . .
(vii) *treating as contempt of court the failure to obey any order*
except an order to submit to a physical or mental examination
.

FED. R. CIV. P. 37(b)(2)(A)(vii) (emphasis added).

17

Caselaw clearly establishes that failing to comply with a court order for discovery may be treated as civil contempt. For example, in *Hayes v. Tyson Foods, Inc.*, No. 18-CV-1324-EFM-ADM, 2019 WL 2764256 (D. Kan. July 2, 2019), the court explained:

> The Federal Rules of Civil Procedure authorize sanctions where a party fails to obey an order to provide or permit discovery, including holding a party in contempt of court for failing to obey a court order. Fed. R. Civ. P. 37(b)(2)(A)(vii). Instead of or in addition to the sanctions listed in Rule 37(b)(2)(A), "the court **must** order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

*Id.* at *2 (emphasis in original); *see also, e.g.*, *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1481 (9th Cir. 1992) (explaining that a $10,000 per day fine was a civil contempt sanction because it was intended to coerce future compliance with a post-judgment discovery order); *Cruz v. Ruby Constr. Assocs. LLC*, No. 1:17-CV-349 (LO/IDD), 2019 WL 1561903, at *1 (E.D. Va. Mar. 15, 2019), *report and recommendation adopted sub nom. Cruz v. Ruby Constr. Assocs. LLC, VA*, No. 1:17-CV-349-LO-IDD, 2019 WL 1560436 (E.D. Va. Apr. 10, 2019) ("If a party fails to obey a court order to provide discovery, the court may hold the party in contempt of court. Fed. R. Civ. P. 37(b)(2)(A)(vii)."); *Fuentes v. Maxim Healthcare Servs., Inc.*, No. 2:17-CV-01072-AB (EX), 2019 WL 1751822, at *3 (C.D. Cal. Feb. 8, 2019) (explaining that civil contempt sanction should seek to coerce contemnor into future compliance); *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2018 WL 4760345, at *7–8 (S.D.N.Y. Sept. 28, 2018) (explaining that a party may be held in civil contempt for failing to obey discovery order). *See generally* GREGORY P. JOSEPH, SANCTIONS: THE FEDERAL LAW OF LITIGATION ABUSE § 49(B)(5), at 618–20 (3rd ed. 1994). A monetary award as a contempt sanction is appropriate as a remedy to coerce compliance with a

18

court order.  *Id.* at 619.  "If an attorney is responsible for the failure to provide discovery, Rules 37(b) and 37(d) permit the court to hold that attorney personally liable for the award of fees and expenses."  *J. M. Cleminshaw Co. v. Norwich*, 93 F.R.D. 338, 343–44 (D. Conn. 1981) (Cabranes, J.).

Courts have embraced the inherent contempt authority as a power "necessary to the exercise of all others."  *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) ("Courts independently must be vested with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates, and to preserve themselves and their officers from the approach and insults of pollution."); *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) (stating that contempt powers are "the most prominent" of court's inherent powers "which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court"); *Sigety v. Abrams*, 632 F.2d 969, 976 (2d Cir. 1980) ("The power to fine and imprison for contempt, from the earliest history of jurisprudence, has been regarded as a necessary incident and attribute of a court, without which it could no more exist than without a judge.").

The power to impose civil contempt sanctions applies in bankruptcy court as well.  It is well established that bankruptcy courts have power to enter civil contempt orders.  *MF Glob. Holdings Ltd. v. Allied World Assurance Co. (In re MF Glob. Holdings Ltd.)*, 560 B.R. 41, 52 (Bankr. S.D.N.Y. 2017); *In re Chief Exec. Officers Club, Inc.*, 359 B.R. 527, 534 (Bankr. S.D.N.Y. 2007); In *re MarketXT Holdings Corp.*, Adv. Proc. No. 05-01268 (ALG), 2006 WL 408317, at *1 (Bankr. S.D.N.Y. Jan. 27, 2006) ("It is well accepted, in light of the 2001 amendments to Rule 9020, that bankruptcy courts have power to enter civil contempt orders."); *see also In re World Parts, LLC*, 291 B.R. 248, 253 (Bankr. W.D.N.Y. 2003) ("Bankruptcy

courts possess the power to impose sanctions for acts of civil contempt.") (citing *In re Chateaugay Corp.*, 920 F.2d 183, 187 (2d Cir. 1990)).

### 2.    Definition of Civil Contempt

Civil contempt is a failure to obey a court order issued for another party's benefit and such sanctions are coercive or remedial in nature. *See* BLACK'S LAW DICTIONARY 385 (10th ed. 2014); *see also Penfield Co. of Cal. v. SEC*, 330 U.S. 585, 590 (1947) (stating that in civil contempt, fine and imprisonment are employed "as coercive sanctions to compel the contemnor to do what the law made it his duty to do"); WRIGHT & MILLER, at § 2960 ("Those [contempts of court] in which the ultimate object of the punishment is the enforcement of the rights and remedies of a litigant are civil contempts.").

### 3.    The Objectives of Civil Contempt

The purpose of civil contempt is to compel a reluctant party to do what a court requires of him. *See Badgley v. Santacroce*, 800 F.2d 33, 36 (2d Cir. 1986); *see also Shillitani v. United States*, 384 U.S. 364, 368 (1966) (stating that the act of disobedience consisted solely "in refusing to do what had been ordered" and the judgments imposed conditional imprisonment for the purpose of compelling the witnesses to obey the orders to testify). Civil contempt sanctions may also compensate for any harm that previously resulted. *See Nat'l Org. for Women v. Terry*, 159 F.3d 86, 93 (2d Cir. 1998); *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996) (stating that sanctions for civil contempt serve two purposes: to coerce future compliance and to remedy any harm past noncompliance caused the other party).

### 4.    Standards for Imposing Civil Contempt

A court's inherent power to hold a party in civil contempt may be exercised only when (1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of

noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply.  *See King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995); *Monsanto Co. v. Haskel Trading, Inc.*, 13 F. Supp. 2d 349, 363 (E.D.N.Y. 1998). "Clear and unambiguous" means that the clarity of the order must be such that it enables the enjoined party "to ascertain from the four corners of the order precisely what acts are forbidden." *Monsanto Co.*, 13 F. Supp. 2d at 363; *see also Terry*, 886 F.2d at 1351–52 (finding that the order could serve as the foundation for a contempt citation because it was sufficiently specific and clear as to what acts were proscribed to enable defendants to ascertain precisely what they could and could not do).  "In the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate 'reasonable certainty' that a violation occurred." *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) (citation omitted); *see also Perez v. Danbury Hospital*, 347 F.3d 419, 423–24 (2d Cir. 2003) (stating that the evidence of noncompliance with the order must be clear and convincing).  Where contempt is found, the defendant must not have diligently attempted to comply with the order.  *See Terry*, 886 F.2d at 1351 (finding that defendants did not diligently attempt to comply with the court order in a reasonable manner; instead the defendants proceeded with the demonstrations even though there was ample opportunity to comply with the court order either by curtailing their scope or by stopping them altogether).  Any doubts whether the requirements have been met in a particular case must be resolved in favor of the party accused of the civil contempt.  *See* 7 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 37.51 (3d ed. 2006).  But a finding of bad faith, willfulness, or substantial fault is not a prerequisite to a finding of civil contempt.  *See* MOORE'S FEDERAL PRACTICE, at § 37.51; WRIGHT & MILLER, at § 2960 ("A violation of the decree need not be willful for a party to be held in civil contempt.").

5.    *Coercive Contempt Sanctions*

As already stated, the purpose of a civil contempt usually is to coerce compliance with a court order, and a coercive civil contempt sanction may be conditioned on continued noncompliance.  *See* MOORE'S FEDERAL PRACTICE, at § 37.51; *see, e.g.*, *Terry*, 886 F.2d at 1351 (stating that because the sanctions, which were entirely conditional and coercive, were imposed to compel obedience to a court order, they were civil in nature).  Where the purpose is to make the defendant comply, the court must exercise its discretion in determining the proper sanction. *See United States v. United Mine Workers*, 330 U.S. 258, 304 (1947).  The court must consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about compliance with the court order.  *Id.* The court has broad discretion to fashion a coercive remedy based on the nature of the harm and the probable effect of alternative sanctions, and its determination will not be disturbed absent a clear showing of abuse.  *EEOC v. Local 28, Sheet Metal Workers*, 247 F.3d 333, 336 (2d Cir. 2001).  Thus, when imposing coercive sanctions, a court should consider: (1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of the sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden.  *See Terry*, 886 F.2d at 1353 (citing *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir. 1987)).  In determining the proper sanction, "[t]he ultimate consideration is whether the coercive sanction . . . is reasonable in relation to the facts."  *See Terry*, 886 F.2d at 1353.

### III.    DISCUSSION

As explained above, there is no geographic limitation on discovery in a chapter 15 case. Documents that are responsive to the Subpoena that are within Markus' possession, custody or control, including in the possession of her agents and attorneys, must be produced whether or not the documents are located within the territorial jurisdiction of the United States.  The Foreign Representative in this case "has had to fight every step of the way to get orders requiring production."  (Sept. 9, 2019 Hr'g Tr. at 48:23–24 (ECF Doc. # 146).)  The Court has ordered Worms to comply with discovery orders.  (*Id.* at 81.)  And even after the Court, on multiple occasions, has ordered Worms to produce documents, he has refused to comply.

The standards for imposing civil contempt sanctions on Worms are satisfied in this case. The discovery orders in this case requiring Worms to produce all responsive documents, including documents in the possession of Markus' agents and attorneys, are clear and unambiguous, the evidence of Worms' noncompliance is clear and convincing, and the evidence also establishes that Worms has not diligently attempted in a reasonable manner to comply with the discovery orders.  *Allied Vision, Ltd.*, 65 F.3d at 1058.  The discovery orders permitted Worms to ascertain what acts were required.  *Monsanto Co.*, 13 F. Supp. 2d at 363.  The evidence of Worms noncompliance demonstrates to a "reasonable certainty" that Worms violated this Court's discovery orders.  *Levin*, 277 F.3d at 250.  Worms did not diligently attempt to comply with the orders.  *Terry*, 886 F.2d at 1351.

In light of the foregoing, sanctions against Worms are appropriate in the Markus Case pursuant to FED. R. CIV. P. 37 and for civil contempt.  Worms' willful disregard of this Court's two discovery orders issued nearly two months ago and this Court's warnings to Worms that

sanctions might be levied against him for failure to comply with this Court's orders weighs heavily in favor of imposing sanctions. (Aug. 7, 2019 Hr'g Tr. at 7–8 (ECF Doc. # 129).)

Markus has appeared in this chapter 15 case through her lawyer, Worms. Having appeared, Markus and Worms are subject to discovery under the bankruptcy and civil rules. Markus and her counsel, Worms, do not get a "free ride," arguing as Worms does, that personal jurisdiction over Markus through service of process under Bankruptcy Rule 7004 and Civil Rule 4 *must* occur before she and Worms are required to respond to discovery as any other party that has appeared in a case in this Court. Any argument by Worms that he is not required to produce documents that are outside the United States lacks merit.[9]

The monetary sanctions of $1,000 per day until Worms complies with the discovery orders is clearly coercive. Sanctions will stop when Worms complies. In assessing the amount of the sanctions, the Court has carefully considered the seriousness and duration of Worms failure to comply. Worms' client, Larisa Markus, pleaded guilty in Russia to embezzling billions of dollars, and the evidence so far amassed by the Foreign Representative, without the cooperation or compliance by Worms, establishes that Markus transferred millions of dollars to

---

[9]        *See* October 8 Opinion at 22–23:

> Upon recognition, a foreign representative has *in rem* jurisdiction over property of the foreign debtor in the United States. It is unnecessary for a foreign representative to obtain personal jurisdiction over the foreign debtor to exercise authority over the debtor's property in the United States if that authority was granted to the foreign representative in the foreign proceeding. If a foreign representative commences an adversary proceeding against a foreign debtor seeking a money judgment, the foreign representative will have to serve the summons and complaint in the manner required by Bankruptcy Rule 7004.

> With respect to the discovery addressed to Markus and Worms by the Foreign Representative, Markus has appeared in this chapter 15 case through her lawyer, Worms. Having appeared, Markus and Worms are subject to discovery under the bankruptcy and civil rules. Markus and her counsel do not get a "free ride," arguing, as Worms has, that personal jurisdiction over Markus through service of process under Bankruptcy Rule 7004 and Civil Rule 4 *must* occur before she and Worms are required to respond to discovery as any other party that has appeared in a case in this Court.

the United States.  The scope of discovery undertaken by the Foreign Representative and his counsel is clearly appropriate given the seriousness of this matter.

The Foreign Representative's request for fees in connection with the Sanctions Motion will also be considered by the Court after appropriate time records are submitted.

### III.      CONCLUSION

For the foregoing reasons, the Court entered the Sanctions Order against Victor A. Worms on October 8, 2019.  Monetary sanctions will continue to accrue until Worms complies with the Subpoena by producing responsive documents in the possession of Markus' agents and attorneys wherever they are located.

Dated:    October 16, 2019
          New York, New York

*Martin Glenn*

MARTIN GLENN
United States Bankruptcy Judge