# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Larisa Markus,<br><br>    Debtor in a Foreign Proceeding. | Case No. 19-10096 (MG)<br><br>Chapter 15 |

## FOREIGN REPRESENTATIVE'S SUBMISSION ON REMAND

Dated: April 24, 2020

Bruce S. Marks
MARKS & SOKOLOV, LLC
1835 Market Street, 17th Floor
Philadelphia, PA 19103
(215) 569-8901
*Attorneys for Yuri Vladimirovich Rozhkov in his Capacity as Trustee and Foreign Representative for the Debtor*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ISSUES ON REMAND ................................................................................................ 1

ARGUMENT ................................................................................................................. 2

I. THE COURT SHOULD IMPOSE SANCTIONS PURSUANT TO ITS INHERENT AUTHORITY, FROM OCTOBER 3, 2019 ONWARD ............................... 2

II. THE COURT SHOULD AFFIRM THE $60,000 FEES AWARD, PURSUANT TO ITS INHERENT AUTHORITY ................................................................. 3

III. THE COURT SHOULD AWARD COMPENSATORY SANCTIONS, PURSUANT TO ITS INHERENT AUTHORITY, FOR ATTORNEYS' FEES INCURRED AFTER OCTOBER 3, 2019 ....................................................... 4

    A. The Court's Inherent Power Extends To Awarding Attorneys' Fees Incurred On Appeal ............................................................................. 4

    B. The Post-October 3, 2019 Fees Incurred Were Reasonable and Necessary ........................................................................................... 7

IV. THE COURT SHOULD NOT PERMIT WORMS TO USE ALLEGED FINANCIAL CIRCUMSTANCES TO AVOID NEW COMPENSATORY SANCTIONS CAUSED BY HIS BAD FAITH CONDUCT ......................................... 11

CONCLUSION ........................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91 (2d Cir. 2016) ................................................. 5

*Chambers v. NASCO,* 501 U.S. 32 (1991) ........................................................................... 4, 5, 11

*Flaherty v. Filardi*, 2009 U.S. Dist. LEXIS 104773 (S.D.N.Y. Nov. 10, 2009) ............................ 5

*Fox v. Vice*, 563 U.S. 826 (2011) ................................................................................................... 8

*Goodyear Tire & Rubber Co. v. Haeger,* 137 S.Ct. 1178 (2017) ............................................... 4, 5

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .................................................................................. 7

*Hull v. Celanese Corp.,* 513 F.2d 568 (2d Cir. 1975) .................................................................. 12

*In re Ayoub*, 2018 Bankr. LEXIS 1431 (Bankr. E.D. Mich. May 14, 2018) ............................... 11

*In re Fed. Facilities Realty Trust*, 227 F.2d 657 (7th Cir. 1955) ................................................. 5

*In re Grant,* 1981 Bankr. LEXIS 5072 (Bankr. S.D. NY. 1981) ................................................. 12

*In re MF Glob. Holdings Ltd.*, 560 B.R. (Bankr. S.D.N.Y. 2017) ................................................ 4

*International Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821 (1994) .................. 4

*Liberis v. Craig,* 1988 U.S. App. LEXIS 5455 (6th Cir. 1988) ............................................ 4, 6, 7

*Murphy v. Lynn*, 118 F.3d 938 (2d Cir. 1997) .............................................................................. 7

*N.Y. State NOW v. Terry*, 886 F.2d 1339 (2d Cir. 1989) ............................................................ 12

*Penthouse Int'l, Ltd. v. Playboy Enters.*, 663 F.2d 371 (2d Cir. 1981) ..................................... 2, 3

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806 (1945) .................. 11, 12

*Rivera v. Baccarat, Inc.*, 1999 U.S. Dist. LEXIS 6792 (S.D.N.Y. May 10, 1999) ....................... 7

*Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980) .................................................................. 4

*Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529 (11th Cir. 1986) ................................................................................................................................. 5

*Truong v. Hung Thi Nguyen*, 2013 U.S. Dist. LEXIS 121037 (S.D.N.Y. Aug. 22, 2013) ........... 11

*Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126 (2d Cir. 1979) ....................................... 5

*Weitzman v. Stein*, 98 F.3d 717 (2d Cir. 1996) ................................................................ 5, 6

*Williamson v. Recovery Ltd. P'ship*, 2017 U.S. Dist. LEXIS 49086 (S.D. Ohio Mar. 31, 2017) ................................................................................................................... 6, 7

**Other Authorities**

11. U.S.C. §1521 ................................................................................................................ 10

**Rules**

Fed. R. Civ. P. 37 ............................................................................................................... 10

Fed.R. Civ. P. 45 ................................................................................................................ 10

**INTRODUCTION**

The *Markus* Foreign Representative ("**FR**") submits this memorandum and supporting declarations pursuant to the April 13, 2020 Order concerning the April 3, 2020, Opinion and Order entered in both the Sanctions Appeal (No. 19-cv-09611-LJL) and the Fees Appeal (No. 19-cv-10781-LJL) (*Markus* ECF 259) ("**Appeal Decision**") remanding for further proceedings on the Sanctions Order (*Markus* ECF 157) and Fees Order (*Markus* ECF 200) against Victor Worms ("**Worms**"). The FR requests that, pursuant to its inherent authority, the Court: (I) impose sanctions on Worms from October 3, 2019 onward; (II) affirm the $60,000 Fees Order; and (III) impose ***$115,000*** in compensatory sanctions for attorneys' fees, which would not have been incurred after October 3, 2019 "but for" Worms' bad faith. Further, Worms should not avoid paying post October 3, 2019 attorneys' fees based on any alleged financial circumstances.

**ISSUES ON REMAND**

***First***, the District Court affirmed the Sanctions Order imposing the $1,000 per day sanction based on inherent authority, remanding only "to determine the sum of $1,000 per diem sanctions that should be imposed" after October 3, 2019. Appeal Decision, at 52.

***Second***, the District Court affirmed the Fees Order with the "Court's calculation of the fee amount" of $60,000, recognizing this Court had considered Worms' financial condition, remanding only to ensure the "Fees Order was issued pursuant to proper authority." Appeal Decision, at 55-56.

***Third***, the District Court held sanctions may be awarded to compensate the FR for harm caused by Worms' bad faith. Appeal Decision, at 55. Accordingly, the FR seeks compensatory sanctions for attorneys' fees after October 3, 2019 as those fees would not have been incurred "but for" Worms' bad faith conduct. *See* attached **Appendix A** (Chart of Worms' conduct).

1

**ARGUMENT**

I.   **THE COURT SHOULD IMPOSE SANCTIONS PURSUANT TO ITS INHERENT AUTHORITY, FROM OCTOBER 3, 2019 ONWARD**

At the October 3, 2019 hearing, the Court stated it would impose $1,000 per diem sanctions against Worms until he complied with its July 30, 2019 Order (*Markus* ECF 107). *See* October 3, 2019 Transcript, *Markus* ECF 160, at 68.[1]

*First*, since the Court imposed sanctions on October 3, Worms has continued to thumb his nose at the Court, doing literally nothing to comply. As a result, the FR obtained an order compelling Ilya Bykov to produce documents in his "custody, possession, and control" through known agents, who effectively served as Markus' agents. *See* November 21, 2019 Order, *Markus* ECF 214. This proved fruitless as well, with Bykov producing only duplicative and unhelpful documents on January 6, 2020, and his counsel Daniel Singer refusing to even identify who produced what. Even now, the FR does not know the agents who did not respond. This is not insignificant. ***Through other efforts, the FR uncovered additional assets which Markus concealed, including seven bank accounts at four banks holding more than $3 million in Switzerland, as well as office buildings in Germany and a hotel in Netherlands*** – all of which should have been disclosed by Worms by contacting Markus and her agents if he had complied with the Court's orders. *See* Sokolov Declaration, **Exhibit 1**. If Worms had complied with the July 30 Order, many other assets may have been discovered. The Court's inherent authority to impose sanctions is particularly needed where, *inter alia*, "foot-dragging [was] used in an effort to prevent [a party] from getting at records that were relevant to the central issue of the case."

---

[1] *See also* Sanctions Order, at 2 ("Mr. Worms is further ordered to pay $1,000 per day going forward for each day that he fails to comply with this Court's discovery orders."); Sanctions Opinion, *Markus* ECF 164, at 25 ("Monetary sanctions will continue to accrue until Worms complies with the Subpoena by producing responsive documents in the possession of Markus' agents and attorneys wherever they are located.").

*Penthouse Int'l, Ltd. v. Playboy Enters.*, 663 F.2d 371, 392 (2d Cir. 1981).

***Second,*** while the FR indicated a willingness to have the per diem monetary sanctions terminated as of October 30, 2019 ***if*** Worms complied with the Sanctions and Fees Orders ***and*** Bykov cooperated, *see* Response to Worms Motion to Stay Sanctions (*Sanctions Appeal*, ECF 5), neither condition occurred. Worms did not pay the $34,000 in sanctions or $60,000 in attorneys' fees, and Bykov did not cooperate. The FR was forced to seek Court intervention to get the requested discovery from Bykov, which resulted in the unhelpful January 6, 2020 production. At a minimum, after the Sanctions Order, Worms should have communicated with Markus through her Russian attorneys to identify her assets and agents who administer them, which should have disclosed the Swiss bank accounts.[2] But he did nothing.

***Third***, from October 3, 2019 through April 24, 2020, the per diem sanctions total **$204,000** (204 days x $1,000/day). The District Court affirmed prospective deterrent monetary sanctions, beginning October 3. Appeal Decision, at 51-52. While the sanctions amount is up to this Court, the FR submits that the amount can be reduced by attorneys' fees ***paid*** by Worms to the FR so that the total sanctions amount – deterrent and compensatory – is not excessive.

***Finally***, while the District Court set aside the fine imposed prior to October 3, 2019, the Court could not have been clearer that this Court's finding of contempt was civil, not criminal.

## II. THE COURT SHOULD AFFIRM THE $60,000 FEES AWARD, PURSUANT TO ITS INHERENT AUTHORITY

The District Court remanded for confirmation that fees are being awarded pursuant to the Court's inherent authority. This Court cited numerous cases based on inherent authority in support

---

[2] Worms employs a Russian speaking assistant who attended court appearances with him, including the March 9, 2020 hearing, who could have assisted, and that is in addition to Bykov, who instructs him.

of the Sanctions and Fees Orders, evidencing both decisions are supported by inherent authority.[3] The FR requests that the Court affirm the $60,000 award pursuant to inherent authority based upon cases cited in the Sanctions Opinion as well as below, and order that the fees be paid within ten business days. There is no doubt "the fees would not have been incurred but for [Worms] bad faith." *Goodyear Tire & Rubber Co. v. Haeger,* 137 S.Ct. 1178, 1184 (2017) (reaffirming attorneys' fees incurred as a result of bad faith may be awarded under inherent authority).

### III. THE COURT SHOULD AWARD COMPENSATORY SANCTIONS, PURSUANT TO ITS INHERENT AUTHORITY, FOR ATTORNEYS' FEES INCURRED AFTER OCTOBER 3, 2019

#### A. The Court's Inherent Power Extends To Awarding Attorneys' Fees Incurred On Appeal

"Federal courts have inherent power to assess attorney's fees against counsel." *Chambers v. NASCO,* 501 U.S. 32, 45 (1991) (internal quotations omitted). One circumstance is contempt, *i.e.*, "the willful disobedience of a court order." *Id.*; *Liberis v. Craig,* 1988 U.S. App. LEXIS 5455, at *15-16 (6th Cir. 1988) ("Courts have inherent authority to enforce their judicial orders and decrees in cases of civil contempt by assessing attorneys fees.") (citation omitted). Another circumstance is when a person "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons," by, for example, "hampering enforcement of a court order." *Chambers*, *supra*, at 45-46 (quotations omitted). The Supreme Court explained:

> In this regard, if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party, … as it may when a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." … ***The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to***

---

[3] *See* Sanctions Opinion, at 19 (*citing, e.g., International Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821 (1994) (inherent authority); *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980) (same); *In re MF Glob. Holdings Ltd.*, 560 B.R. 41 (Bankr. S.D.N.Y. 2017) (same)).

4

*police itself*, thus serving the dual purpose of "vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy."

*Chambers*, 501 U.S. at 46 (citations omitted) (emphasis added); *see also CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 101 (2d Cir. 2016) (a civil sanction has "two purposes: to coerce compliance with a court order and to compensate a plaintiff."). "A primary aspect of [the Court's] discretion [pursuant to its inherent authority] is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44-45 (citations omitted). Because a "party damaged by the conduct warranting civil contempt should be made whole for the harm it has suffered," it is "appropriate for the court to award the reasonable costs of prosecuting the contempt, including attorney's fees." *Flaherty v. Filardi*, 2009 U.S. Dist. LEXIS 104773, at *17 (S.D.N.Y. Nov. 10, 2009) (*citing Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130-31 (2d Cir. 1979)).

The inherent power to award attorney's fees by the court imposing contempt extends to attorney's fees incurred on appeal in defending the contempt order. *See Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996) (reversing failure to award attorney's fees incurred on appeal). The FR need only show the fees "would not have been incurred but for the bad faith" of the contemnor. *Goodyear,* 137 S.Ct. at 1184. *Weitzman* explained:

> When deciding whether to award fees, courts have focused on the willfulness of the contemnor's misconduct. *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1535 (11th Cir. 1986) ("willfulness is a commonly accepted justification for awarding attorney fees."); *In re Fed. Facilities Realty Trust*, 227 F.2d 657, 658 (7th Cir. 1955) ("willfulness inherent in the contemptuous act is a major consideration in determining whether attorney's fees should be awarded to the opposing party.") (citations omitted). Similarly, in *Vuitton*, this court noted that "it is appropriate for the court … to award the reasonable costs of prosecuting the contempt, including attorney's fees, if the violation of the decree is found to have been willful." 592 F.2d at 130. **Thus, while willfulness may not necessarily be a prerequisite to an award**

5

> *of fees and costs, a finding of willfulness strongly supports granting them. Indeed, to survive review in this court, a district court, having found willful contempt, would need to articulate persuasive grounds for any denial of compensation for the reasonable legal costs of the victim of contempt*.

*Weitzman,* 98 F.3d at 719 (emphasis added).

Other courts have also recognized the trial court's inherent authority to award attorneys' fees incurred on appeal arising from contempt. For example, the Sixth Circuit affirmed the district court affirming the bankruptcy court awarding attorneys incurred on appeal, holding:

> … [T]here is no question that the bankruptcy court had the authority to award attorneys' fees against the plaintiffs to compensate the trustee for bringing plaintiffs' contempt to the court's attention. ***Subsequent to the finding of civil contempt by the bankruptcy court, the trustee was forced to defend plaintiffs' challenges to the contempt order before the district court and then on appeal before this court.*** As previously noted, the costs associated with these appeals were a direct result of the plaintiffs' initial contumacious conduct. The trustee was forced to incur these costs to defend the contempt order on appeal, regardless of whether or not the actual contumacious conduct which had given rise to the contempt order had ceased. ***Therefore, we find that the bankruptcy judge did not abuse his discretion by awarding attorneys' fees and expenses incurred by the trustees as a result of the plaintiffs' unsuccessful appeals of the orders holding them in contempt***.

*Liberis*, 1988 U.S. App. LEXIS 5455, at *21-22 (emphasis added). "The question is not … whether [an] appeal was made in bad faith, but whether [the] unsuccessful appeal stemmed directly from his intentional disregard of the initial order." *Williamson v. Recovery Ltd. P'ship*, 2017 U.S. Dist. LEXIS 49086, at *12 (S.D. Ohio Mar. 31, 2017) (*citing Liberis*, *supra*). When it does, this Court can – and should – sanction the contemnor for "hampering the enforcement of a court order in bad faith" when the "hampered" order is that court's "own" order. *Id*. (quotation omitted).[4]

---

[4] *See also Weitzman*, 98 F.3d at 719 (in imposing sanctions for contempt, "the discretion of the district court is more narrowly bounded when seeking to compensate the victim of contempt, and correspondingly broader when it seeks to force prospective compliance with its own order.").

This case mirrors *Liberis*: this Court has the inherent authority to award attorneys' fees; the FR was forced to defend Worms' challenges to the Sanctions and Fees Orders before the District Court on appeal; and the costs incurred by the FR "were a direct result" of Worms' "initial contumacious conduct." *Liberis*, 1988 U.S. App. LEXIS 5455 (affirming $36,984.69 in fees and expenses for defending contempt order on appeal before district court and Circuit Court); *see also Williamson*, 2017 U.S. Dist. LEXIS 49086 (awarding over $59,000 in fees incurred on appeal in defending order imposing sanctions under inherent authority).

**B.     The Post-October 3, 2019 Fees Incurred Were Reasonable and Necessary**

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (awarding fees pursuant to 42 U.S.C. §1988). Indeed, even where a party is not successful on every theory, "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Id.* ***"The result is what matters."*** *Id*. (emphasis added). Where "successful and unsuccessful claims share a common nucleus of facts or are based on related legal theories, no … reduction [in fees] is required." *Rivera v. Baccarat, Inc.*, 1999 U.S. Dist. LEXIS 6792, at *11-12 (S.D.N.Y. May 10, 1999); *see also Murphy v. Lynn*, 118 F.3d 938, 952 (2d Cir. 1997), *cert. denied*, 522 U.S. 1115 (1998) ("A plaintiff's lack of success on some of [his] claims does not require the court to reduce the lodestar amount where the successful and the unsuccessful claims were interrelated and required essentially the same proof.").

As to the Sanctions Order, the FR prevailed ***entirely*** on the imposition of $1,000 per day in deterrent sanctions from October 3 onwards. Appeal Decision, at 52. As to the Fees Order, the FR prevailed ***entirely*** on the $60,000 amount of fees, with the only remaining issue that the Court

clarify that the award was based on inherent authority, as sought in the FR's Motion. *Id*., at 56.

When determining attorneys' fees and costs awards, as Justice Kagan has observed, "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). The goal is "to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id*. After October 3, 2019, the FR incurred **$129,342.50** in fees, which would not have been incurred "but for" Worms' "bad faith" misconduct. *See* Second Marks Fee Declaration ("**SMFD**"), **Exhibit 2**; **Appendix A** (Chart of Worms' conduct). However, taking a conservative approach, the FR seeks **$115,000** in fees as compensation even though all time charged was justified and reasonable:

| No. | Matter | Total Hours | Billed Amounts | Requested Amounts |
|---|---|---|---|---|
| 1 | FR Fees Application with supporting Marks First Fees Declaration | 25.75 | $7,825.00 | $7,000.00 |
| 2 | Reply to Worms' Response to FR Fees Application | 15.50 | $5,362.50 | $5,000.00 |
| 3 | Response to Worms' Motion to Stay Sanctions Order[5] | 54.60 | $14,022.50 | $12,000.00 |
| 4 | Response Omnibus Brief in opposition to Worms' Appeal Briefs | 151.50 | $38,320.00 | $35,000.00 |
| 5 | Preparation for March 9 Hearing | 81.60 | $20,255.00 | $18,000.00 |
| 6 | Post Hearing Court Ordered Submission | 64.50 | $18,212.50 | $15,000.00 |
| 7 | Remand Submission | 81.20 | $25,345.00 | $23,000.00 |
|  | **TOTAL:** | 474.65 | **$129,342.50** | **$115,000.00** |

*First*, *$7,825* was necessary and reasonable to prepare the Marks First Fees Declaration, which detailed the time spent in prosecuting the sanctions motion and providing supporting

---

[5] The FR is not seeking **$11,520** incurred in responding to Worms' Motion to Stay the Fees Order (*Fees Appeal*, ECF 4). Much of the work for opposing the stay (*Fees Appeal*, ECF 6), was used by the FR in Appellee's brief related to the fees appeal (*Fees Appeal*, ECF 14).

caselaw for the request. *See* SMFD, ¶42.

***Second***, ***$5,362*** was necessary and reasonable to prepare a three-page Reply (Markus ECF 195) to Worms' response to the Marks First Fees Declaration. But, because Worms had continued to rehash meritless arguments that had been rejected by the Court or were waived, the FR's Reply was short and the fees were under $6,000. *See* SMFD, ¶43; *see also* Chart (Appendix A).

***Third***, ***$14,022.50*** was necessary and reasonable to prepare the 23-page response (*Sanctions Appeal*, ECF 5) to Worms' *Sanctions Appeal* Stay Motion. The FR was required to respond to new issues presented by Worms, including allegations this Court "want[ed] to destroy [his] professional reputation" with "material misrepresentations" (Worms' Affidavit, *Sanctions Appeal*, ECF 3-1, at ¶¶86-87). This work was then used in the main appeal brief. *See* SMFD, ¶44.

***Fourth***, ***$38,320*** was necessary and reasonable to prepare the single 55-pages Appellee's brief in response to Worms' two appeals briefs totaling 125 pages.[6] Although Worms had refused to consolidate the two appeals, the FR filed one comprehensive "Omnibus Brief" addressing all issues in both appeals so the District Court would not have to review duplicative briefs. Further, as evidenced by the 57-pages Appeal Decision, Worms raised many issues on appeal, some precluded by his failure to appeal the July 30, 2019 Order and others totally without merit. Nonetheless, the FR had to respond to all of them. *See* SMFD, ¶45; *see also* Chart (Appendix A).

***Fifth***, ***$20,255*** was necessary and reasonable to prepare for the appeals hearing held on March 9, 2020, attended by Mr. Marks and his assistant Ms. Popova. Preparation included reviewing Worms' briefs (with new arguments and caselaw raised in his two reply briefs), the FR's Omnibus Brief, analyzing the relevant Bankruptcy Code provisions and caselaw, and

---

[6] *Compare* FR's brief (*Sanctions Appeal* ECF 19) with Worms' Brief (*Sanctions Appeal* ECF 15); and FR's brief (*Fees Appeal* ECF 14) with Worms' Brief (*Fees Appeal* ECF 10).

considering issues the District Court may raise. Such preparation was well advised – as evidenced by the March 9, 2020 Hearing Transcript (*Sanctions Appeal* ECF 25; *Fees Appeal* ECF 20) – as the FR was required to respond to numerous challenging questions raised by the District Court. *See* SMFD, ¶46.

**Sixth**, *$18,212.50* was necessary and reasonable to prepare the March 11, 2020 post-hearing submission ordered by the District Court. *See* Order (*Sanctions Appeal* ECF 22; *Fees Appeal* ECF 17). Immediately following the hearing, counsel researched the issues and drafted the post-hearing submission filed on March 11. *See* Post Hearing Submission (*Sanctions Appeal* ECF 23; *Fees Appeal* ECF 18). The FR's concise submission addressed numerous critical issues, including the application of Rule 45 subpoenas in bankruptcy matters, the availability of Rule 37 sanctions to Rule 45 subpoenas, Markus' status as a party,[7] and the Court's inherent authority. *See* SMFD, ¶47.

**Seventh**, *$25,345* was necessary and reasonable to prepare the remand briefing, including two declarations, necessitated by the Appeal Decision. The post-appeal submissions elucidate and expound upon the District Court's concerns about this Court's inherent authority to sanction Worms for his noncompliance. *See* SMFD, ¶48.

Thus, the FR requests *$115,000* – $12,000 before this Court for the Marks Fees Declaration and Reply to Worms' Response to the Fees Declaration, $80,000 for the time on appeal, and

---

[7] Respectfully, the FR believes the District Court erred in not treating Markus as a party for Rule 37 purposes. Markus intervened by filing the motion to vacate the Recognition Order on June 18, 2019 (*Markus* ECF 70), thereby creating a contested matter before the subpoena was served on June 24, 2019. The Discovery Order was entered on July 30, 2019 (Order, *Markus* ECF 107), and Worms was in contempt by September 6, well before the motion to vacate was denied on October 8, 2019 (Order, *Markus* ECF 158). The discovery was sought, *inter alia*, in order to defend the motion to vacate by showing the need for Bankruptcy Code §1521 discovery. Rule 37 applies to parties who violate discovery orders, with no exclusion for discovery orders enforcing Rule 45 subpoenas served on parties.

$23,000 on Remand – to be awarded as compensatory sanctions to make the FR whole, which amount may be awarded in lieu of deterrent monetary sanctions that the Court imposes in its discretion. The Court should order Worms to make the payment within ten business days.

## IV. THE COURT SHOULD NOT PERMIT WORMS TO USE ALLEGED FINANCIAL CIRCUMSTANCES TO AVOID NEW COMPENSATORY SANCTIONS CAUSED BY HIS BAD FAITH CONDUCT

When imposing sanctions, a court "should" consider a "contemnor's financial resources" (Appeal Decision, at 52 fn. 13), but only if the sanctioned party establishes that the sanctions "will be an unreasonable burden." *Truong v. Hung Thi Nguyen*, 2013 U.S. Dist. LEXIS 121037, at *16 (S.D.N.Y. Aug. 22, 2013) (citation omitted). To sustain this burden, contemnors have been required to "submit a sworn affidavit, valid and accurate personal financial records (including tax returns), and any other truthful and relevant supporting documents, which explain any financial circumstances that demonstrate why [they] cannot pay in full ..." *Id*. "Conclusory assertions of hardship, without a backing of 'hard data,' do not suffice to show that the imposition of sanctions in the amount necessary to compensate defendants would be unjust." *Id*. (internal quotations omitted); *In re Ayoub*, 2018 Bankr. LEXIS 1431, at *23 (Bankr. E.D. Mich. May 14, 2018) ("An unsupported claim regarding the inability to pay is not sufficient to satisfy this burden.").

At a threshold level, the Court need not entertain such a request in this case. The imposition of attorneys' fees under inherent authority implicates equitable considerations. *See Chambers*, 501 U.S. at 46 (noting "imposition of sanctions in this instance transcends a court's ***equitable power*** concerning relations between the parties and reaches a court's inherent power to police itself") (citations omitted) (emphasis added); *Ayoub,* 2018 Bankr. LEXIS 1431, at *22 (taking "equitable considerations" into account in Rule 11 sanctioning). But, "***he who comes into equity must come with clean hands***.' This maxim is far more than a mere banality. It is a self-imposed

ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945) (emphasis added). Worms has unclean hands of the worst sort, having made no effort to comply with the July 30 Order or the Sanctions Order.

If the Court considers the issue, Worms must sustain his burden with "hard data" to show an "unreasonable burden." If Worms fails to do so, this Court should not permit him to use alleged financial circumstances to avoid the new compensatory sanctions caused by his bad faith conduct.[8] *See* Chart (Appendix A).

***First***, in considering the financial burden Worms should shoulder, "[t]he preservation of public trust both in the scrupulous administration of justice and in the ***integrity of the bar*** is paramount." *Hull v. Celanese Corp.,* 513 F.2d 568, 572 (2d Cir. 1975) (emphasis added). "[I]t is axiomatic that attorneys are officers of the court and, as professionals, are held to a high standard in the discharge of their duties." *In re Grant,* 1981 Bankr. LEXIS 5072, *4-5 (Bankr. S.D. NY. 1981). The public's faith in the judicial system and the bar would be negatively impacted if it appears an attorney is being treated leniently, particularly when Worms voluntarily involved himself as paid counsel, and was not brought into the suit as a defendant.

***Second***, Worms brought this on himself. Rather than complying with the Sanctions Order, Worms filed a motion to stay, requiring a response. His baseless objections to the FR's Fee Application required a response. He filed two appeals briefs, raising frivolous, waived, and

---

[8] The Second Circuit found "unpersuasive" the contemnors' challenge to sanctions based on the district court's alleged failure to inquire into financial resources where the court had "suggest[ed] that they file affidavits of financial ability," but they "never" did, and "[l]ater, they refused to give … any information regarding their financial resources." *N.Y. State NOW v. Terry*, 886 F.2d 1339, 1353 (2d Cir. 1989) (finding coercive sanctions of $25,000 for each successive act of contempt was "not inappropriate").

meritless issues, again requiring a response Omnibus Brief, a March 9 hearing, and a post hearing submission.  He has litigated in bad faith, contemptuous of the Court and the FR.  At the most, if Worms meets his heavy burden, the Court should extend the time period for payment of new, ***full*** compensatory sanctions for Worms, a 55 year old attorney in the prime of his career, instead of reducing the sanctions amount.

## CONCLUSION

For the foregoing reasons, the Court should grant the relief requested above.

Dated:  April 24, 2020                           */s/ Bruce S. Marks*

Bruce S. Marks
MARKS & SOKOLOV, LLC
1835 Market Street, 17th Floor
Philadelphia, PA 19103
(215) 569-8901

*Attorneys for Yuri Vladimirovich Rozhkov in his Capacity as Trustee and Foreign Representative for the Debtor*