UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

In re:                                                                              NOT FOR PUBLICATION

                LARISA MARKUS,                                    Chapter 15
                                                                                                Case No. 19-10096 (MG)

                        Debtor in a Foreign Proceeding.

------------------------------------------------------------------x

**MEMORANDUM OPINION AND ORDER GRANTING MOTION OF AVENIR
REALTY INC. FOR PAYMENT OF SERVICE CHARGES**

*A P P E A R A N C E S:*

THE LAW OFFICES OF DANIEL A. SINGER PLLC
*Attorney for the LM Entities, Protax Entities,*
*and Avenir Realty Inc.*
630 3rd Avenue, 18th Floor
New York, New York 10017
By:    Daniel A. Singer, Esq.

HERRICK, FEINSTEIN LLP
*Attorneys for the Foreign Representative*
2 Park Avenue
New York, New York 10016
By:    Stephen B. Selbst, Esq.
           Zachary Denver, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

       Pending before the Court is the motion of Avenir Realty Inc. ("Avenir") seeking entry of an order directing Benaur Law LLC ("Benaur Law") to pay Avenir for service charges pursuant to section 1522(c) of the Bankruptcy Code, and the terms set forth in the Services Agreement and US Settlement Agreement, as those terms are defined below. ("Motion," ECF Doc. # 434.) The Motion was served on all parties in interest, including on the U.S. Trustee and the U.S. Attorney's Office. (ECF Doc. # 438.) Yuri Vladimirovich Rozhkov, the trustee and foreign representative (the "Markus FR") of the foreign debtor Larisa Markus ("Markus" or "Debtor"),

1

filed an objection to the Motion. ("Markus FR Objection," ECF Doc. # 443.) No other objections were filed to the Motion.[1]

For the following reasons, the Motion is **GRANTED**.

## I. BACKGROUND

### A. The Foreign Insolvency Proceedings and Recognition

In 2016, a Russian insolvency proceeding was commenced for Foreign Industrial Economic Bank, Ltd., Vneshprombank, Ltd. (the "Bank"). ("Entrustment Motion," ECF Doc. # 389 ¶ 3.)[2] The State Corporation "Deposit Insurance Agency" (the "DIA") was appointed as the Bank's trustee. (*Id.*) Markus was previously a founder and shareholder of the Bank. (*Id.* ¶ 4.) In 2015 the Bank failed. (*Id.*) Subsequently, Markus pled guilty to embezzling funds from the Bank and is currently serving her sentence in Russia. (*Id.*)

In 2016, Markus was placed into insolvency proceedings in Russia. (*Id.* ¶ 5.) The Markus FR was appointed as her trustee and financial administrator. (*Id.*) On January 10, 2019, the Markus FR filed this chapter 15 case to recognize the Russian insolvency proceedings. (*Id.* ¶ 6.) On April 1, 2019, this Court recognized the Russian insolvency proceedings and granted all relief afforded to a foreign main proceeding. (*Id.*)

### B. The Settlement and Services Agreement

On February 19, 2021, Markus, the Markus FR, and other parties entered into the U.S. Settlement Agreement, which resolved all claims other than the Unreleased Claims (as defined

---

[1] Service of the Motion on the United States Attorney's Office, and the lack of objection by that office, is significant because of issues in this case arising from sanctions imposed by the U.S. Government on certain transfers of assets to Russia. At the October 31, 2022 hearing on the Motion, attorneys for both the U.S. Trustee and the United States Attorney's Office said they had no objections to the relief sought in the Motion.

[2] The Entrustment Motion is not at issue here; it is merely used as a more comprehensive reference for background information.

in the U.S. Settlement Agreement).  (*Id.* ¶ 7.)  The U.S. Settlement Agreement gave the Markus FR control of the net proceeds from the sale of certain real properties owned by Markus' affiliates.  (*Id.*)

On August 24, 2021, the Markus FR filed a motion seeking approval of the U.S. Settlement Agreement and Services Agreement.  (ECF Doc. # 372.)  The U.S. Settlement Agreement was attached as Exhibit B, (*see* "U.S. Settlement Agreement," Ex. B to ECF Doc. # 372), and the Services Agreement was attached as Exhibit C.  (*See* "Services Agreement," Ex. C to ECF Doc. # 372.)

On October 7, 2021, the Court entered an order approving the U.S. Settlement Agreement and related Services Agreement.  ("Order Approving Settlement," ECF Doc. # 382.)  The Order provided "that all funds that are required to be transferred to the Markus FR or his escrow agent, Marks & Sokolov, LLC, under the Settlement Agreement shall be transferred to Benaur Law LLC, as successor escrow agent for the Markus FR to be held in escrow for the benefit of the Markus FR pending further order of the Court."  (Order Approving Settlement, at 4.)

Pursuant to the Services Agreement, the Markus FR appointed Avenir as his agent and as a fiduciary to, among other things, assist in the managing, marketing, and liquidating assets owned by Markus and/or related entities in the United States (U.S. Settlement Agreement §§ 3.6–3.7; Services Agreement §§ 3.1–3.3) and, to the extent not already sold, manage and market certain properties for sale (U.S. Settlement Agreement § 3.6; Services Agreement § 3.2).  (Motion ¶ 4.)

As set forth in the Services Agreement, for its services as the Markus FR's agent, Avenir will receive payment ("Service Charges") for certain proceeds from transfers related to

3

disposing of certain properties ("Properties") and dissolving of certain entities not at issue here. (*Id.* ¶ 5.) The Service Charges are calculated using a formula detailed in the Services Agreement but which, in pertinent part as relates to the sale of Properties, is equal 10% of the net proceeds from the sale of each such Property. (*Id.* (citing Services Agreement §§ 4.1–4.2).) The Services Agreement provides, in pertinent part, that each Service Charge "shall be payable by Rozhkov to Avenir simultaneously with the corresponding transfer of any Proceeds Transfer to the Markus BK Estate upon approval of same by the US Bankruptcy Court." (Motion ¶ 5 (quoting Services Agreement § 4.4).)

### C.  The First Property Sale

On or about December 3, 2021, following the sale of the Property at 10 West End Avenue, Apt. 31C6 , New York, New York ("Apt. 31C"), the Markus FR made a motion seeking permission to: (i) transfer proceeds from the sale of Apt. 31C, other Properties, and other cash proceeds being held in their escrow agent Benaur Law's escrow account (the "Benaur Law Escrow Account") to "a bank account under his name in Russia, where the funds would be held, where the funds would be administered by the Russian Bankruptcy Court"; and (ii) to transfer $86,224.63 from the Benaur Law Escrow Account to Avenir as payment for the Service Charges due and owing as result of the sale of Apt. 31C and certain other Properties which had previously been sold (the "December 2021 Requested Transfers"). (Motion ¶ 6; ECF Doc. # 389.)

On February 1, 2022 (the "February 1 Order"), this Court granted the Markus FR's motion for the December 2021 Requested Transfers of funds to Russia pursuant to section 1522(b) of the Bankruptcy Code. (Motion ¶ 7 (citing ECF Doc. # 393).) While the $86,224.63 Service Charge (the "First Service Charge") was transferred to Avenir in New York, the

Markus FR did not complete the transfer of any funds to Russia despite having been authorized to do so by the February 1 Order. (Motion ¶ 8.) As explained in the next section, before the authorized transfer to Russia was made, Russia invaded Ukraine, the U.S. Government imposed sanctions on Russia, and the February 1 order was suspended until the parties and the U.S. Government could address, and the Court decide whether the sanctions regime barred the transfer of funds to Russia.

### D.    Russia Sanctions, Second Property Sale, and the Instant Motion

On March 2, 2022, the Markus FR moved for Court approval to sell a Property located at 10 West End Avenue, Apt. 31B, New York, New York 10023 ("Apt. 31B"). (ECF Doc. # 394.) On March 15, 2022, while that motion was pending, this Court suspended the Markus FR's ability to make any transfers outside the United States in light of newly imposed sanctions against Russia. ("Suspension Order," ECF Doc. # 404.) The issue continues to be pending before the Court. (Motion ¶ 11 n.8.)

In the meantime, the Markus FR took the position that the "the sale of the Condominium is not restricted by any existing OFAC sanctions or Executive Orders." (ECF Doc. # 409 ¶ 11.) On April 27, 2022, without objection by the U.S. Government, this Court approved the sale of Apt. 31B on April 27, 2022 directing, in pertinent part, that the balance of the sale proceeds "after payment to HSBC and closing costs" were to be held by Benaur Law, the Markus FR's escrow agent. (Motion ¶ 9.)

On June 9, 2022, the sale of Apt. 31B closed and, following payment to HSBC and closing costs, the net proceeds of the sale totaled $956,940.96 (the "31B Net Proceeds"). (Motion ¶ 10.) The 31B Net Proceeds have been transferred to Benaur Law. (*Id.*)

The Markus FR has since been prevented from transferring any portion of 31B Net Proceeds or any other assets to Russia as a result of the sanctions issued by the U.S. Department of the Treasury's Office of Foreign Assets Control targeting the infrastructure of the Russian financial system. (Motion ¶ 11.) No payment has been made to Avenir from the 31B Net Proceeds, which prompted Avenir to bring the instant Motion.

## II.    LEGAL STANDARD

Avenir moves pursuant to 11 U.S.C. § 1522(c) and certain provisions of the Services Agreement. Section 1522(c) states that:

> The court may, at the request of the foreign representative or an entity affected by relief granted under section 1519 or 1521, or at its own motion, modify or terminate such relief.

11 U.S.C. § 1522(c).

Section 4.1.1 of the Services Agreement provides that "Avenir shall be entitled to be paid Service Charges by Rozhkov . . . in relation to the following transfers of proceeds relating to the disposition of the Properties and the dissolution of the Companies"; the section continues to define the transactions for which Avenir is entitled to be paid. Services Agreement § 4.1.1. Section 4.2 describes the calculation for the Service Charges amount. *See id.* § 4.2. Finally, section 4.4, "Payment of Service Charges" states that:

> Each Service Charge payable in respect of a Proceeds Transfer pursuant to this Agreement shall be payable by Rozhkov to Avenir simultaneously with the corresponding transfer of any Proceeds Transfer to the Markus Russian BK Estate upon approval of the same by the US Bankruptcy Court.

*Id.* § 4.4.

### III.  DISCUSSION

The sole issue here is whether the payment to Avenir is prohibited because transfers to Russia have been suspended.  Section 4.4 of the Service Agreement provides for payment to Avenir "simultaneously with" the transfer of proceeds to Russia.  The issue, therefore, is whether payments of Avenir for its necessary services in the United States should ALSO be prohibited?  The Court finds and concludes that section 4.4 does not prohibit payment to Avenir.

The Markus FR does not dispute that the Apt. 31B Service Charge of $95,694.10 is due and owing to Avenir.  (Motion ¶¶ 12–13; Objection ¶ 2.)  The Markus FR argues, however, that "[p]ut simply, Benaur Law cannot transfer any Proceeds Transfer to the [Russia] without putting itself at risk of violating U.S. sanctions," and thus any payments that are to be made to Avenir "simultaneously with" a transfer to Russia are barred.  (Objection ¶ 5.)

Avenir argues that this is inconsistent with the terms of the agreement and intention of the parties, which was to compensate Avenir for its services in the United States.  (Motion ¶ 14.)  Avenir argues that denial of payment for its performance of services in the United States due to a change of global political factors beyond Avenir's control is neither reasonable nor equitable.  (*Id.*)  While Avenir does not cite any authorities in making its argument, THE Court concludes it is correct.

First, it is hornbook contract law that "[W]hen a debt for the price of goods, property, or services has arisen, liability will not be excused because the contract contained a condition regarding the time for payment of the price, which has, without fault of the seller, become impossible of performance."  14 WILLISTON ON CONTRACTS § 42:7 (4th ed. 2022) (citing Restatement (Second) of Contract § 271; *M. O'Neil Supply Co. v. Petroleum Heat & Power Co.*, 280 N.Y. 50, 19 N.E.2d 676 (1939)) (footnotes omitted).

7

It is also unclear that the language in section 4.4 of the Services Agreement even creates a condition for payment as an interpretive matter, rather than simply describing that payment is to be made after a Proceeds Transfer occurs. "[I]f a provision was intended as a condition precedent to the duty of one of the parties, it would be natural for them to say so, and when this is not done, courts will not generally construe the provision as a condition precedent, especially if doing so would result in injustice." 14 WILLISTON ON CONTRACTS § 44:15. The parties do not dispute that Avenir has completely performed and is due payment pursuant to sections 4.1 and 4.2. Further, the language regarding the "simultaneous" transfer in section 4.3 is in contemplation of the fact that both transfers will be subject to this Court's approval at the same point in time—there is no other discernable reason why "simultaneously" should be read as a strict requirement to make the transfers precisely at the same moment in time. The Markus FR places undue importance on the word "simultaneously" that is not supported by the parties' objective intentions embodied in the contract. The Court does not fault the Foreign Representative, in light of the politically charged issues that arise in this case, from declining to make payment to Avenir absent an order from this Court that the payment should be made. The Court concludes that the Foreign Representative's inability at the present time to transfer funds to Russia is not a sufficient reason to bar payment to Avenir in the United States for its services in the United States.

Finally, Avenir argues that the Markus FR's payment of the First Service Charge to Avenir before making a transfer to Russia supports its position.[3] Avenir doesn't explain its

---

[3] Avenir claims that the Markus FR's interpretation conflicts with the parties' "course of dealing." (Motion ¶ 15.) It is unclear that their argument pertains to the interpretation of contractual terms because the conduct referred to occurred *after* the formation of the contract. *See Well Luck Co. v. F.C. Gerlach & Co.*, 421 F. Supp. 2d 533, 540 (E.D.N.Y. 2005) (observing that under New York law, "[e]vidence of a *prior* course of dealing can thus establish a party's awareness of and consent to intended contractual terms") (emphasis added) (citations omitted).

8

argument, except to cite two cases, that address arguments of waiver, estoppel, and/or modification. (*See* Motion ¶ 15 n.1 (citing *Aiello v. Burns Int'l Sec. Serv. Corp.*, 110 A.D.3d 234, 973 N.Y.S.2d 86 (1st Dept. 2013) (modification); *Fundamental Portfolio Advisors Inc. v. Tocqueville Asset Management*, *L.P.*, 7 N.Y.3d 96, 850 N.E.2d 653, 817 N.Y.S.2d 606 (2006) (waiver and estoppel)).) Each of these doctrines is highly fact dependent, and the parties provide little or no treatment of the facts in the briefing. While Avenir may have a meritorious argument for estoppel, it is unnecessary here to consider arguments regarding waiver, estoppel, and/or modification, in light the Court's conclusion that section 4.4 does not operate as a condition precedent, and the non-occurrence of the condition is not a bar to payment.

### IV. <u>CONCLUSION</u>

For the reasons discussed above, the Motion is **GRANTED**.

**IT IS SO ORDERED.**

Dated:   October 31, 2022
         New York, New York

*Martin Glenn*
_____
MARTIN GLENN
United States Bankruptcy Judge
